# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| Katherine M. Cleary, *et al.*, Individually and on behalf of others similarly situated. | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | Civil Action No. 4:21-cv-184 |
| American Airlines, Inc., | § § | |
| Defendants. | § § | |

## PLAINTIFFS' ORIGINAL PETITION

**COMES NOW**, Catherine M. Cleary, et al., individually and on behalf of those similarly situated states the following:

### I.      PARTIES

1.      Plaintiffs, Katherine Cleary and William Cleary are U.S. citizens residing in Los Angeles, California.

2.      Plaintiff, Eric Earll is a U.S. citizen residing in Minneapolis, Minnesota.

3.      Plaintiff, Filippo Ferrigni is a U.S. citizen residing in St. Louis, Missouri.

4.      Plaintiff, Judy Crosson is a U.S. citizen residing in Abilene, Texas.

5.      Defendant, American Airlines, Inc. is a Delaware corporation. Defendant is going to execute a waiver of the service of summons.

### II.      VENUE AND JURISDICTION

6.      The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d) because the amount of controversy exceeds $5,000,000 and the class is comprised of at least some persons who are citizens of a state different from AA.

7.      This Court has personal jurisdiction over AA because AA is headquartered in this District.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because AA is headquartered in this District.

### III.   FACTUAL ALLEGATIONS

9.      Defendant, American Airlines, Inc. ("AA") is one of the world's largest airlines, providing air travel to passengers and their luggage both domestically and internationally. AA is incorporated in Delaware, and headquartered in Fort Worth, Texas.

10.     Baggage fees are big business for American Airlines. In 2019, AA took in over $1.4 billion in baggage fees. Knowing that waiving baggage fees would entice fliers, AA offered free checked bags to certain customers including customers who flew frequently in AA's loyalty program AAdvantage, customers who purchased first or business class tickets, and customers who held AA's branded credit cards.

11.     AA's passenger contracts specify that certain of its passengers are permitted to check bag(s), for free. Yet, AA systematically required these passengers to pay to check bags and thus breached its contract with affected passengers.

12.     AA failed to program its checked bag terms in the standardized software system that AA uses to determine whether passengers must pay for checked bags when they check in at the airport. As a result, AA passengers were improperly charged, and forced to pay, baggage fees.

13.     On or around February 6, 2017, Plaintiffs, William, and Katherine Cleary were at their home when they purchased tickets online from AA for travel from Los Angeles to Dallas and return. When they purchased these tickets, they and AA entered into a contract which specified that they could each check their first bag for no additional charge. AA presented this term of its contract both in the confirmation screens shown at the conclusion of booking, and in the e-ticket confirmation emails AA sent after booking. However, when the Clearys arrived at the airport on March 21, 2017, each with a bag to check, AA required them to pay to check each bag, and similarly upon their return three days later. They paid the fees.

14.     On March 8, 2018, AA sent Plaintiff, Judy Crosson an email indicating that she had received "Gold status" valid through May 25, 2018. On May 14, 2018, Ms. Crosson was at her home when she purchased a ticket online from AA for herself to travel from Dallas to Myrtle Beach and return. AA sent Ms. Crosson an e-ticket confirmation after booking, confirming that there would be no charge for her first bag. However, when Ms. Crosson arrived at the airport on August 26, 2018, AA required her to pay to check her first bag.

15.     On or around May 13, 2016, Plaintiff, Eric Earll was at his home when he purchased a ticket online from AA for himself to travel from Minneapolis to Kansas City and return. On or around May 13, 2016, Mr. Earll also applied for a Citi / AAdvantage Platinum Select credit card which he understood would allow him to check a bag at no additional charge on his upcoming flight.   On May 13, Citi confirmed that Mr. Earll has "been approved" and his "account is considered open as of today, 05/13/2016." However, when he arrived at the airport on May 20, 2016, AA required him to pay to check his first bag. Mr. Earll objected that he had the credit card, but the AA check-in agent told him the computer showed no bag fee waiver, that this happens all the time, and that he had to pay the fee in order to check the bag. Having no choice Mr. Earll paid the fee.

16.     In approximately 2014, Plaintiff, Filippo Ferrigni was onboard an AA flight when an oral solicitation invited him to apply for an AA-partner credit card, which he understood would allow him to check a bag at no additional charge on each of his future flights with AA. Mr. Ferrigni received a paper application from a flight attendant and applied for the specified credit card. On November 12, 2018, Mr. Ferrigni purchased a ticket online from AA for travel from St. Louis to St. Kitts and return. When Mr. Ferrigni arrived at the St. Louis airport on April 2, 2019, the AA check-in agent told him his credit card provided a free checked bag only on domestic flights. Mr. Ferrigni had no choice but to pay the fee in order to check his bag. On April 9, 2019, Mr. Ferrigni arrived at the St. Kitts airport to begin his journey home, and again he (again having no choice) was required to pay to check his bag. After an overnight connection in Miami, Mr. Ferrigni arrived at the Miami airport on April 10 for the domestic flight from Miami to St. Louis. Yet again, and

despite this flight segment being entirely domestic, AA required Mr. Ferrigni to pay to check his bag. Mr. Ferrigni paid the fee on all three occasions.

17.     AA entered into air travel contracts with categories of passengers, whereby AA committed to transport a certain number of checked bags for those passengers, with certain weights, for free. But AA systematically breached those contracts by nevertheless requiring those passengers to pay AA to check such bags.

18.     AA enters into a contract with each of its passengers when a passenger purchases a ticket for travel on AA ("Contract"). In particular, when a passenger purchases a ticket for an AA flight, AA specifies that AA will provide flights as well as other benefits. First, each Contract includes the ticket, which contains terms such as the specific flight or flights, date and time, and class of service. Second, each Contract includes AA's standard terms and conditions, described further in the following paragraph. Third, when a passenger makes a purchase on AA's website (AA.COM), the terms shown there (such as fare, change fees, and baggage fees) become part of the contract when the passenger purchases the ticket. These terms presented to passengers at the point of purchase ("Point of Purchase Terms") are typically summarized and memorialized in an AA.COM screen entitled "Your Trip Summary." Fourth, when AA offers specific terms for passengers who obtain an AA-partner credit card, the terms of such offer that relate to travel on AA also become part of the contract.

19.     AA has two standard terms and conditions, one or both of which is incorporated into each Contract. If a passenger purchases a ticket entirely for travel between points in the United States (which includes the fifty states, the District of Columbia, the U.S. Virgin Islands, and Puerto Rico; collectively, "Domestic Flights"), the applicable standard terms and conditions are the Conditions of Carriage. If the passenger purchases a flight that is at least partially international, the standard terms and conditions also include the "International General Rules."

20.     At all airports, AA uses computers, including check-in kiosks for passengers and computer terminals for agents, to check passenger bags. On information and belief, these computers all run, connect to, and/or are controlled by AA's Passenger Service System ("PSS").

The PSS determines whether and what amount passengers have to pay to check bags for AA flights. According to AA, it operates on a "Single Passenger Service System."[1] On information and belief, AA's PSS is a standardized system that runs consistently throughout AA's operation.

21.     AA's records memorialize the number of free bags each passenger checked, as well as which passengers paid checked baggage fees and in what amounts.

**A.     AA's Contracts provide that AA will transport a certain number of checked bags for no additional charge.**

22.     The Contract provides that AA will transport a certain number of checked bags for free for certain passengers. This Contract term is included in the standard terms and conditions, the ticket, and, where applicable, the Point of Purchase terms, and any credit card term offer accepted by those passengers. For example, Plaintiff, Judy Crosson and AA entered into the Contract on May 14, 2018, when she used AA.COM to purchase travel from Dallas to Myrtle Beach and return. The e-ticket confirmation email (memorializing the ticket purchase, as described further in paragraph 54) which AA sent to Ms. Crosson expressly stated that she would incur a fee of "USD0.00" for her first checked bag.

**B.     AA Contracts specify that certain passengers may check bags for free.**

a.     The current version of AA's Conditions of Carriage is available online at https://www.aa.com/i18n/customer-service/support/conditions-of-carriage.jsp.

b.     The Conditions of Carriage document includes a section titled "Checked baggage," where AA provides a link to, and thereby incorporates, the Checked Bag Policy. The Checked Baggage Policy is available online at https://www.aa.com/i18n/travel-info/baggage/checked-baggage-policy.jsp.

---

[1] *See* History of American Airlines, available at: https://www.aa.com/i18n/customer-service/about-us/history-of-american-airlines.jsp (last visited on August 6, 2020).

c.      In the Checked Bag Policy's section titled "What will it cost?," AA specifies that certain passengers may check bags for free: AAdvantage Gold members, oneworld Ruby members, and certain AA-partner credit card holders on domestic flights (one bag each); AAdvantage Platinum and Platinum Pro members, oneworld Sapphire members, and passengers confirmed in business class and first class (two bags each); Executive Platinum members, oneworld Emerald members, and passengers confirmed in first class on three-cabin aircraft (three bags each). AA further specifies that these checked bag benefits extend to other passengers traveling on the same reservation.

d.      The Checked Baggage Policy links to, and thereby incorporates, a page entitled Oversize and Overweight Bags. The current Oversize and Overweight Bags page is available online at [https://www.aa.com/i18n/travel-info/baggage/oversize-and-overweight-baggage.jsp](https://www.aa.com/i18n/travel-info/baggage/oversize-and-overweight-baggage.jsp). That page indicates that each free checked bag by a first class, business class, Executive Platinum and oneworld Emerald member may weigh up to 70 pounds.

1.      **The Point of Purchase Terms are part of the Contract between AA and those passengers who purchase tickets from AA.COM.**

e.      When a passenger purchases a ticket on AA.COM, the passenger first chooses destination, dates, and class of service. After the passenger makes these choices and before the passenger pays, AA displays a "Your Trip Summary" screen where it specifies the specific flights as well as certain benefits, including the number of bags the passenger can check for free, if the passenger pays AA the listed fare.

f.      The AA Your Trip Summary screen specified that passengers who purchased domestic first-class tickets, domestic business-class tickets, and international business-class tickets would be able to check their first, second, and third bags for free. These terms presented at the Point of Purchase became part of the Contract when the passenger performed by paying the listed fare.

g.      For example, below is a screenshot from the class period showing the terms AA offered at the Point of Purchase to passengers purchasing domestic first-class tickets.



h.      For tickets purchased from AA.COM from March 29, 2016 through at least December 1, 2016, the AA.COM Your Trip Summary screen indicated that all domestic first-class tickets included "Up to 3 checked bags" for free. The screenshot above (captured on October 16, 2016) demonstrates that promise.

i.      During portions of 2016, AA.COM offered "up to 3 checked bags" for passengers purchasing domestic business class tickets and international business class tickets.

j.      When a customer checks in for an AA flight, AA.COM sometimes encourages the passenger to pay an additional fee to upgrade to business class or first class ("Check-in Upsell Page"). During a portion of 2016, the Check-in Upsell Page specified "up to 3 checked bags" as a benefit of such upgrade. If a passenger accepted the Check-In Upsell offer, AA reconfirmed that benefit in a Your Trip Summary page again affirming that "up to 3 checked bags" were included in the fare.

**2.      All AA tickets specify how many checked bags AA will transport for no additional charge.**

k.      When a passenger buys an electronic ticket ("e-ticket") from AA, AA does not provide the passenger with a paper ticket. Nor does AA provide the passenger with the actual e-ticket, which is a record in an AA computer server. Instead, AA sends the passenger an e-ticket confirmation email, which reports key terms of the e-ticket. AA's e-ticket confirmation emails specify certain checked bag charges associated with the passenger's itinerary and ticket. On information and belief, the e-ticket confirmation specifications regarding checked bag charges match the terms of the actual e-ticket.

l.      AA sends e-ticket confirmation emails that systematically confirm that certain passengers may check their first bag for free. For example, Plaintiff, William Cleary's e-ticket confirmation email, which has the same format and types of information as the other e-ticket confirmation emails AA sends to passengers, stated:

> Baggage charges for your itinerary will be governed by American Airlines BAG ALLOWANCE -LAXDFW-No free checked bags/ American Airlines BAG ALLOWANCE -DFWLAX-No free checked bags/ American Airlines 1STCHECKED BAG FEE-LAXDFW-USD0.00/ American Airlines /UP TO 50 LB/23 KG AND UP TO 62 LINEAR IN/158 LINEAR CM 1STCHECKED BAG FEE-DFWLAX-USD0.00/ American Airlines /UP TO 50 LB/23 KG AND UP TO 62 LINEAR IN/158 LINEAR CM 2NDCHECKED BAG FEE-LAXDFW-USD35.00/ American Airlines /UP TO 50 LB/23 KG AND UP TO 62 LINEAR IN/158 LINEAR CM 2NDCHECKED BAG FEE-DFWLAX-USD35.00/ American Airlines /UP TO 50 LB/23 KG AND UP TO 62 LINEAR IN/158 LINEAR CM ADDITIONAL ALLOWANCES AND/OR DISCOUNTS MAY APPLY

m.      These terms set forth AA checked bag fees. For example, Mr. Cleary's e-ticket confirmation email states, "American Airlines 1STCHECKED BAG FEE-LAXDFW-USD0.00/." This means that Mr. Cleary, like all other passengers who received this promise from AA, was entitled to check his first bag for free.

n.      Notably, passengers who received this confirmation relied on it and brought bags to check.

**3.      AA's promises about credit card benefits are part of the Contract between AA and those passengers who apply for and receive those credit cards.**

o.      To induce passengers to apply for credit cards with AA's partner credit card issuers, AA specifies that holders of these credit cards will receive a free checked bag on AA flights, among other benefits. These offers occur in text on AA.COM, in prerecorded audio-video announcements played aboard AA aircraft, in scripts provided to AA cabin crew to read to passengers through public address systems aboard AA aircraft, and in displays shown at and around AA airport facilities. When AA makes such an offer to a passenger and the passenger accepts by signing up for the specified credit card, AA's offer of a free checked bag is also a part of the Contract.

p.      On AA.COM, AA prominently featured certain credit cards as allowing passengers to check baggage for free. For example, as of April 15, 2018, an AA.COM page entitled "AAdvantage Credit Cards" indicated that the "Citi / AAdvantage Platinum Select Card" and "CitiBusiness AAdvantage Platinum Select Card" both offered "First checked bag fee waived." That page indicated no relevant restriction, such as a first bag available only on domestic journeys or only in other circumstances.



q.      As of April 13, 2018, a page on the AA.COM web site indicated that passengers who obtain certain credit cards receive: "First checked bag free for you and up to four people traveling with you on American Airlines itineraries." The page went on to present a table indicating that the "Citi AAdvantage Executive World Elite Mastercard", "Citi AAdvantage Platinum Select World Elite Mastercard", and "Citi AAdvantage Platinum Select World Mastercard" each offered "First checked bag waived on itineraries" for "Up to 8 travel companions on the same reservation" or "Up to 4 travel companions on the same reservation" (depending on which card the passenger chose). No footnote or other disclaimer on or around those statements added any restriction.

r.      Furthermore, AA's onboard statements to passengers promised that a first bag could be checked without charge.  In prerecorded audio announcements on AA aircraft, one recording announced "Our AAdvantage Aviator Mastercard is another great way to earn miles with everyday purchases and enjoy benefits such as your first checked bag free." No statement in the audio solicitation limited that benefit to certain flights such as domestic flights. (Recording made on an AA aircraft on December 6, 2017.)  On aircraft with audio-video capabilities, AA provided both audio and video recordings to promote credit cards to passengers. One such recording announced that customers who obtain the featured credit card "enjoy benefits such as your first checked bag free."  No statement in the audio solicitation limited that benefit to certain flights such as domestic flights, nor did any on-screen text limit that benefit to certain flights such as domestic flights. (Recording made May 6, 2018). On information and belief, AA provided its cabin crew with scripts to be read verbatim to promote AA-partner credit cards. On information and belief, one such script instructed crew to announce that for a certain AA credit card, "Other benefits include … your first checked bag is free for you and up to four of your traveling companions on your reservation." No statement in the audio solicitation limited that benefit to certain flights such as domestic flights. (Recording made on an AA aircraft on November 25, 2018.)  On information and belief, AA systems played these solicitations and AA staff read these solicitations even on international flights. With passengers flying internationally, the AA solicitations could only be understood as applying on passengers' future international journeys.

On information and belief, Plaintiff Ferrigni first learned about an AA credit card based on an AA inflight solicitation, during an international flight, that mentioned a free checked bag benefit.

       s.      On information and belief, AA promised in offers on airport premises that passengers who obtained certain credit cards could check a first bag free of charge and did not in these statements indicate any restriction to domestic flights. On information and belief, these offers included brochures at check-in counters, gate areas, and clubs. On information, these offers included large-format wall displays.

       t.      No matter where AA made credit card offers – whether on AA.COM, through airplane systems, or at airport premises – AA made offers which customers accepted by applying for the specified credit cards. When passengers did so, the terms of those offers became part of passengers' contracts with AA.

       u.      Class representative Eric Earll was traveling from Minneapolis to Kansas City on May 20, 2016. He had an AA-partner credit card which he obtained in order to check baggage without charge. But when he presented his baggage for check-in in Minneapolis, an AA employee told him that there was no baggage fee waiver in AA's computer system for his travel. AA required Mr. Earll to pay a baggage fee in order to check his bag and travel. An AA employee told Mr. Earll that "this happens all the time" and suggested that he contact AA by phone to request a refund. When Mr. Earll did so, AA did not return his funds.

       v.      Class representative Plaintiff, Filippo Ferrigni was traveling from St. Louis to St. Kitts on April 2, 2019. He had an AA-partner credit card which he obtained in order to check baggage without charge. But when he presented his baggage for check-in in St. Louis, an AA employee told him that his credit card waived baggage fees only on domestic travel. Having no choice Mr. Ferrigni reluctantly paid to check his baggage.

**C.**      **<u>AA systematically breached the Contract because it required certain passengers to pay to check certain bags.</u>**

a.      AA breached its baggage fee obligations in the contract in the same way for all affected passengers. At the time when specified passengers purchased a ticket, AA formed a Contract with each such passenger that included a number of free checked bags. But when these passengers attempted to check their bags, AA systematically required such passengers to pay to check such bags.

1.      **AA breached the Contract's terms promising that certain passengers could check certain bags for no additional fee.**

b.      As described above, AA's contracts provided that elite members and business and first-class passengers could check free bags as specified in paragraph 21. The contracts further provided that Executive Platinum members, oneworld Emerald members, and business and first-class passengers could check bags of up to 70 pounds for free. But AA charged these passengers to check bags that it was contractually obliged to transport for free.

c.      Many passengers reported, on Twitter and other public discussion forums, that AA required them to pay for checked bags that AA was obliged to transport for free because they qualified for a particular frequent flyer status.  For example, on April 29, 2019, a passenger complained on twitter that "I guess being Gold only gives you a free checked bag on occasion?!?!", thereby indicating that AA had denied the promised benefit of a first free checked bag for each Gold passenger.  On January 23, 2020, a passenger complained on Twitter that AA staff "still insist on charging me for my third bag" despite her Executive Platinum status. On February 29, 2020, another Executive Platinum member reported on Twitter that AA's computer system allowed him to check only two bags without an additional charge.

d.      Executive Platinum and oneworld Emerald Passengers further reported, on Twitter and other public discussion forums, that AA required them to pay to check bags of up to 70 pounds. For example, on April 21, 2017, a passenger on Facebook reported "Heads up to those that fly with bags over 50 pounds to and from SMF. Those clowns tried to make me pay for over-weight baggage, even though exec plat members can have bags up to 70 pounds. They were arguing with

me that I needed first class ticket for this perk." Another passenger replied: "I've run into this a number of times; I regularly travel with anywhere between 3-12 70lb pieces (depending on the number of people with me). PHL is notoriously bad about that. And when I run into it, it's widespread issue at that station. Not just an agent or two."

e.      AA's e-ticket confirmation emails specify the baggage benefits of the elite status that a passenger held as of the date of ticketing apply to that ticket. Passengers rely on the confirmation of benefits plainly listed within their travel documents. But when those passengers check a bag on the date of travel, AA charges a checked baggage fee.

f.      For example, Plaintiff, Ms. Crosson held Gold status as of the date of ticketing. Her e-ticket confirmation email specified one free checked bag the baggage benefit associated with the Gold status she held at the date of ticketing. AA breached the Contract when it charged her to check her first bag.

g.      Other passengers reported, on Twitter and other public discussion forums, that AA required them to pay for checked bags that AA promised to transport for no additional charge because of their then-applicable frequent flyer status. For example, on Twitter on February 29, 2020, a passenger complained that he "booked a flight while AA Platinum." He reported that his e-ticket confirmation email said he could check two bags at no charge, but AA staff charged him anyway.

## 2.      AA breached the Point of Purchase Terms specifying that passengers who travelled on business and first-class tickets could check three bags for no additional fee.

h.      As described above, AA's Contracts with business and first-class passengers specified that they could transport up to three bags, each weighing up to 70 pounds, at no additional charge.  Yet AA systematically breached its contracts with these passengers. AA passengers have reported, on Twitter and flyertalk.com, that AA required them to pay for checked bags that AA promised in the terms of the Contract to transport without charge.

i.      For example, a passenger purchased a first-class ticket on AA's website for travel in January 2017.  AA's Your Trip Summary screen specified that she could check her first, second, and third bags for no additional charge if she paid AA the stated fare. Nonetheless, AA required her to pay to check her third bag.

j.      Similarly, another passenger stated that he purchased a ticket on AA's website for a first-class seat on a domestic flight in or around November 2016. AA's Your Trip Summary screen specified that he could check his first, second, and third bags for no additional charge. Nonetheless, AA required him to pay to check his third bag.

k.      Another passenger reported having purchased a ticket on AA's website for travel in July 2016 and choosing a first-class ticket based on AA's Point of Purchase terms specifying that she could receive "Up to 3 checked bags" if she bought that ticket. Upon checking in, she was not able to check a third bag for free because AA refused to accept her third checked bag unless she paid an additional $200.

l.      Many passengers complained directly to AA, including publicly via Twitter. Affected passengers widely reported surprise at being charged for their third checked bag, particularly when they were told prominently at the Point of Purchase that three bags could be checked for free. For example, one passenger complained on Twitter: AA "says I get three bags with 1st class upgrade… But I was charged $150. Shame on you!" Another passenger explained on Twitter: "When I purchased my ticket, the box I clicked stated I was allowed 3 free bags." Multiple passengers posted screenshots or photographs showing the Point of Purchase terms on AA.COM specifying that business and first-class passengers may check up to three bags for free.

**3.      AA breached the promises in e-tickets promising a free first bag to certain passengers.**

m.      As described above, AA's e-tickets and e-ticket confirmation emails include baggage terms.  Contrary to these terms, AA charged passengers to check bags when the e-ticket confirmation email specifically said such bags would be checked for free.

n.      For example, Plaintiffs, William, and Katherine Cleary held e-tickets and presented e-ticket confirmation emails indicating that they could each check their first bag for free. At the airport on both their outbound and return flights, AA staff required them to pay. Similarly, Plaintiff, Judy Crosson received an e-ticket confirmation email specifying a free checked bag, but nonetheless AA charged her to check her bag.

o.      Other passengers on Twitter complained that AA similarly charged them despite the terms written in their e-ticket confirmation emails. For example, on February 29, 2020, a passenger complained that his e-ticket confirmation email said he could check two bags at no charge, but AA staff charged him anyway.

**4.      AA breached the Contract's terms promising a free first bag to passengers with certain partner credit cards.**

p.      As described above, AA specified that passengers with certain credit cards could check a free first bag. Yet AA charged passengers with AA-partner credit cards to check their first bag.  For example, Plaintiff, Eric Earll had a Citi / AAdvantage Platinum Select credit card which AA promised would allow him to check a bag for free on his upcoming flight, but AA nonetheless charged him. Users on Twitter similarly reported that despite having AA-partner credit cards that included a free first checked bag, AA required them to pay to check such bags during domestic travel.

q.      Furthermore, AA systematically refused to provide a free checked bag to holders of its partner credit cards traveling on international flights. For example, AA induced Plaintiff, Ferrigni to obtain an AA credit card via the promise that it would provide a free checked bag, but when Ferrigni tried to check a bag on an international itinerary, AA required him to pay. Users on Twitter similarly reported that despite having AA-partner credit cards that included a free first checked bag, AA required them to pay to check such bags during international travel. For example, on March 26, 2018, a Twitter user complained about a charge for checking a bag on an

international flight, based on AA marketing materials indicating that a bag could be checked for free and nowhere mentioning any exclusion of international journeys.

**D.**      **AA CONTINUED IMPROPER BAG FEES DESPITE PRIOR CLASS ACTION LITIGATION**

a.       AA has faced prior class action litigation about charging fees to check bags it had promised to transport for free. See *Max Bazerman v. American Airlines, Inc.*, Case No. 1:17-cv-11297-WGY (D. Mass. 2017). At issue in this case are certain claims that were not settled or released in *Bazerman*. Among those claims are the following situations.

b.       *Charges after Bazerman settlement*. The *Bazerman* settlement released only charges made on or before June 7, 2018. AA continued to charge bag fees in breach of its contracts, after that date.

c.       *Charges not found in the Bazerman settlement due to underinclusive class list*. The *Bazerman* settlement released only claims by those persons who were included in the class list and to whom individual notice was directed. No notice was sent to Plaintiff, William Cleary.

d.       *Charges not found in the Bazerman settlement due to other software errors*. On information and belief, the search criteria in *Bazerman* identified only a portion of the bags that should have been refunded under the plain language of the *Bazerman* settlement and release.

e.       *Charges relating to overweight bags*. The *Bazerman* settlement and release did not cover charges resulting from to AA's promises about the weight of such bags, including transporting 51 to 70 pound bags without additional charge.

f.       *Charges relating to credit card promises*. The *Bazerman* settlement and release did not cover charges for holders of AA branded credit cards.

**E.  CLASS ACTION ALLEGATIONS**

23.      Plaintiffs reallege the foregoing paragraphs of this Complaint as though fully set forth herein.

24.     Plaintiffs bring this action as a class action for monetary relief pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class: All persons who purchased a ticket for air travel on American Airlines ("AA") subject to AA promises that their ticket would allow the passenger to check a specified number of bags for free, when in fact AA required the passengers to pay to check one or more such bags, during the relevant statute of limitations period prior to the filing of the complaint.  ("Class Definition" or "Class").

25.     Excluded from the Class are defendants herein, and any person, firm, trust, corporation, or other entity related to or affiliated with defendants, including without limitation persons who are officers, directors, employees, agents, associates or partners of defendants, and Plaintiffs' Counsel and employees of their firms. Also excluded from the Class are those persons whose only claims arise from baggage fees released in *Max Bazerman v. American Airlines, Inc.*, Case No. 1:17-cv-11297-WGY (D. Mass. 2017).

26.     This action is properly maintained as a class action. The Class satisfies all of the requirements of Rule 23 for maintaining a class action.

27.     **Ascertainability.**  The members of the Class (collectively "class members") are known to AA. Their identities are recorded in AA's business records. Moreover, the Class Definition enables every putative class member to identify himself or herself as a member of the Class.

28.     **Numerosity.**  The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Plaintiff believes there are thousands of members of the Class, who are geographically dispersed throughout the United States.

29.     **Existence and predominance of common questions of law or fact.**  There are questions of law or fact that are common to the Class, which predominate over questions affecting any individual class member. AA's PSS is centralized software that AA uses to manage different parts of its business. The PSS includes databases containing all of AA's domestic and international passenger reservations and ticketing information as well as the baggage fees each passenger paid. AA's PSS determines whether domestic and international passengers pay for checked bags when they check in for their flights. The PSS did not incorporate AA's contractual terms regarding checked bag fees to international and domestic passengers. As a result, AA systematically charged passengers for checked bags in breach of the Contracts specifying that AA would transport such checked bags for free. The common nucleus of operative facts also includes AA's standardized terms and conditions for customer air travel described above, as well as the presentation of the same promises to passengers through e-ticket confirmation emails and computerized displays on AA.COM.

30.     Common questions of law or fact include without limitation:

a.      Whether class members performed pursuant to AA's offer when they purchased a ticket for travel on AA;

b.      Whether the Contract was formed at the time when a class member purchased a ticket for travel on AA;

c.      Whether the Contract specified that class members could check a specified quantity and weight of bags at no additional charge;

d.      Whether AA failed to program its Passenger Service System to embody the terms of its Contracts with passengers;

e.      Whether AA breached the Contract when it required class members to pay checked bag fees.

31.     **Typicality.**  The claims of Plaintiffs are typical of those of the class members, and Defendant has no defenses that are unique to Plaintiffs.

32.   **Adequacy of representation.**   Plaintiffs will fairly and adequately protect the interests of the class and has no interests adverse or antagonistic to the interests of the other members of the class. Plaintiffs have retained competent counsel who are experienced in the prosecution of consumer class action litigation.

33.   **Superiority.**   A class action is superior to other methods for the fair and efficient adjudication of the claims asserted herein. A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of time and expense that the prosecution of numerous individual actions would entail. Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of in this action. Plaintiffs do not anticipate any unusual difficulties in the management of this class action.

## CAUSE OF ACTION: BREACH OF CONTRACT

### (all Class Members)

34.   Plaintiffs reallege the foregoing paragraphs of this Complaint as though fully set forth herein.

35.   Plaintiffs and all other class members entered into valid and enforceable written contracts with AA for air transportation. Each such contract specified that the passenger could check a specified quantity of baggage for free. Plaintiffs and all members of the Class accepted AA's offer and fully performed their obligations under the Contract.

36.   AA nonetheless refused and failed to provide the free baggage transportation services specified by the Contract. In breach of its contracts with class members, AA's centralized software system, the PSS, required all members of the Class to pay these baggage fees.

37.   As a direct result of AA's breach of the Contract, Plaintiffs and all other members of the Class suffered actual damages in the form of bag check expenses and incurred reasonable and foreseeable economic harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, prays for judgment against Defendant as follows:

A.      Certification of Plaintiffs' claim as a class action, pursuant to Fed. R. Civ. P. 23(b)(2) & (3), on behalf of the proposed Class;

B.      Actual damages in an amount not less than the amount AA obtained from Plaintiffs and the Class to transport checked bags in breach of the Contract;

C.      An order enjoining Defendant from charging fees beyond those promised in applicable contracts, or from denying benefits provided in applicable contracts;

D.      An award of reasonable attorneys' fees on behalf of Plaintiffs and the Class, pursuant to Texas Civil Practices and Remedies Code § 38.001 and other applicable contract law;

E.      An award of costs of suit on behalf of Plaintiffs and the Class, pursuant to Texas Civil Practices and Remedies Code § 38.001 and other applicable contract law;

F.      Pre-judgment at the maximum rate of interest permitted by law;

G.      Post-judgment interest at the maximum rate of interest permitted by law; and

H.      Such other and further relief that the court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Respectfully submitted.

**MARK A. ALEXANDER, P.C.**

By: ___/s/ *Mark Alexander*_____
Mark Alexander
State Bar No. 01007500
Mark@markalexanderlaw.com
5080 Spectrum Drive, Suite 850E
Addison, Texas 75001
Tel. (972) 544-6968
Fax. (972) 421-1500

Patrick DeBlase (SBN 167138)
(*Pro Hac Pending*)
deblase@dbelegal.com
**DEBLASE BROWN EYERLY LLP**
680 S. Santa Fe Ave.
Los Angeles, CA 90021
Telephone: (310) 575-9955
Facsimile: (310) 575-9919

**GISKAN SOLOTAROFF &
ANDERSON LLP**
Oren Giskan
(*Pro Hac Pending*)
ogiskan@gslawny.com
90 Broad Street, 10th Floor
New York, NY 10004
Telephone: (212) 847-8315
Attorneys for Plaintiffs