**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| Katherine M. Cleary, *et al.*, | § | |
| Individually and on behalf of | § | |
| others similarly situated. | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 4:21-cv-00184 |
| | § | |
| vs. | § | |
| | § | |
| American Airlines, Inc., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**
**PURSUANT TO FED. R. CIV. P. 23**

## **TABLE OF CONTENTS**

Table of Authorities ........................................................................................................... ii

I. CASE SUMMARY ...................................................................................................... 1

    A. Statement of the Nature and Stage of Proceeding........................................... 1

    B. Summary of the Argument ............................................................................... 2

    C. Class Representatives....................................................................................... 2

    D. Common Evidence Establishes AA's Pattern of Overcharging Baggage Fees ............. 4

II. THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23................ 5

    A. The Standard for Class Certification.............................................................. 5

    B. The Class Is Ascertainable ............................................................................ 8

        1.  Recipients of Confirmations Promising Free Bags............................... 10

        2.  Holders of AA-Branded Credit Cards.................................................. 11

        3.  Elite Status ......................................................................................... 13

        4.  Class of Service .................................................................................. 13

        5.  "Up to Three" Bags at Point-of-Purchase .......................................... 14

        6.  Bags 51-70 pounds.............................................................................. 14

III. THIS ACTION SATISFIES THE REQUIREMENTS OF FED. R. CIV. P. 23(a).......... 15

    A. Numerosity and Impracticality of Joinder .................................................. 15

    B. Common Questions of Law or Fact ............................................................. 16

    C. Typicality of Claims..................................................................................... 19

    D. Adequacy of Representation ........................................................................ 20

i

IV. THIS ACTION SATISFIES THE REQUIREMENTS OF RULE 23(b)(3) .................... 21

    A. Common Questions of Law or Fact Predominate ......................................................... 21

        1.  Common Issues Predominate for Plaintiff's Breach of Contract Claims. ............. 22

    B. The Class Satisfies the Superiority Requirement ........................................................... 22

V. STATEMENT REGARDING LOCAL RULE 23.2 ........................................................... 23

    A. LR 23.2(c): Basis of the Named Plaintiffs' Claim to be Adequate Representatives ... 24

    B. LR 23.2(d): The Basis for Determining Any Required Jurisdictional Amount .......... 24

    C. LR 23.2(e): The Type and Estimated Expense of Notice ............................................ 24

    D. LR 23.2(f): Discovery Necessary for Class Certification Hearing ............................. 25

    E. LR 23.2(g): All Arrangements for Payment of Plaintiffs' Attorneys' Fees ................ 25

CONCLUSION ........................................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Ackal v. Centennial Beauregard Cellular L.L.C.*, 700 F.3d 212 (5th Cir. 2012) .......................... 6

*Alhassid v. Bank of Am., N.A.,* 307 F.R.D. 684 (S.D. Fla. 2015).................................................. 19

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) .................................................. *passim*

*American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) ................................................... 8 n.6

*Arkansas Educ. Ass'n v. Board of Educ.*, 446 F.2d 763 (8th Cir. 1971)..................................... 15

*Bratcher v. Nat'l Standard Life Ins. Co. (In re Monumental Life Ins. Co.)*,
  365 F.3d 408 (5th Cir. 2004)..................................................................................................... 15

*Carey v. Greyhound Bus Co.*, 500 F.2d 1372, 1381 (5th Cir. 1974) ........................................... 15

*Cole v. Livingston*, 4:14-CV-1698, 2016 WL 3258345 (S.D. Tex. June 14, 2016),
  *aff'd sub nom. Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017) ..................................................... 7

*Comcast v. Behrend*, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013).................................................. 7

*Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240 (5th Cir. 2020) ........................................... 6

*DeBremaecker v. Short*, 433 F.2d 733 (5th Cir. 1970)............................................................. 8, 9

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974).................................................................... 8

*Enron Corp. Securities Derivative "ERISA" Litigation*, 228 F.R.D. 541 (S.D. Tex. 2005).......... 8

*Flecha v. Medicredit, Inc.*, 946 F.3d 762 (5th Cir. 2020)............................................................. 6

*Forbush v. JC Penney Co.*, 994 F.2d 1101 (5th Cir. 1993) ......................................................... 17

*Frey v. First Nat'l Bank Sw.*, 602 F. App'x 164 (5th Cir. 2015).................................................... 9

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981)................................................................................ 6

*James v. City of Dallas, Tex.*, 254 F.3d 551 (5th Cir. 2001) ....................................................... 19

*John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443 (5th Cir. 2007)..............................................7, 9

*Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122 (5th Cir. 1969)...............................20

*Lightbourn v. County of El Paso*, 118 F.3d 421 (5th Cir. 1997) ..................................17

*Max Bazerman v. American Airlines, Inc.*,
    Case No. 1:17-CV-11297-WGY (D. Mass. 2017) ..........................................*passim*

*Mullen v. Treasure Chest Casino*, 186 F.3d 620 (5th Cir. 1999) ......................................9, 17, 19

*Orantes-Hernandez v. Smith,* 541 F. Supp. 351 (C.D. Cal. 1982)..............................................16

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .................................................23

*Regents of Univ. of Cal. v. Credit Suisse First Bos. (USA)*, 482 F.3d 372 (5th Cir. 2007) ..........21

*Rubenstein v. Collins,* 162 F.R.D. 534 (S.D. Tex. 1995)................................................8

*Sartin v. EKF Diagnostics, Inc.*, CV 16-1816, 2016 WL 7450471 (E.D. La. Dec. 28, 2016) .......9

*Senter v. General Motors Corp.*, 532 F. 511 (6th Cir. 1976),
    *cert. denied*, 429 U.S. 870 (1976) .....................................................17

*Stillmock v. Weis Markets, Inc.,* 385 F. App'x 267 (4th Cir. 2010)..............................................21

*Stirman v. Exxon Corp.,* 280 F.3d 554 (5th Cir. 2002).................................................19

*Torres v. Am. Airlines, Inc.*, Civil Action No. 4:18-cv-00983-O, 2020 U.S. Dist. LEXIS 109895,
    (N.D. Tex. May 22, 2020)............................................................6

*Unger v. Amedisys Inc.*, 401 F.3d 316 (5th Cir. 2005) ................................................22

*Vita Nuova, Inc. v. Azar*, Civil Action No. 4:19-cv-00532-O, 2020 U.S. Dist. LEXIS 250182
    (N.D. Tex. Dec. 2, 2020)....................................................7, 8, 9

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). .....................................6, 7, 16

*Yaffe v. Powers*, 454 F.2d 1362 (1st Cir. 1972).........................................................16

*Zeidman v. J. Ray McDermott & Co*., 651 F.2d 1030 (5th Cir. 1981) .........................................16

**Treatises**

Moore's Federal Practice ....................................................................................... 15, 19

Wright, et al., 7A *Fed. Practice & Proc.* § 1751 (3d ed.) ........................................ 5

Wright, et al., 7A *Fed. Practice & Proc.* § 1760 (3d ed.) ........................................ 9

Wright et al., 7A *Fed. Practice & Proc.* § 1762 (3d ed.) ......................................... 15

**Rules**

Fed. R. Civ. P. 23(a) ......................................................................................... *passim*

Fed. R. Civ. P. 23(a)(1) ...................................................................................... 15, 16

Fed. R. Civ. P. 23(a)(2) ...................................................................................... 16, 19

Fed. R. Civ. P. 23(a)(3) ...................................................................................... 19, 20

Fed. R. Civ. P. 23(a)(4) ...................................................................................... 20, 21

Fed. R. Civ. P. 23(b) ......................................................................................... *passim*

Fed. R. Civ. P. 23(b)(3) ..................................................................................... *passim*

Fed. R. Civ. P. 23(h) ............................................................................................... 25

**Statutes**

Tex. Bus. & Com. Code § 2.725 ............................................................................ 8 n.6

Tex. Civ. Prac. & Rem. Code § 38.001 ..................................................................... 25

# I.      CASE SUMMARY

Defendant American Airlines, Inc. ("Defendant" or "AA") offers certain passengers one or more free checked bags when they travel. Though Plaintiffs and other members of the class were entitled to one or more free checked bags, AA charged them to check their bags. This case is particularly suited for class treatment as it presents two predominant common question: (1) what are the documents that comprise the contract between American Airlines and its passengers that governs the charging of checked baggage fees? and (2) what did that contract state regarding charging members of the class baggage fees?

## A.  Statement of the Nature and Stage of Proceeding

On February 25, 2021,[1] Plaintiffs filed a Class Action complaint in the United States District Court of the Northern District of Texas, Fort Worth Division, asserting a claim of breach of contract. Defendant answered the complaint on April 26, 2021. The parties then conducted limited discovery focused on class certification issues.

Plaintiffs allege that they and all other class members entered into valid and enforceable written contracts with AA for air transportation. Each contract offered Plaintiffs and the other members of the Class a free checked bag. Plaintiffs and all members of the class accepted AA's offer and fully performed their obligations under the contracts.

Nonetheless, in breach of the contracts, AA refused and failed to provide the free baggage transportation services specified in the contracts. In breach of the contracts with class

---

[1] This case was originally filed in the Central District of California on September 4, 2020.  *See Katherine M. Cleary, et al., v. American Airlines, Inc.*, Case No. 2:20-CV-08139.  Defendant moved to transfer the case to this Court and following jurisdictional discovery, Plaintiffs agreed to the transfer.

members, AA's centralized software system, the PSS, required all members of the class to pay these baggage fees.

As a direct result of AA's breach of the contract, Plaintiffs and all other members of the class suffered damages in the form of bag check fees.

### B.  Summary of the Argument

Plaintiffs argue that the proposed class meets the requirements of Fed. R. Civ. P. 23(a) and (b)(3). The proposed class satisfies the four requirements of Rule 23(a): (1) the proposed class of AA's ticket holders is so numerous that joinder is impractical; (2) there are questions of law or fact common to the proposed class of such ticket holders; (3) the claims of the named Plaintiffs are typical of the class claims; and (4) the named Plaintiffs will fairly and adequately protect the interest of the class because they are holders of tickets purchased from AA subject to the challenged actions and their counsel have extensive experience litigating class actions.  The proposed class also satisfies the Rule 23(b)(3) requirements of predominance and superiority. This case involves a straightforward inquiry. Class membership can be determined through AA's computerized records including record locator logs, which can be filtered and sorted to identify the passengers who were overcharged.

### C.  Class Representatives

Class Representative William Cleary resides in Los Angeles, CA. On or around February 6, 2017, Mr. Cleary was at his home when he purchased tickets online from AA for travel from Los Angeles, CA, to Dallas, TX, and return. Mr. Cleary and his wife were logged into his wife's AA account when he purchased his ticket. When he purchased these tickets, Mr. Cleary and AA entered into a contract which specified that he could each check his first bag for no additional

charge. *See* Ex. 1.[2] AA presented this term of its contract both in the confirmation screen shown at the conclusion of booking, and in the e-ticket confirmation email AA sent after booking. *See id*. However, when Mr. Cleary arrived at the airport on March 21, 2017, with a bag to check, AA required him to pay to check his bag, and similarly upon his return three days later. He paid the fees. *See* Exs. 2-3.

Class Representative Filippo Ferrigni resides in St. Louis, Missouri. In approximately 2014, Dr. Ferrigni was onboard an AA international flight from Jamaica to the United States when an oral solicitation invited him to apply for an AA-partner credit card, which he understood would allow him to check a bag at no additional charge on each of his future flights with AA. *See* Ex. 4, Deposition Transcript of Dr. Filippo Ferrigni ("Ferrigni Dep.") at 37:15-24. A flight attendant on the flight gave Dr. Ferrigni an application for the card, *see id.*, and Dr. Ferrigni later applied for the specified credit card online. *See id.* at 43:21-23.

On November 12, 2018, Dr. Ferrigni purchased a ticket online from AA for travel for himself and his wife from St. Louis to St. Kitts and return. *See* Ex. 5. When Dr. Ferrigni arrived at the St. Louis airport on April 2, 2019, the AA check-in agent told him his credit card provided a free checked bag for him and his travel companion only on domestic flights. *See* Ex. 4, Ferrigni Dep. at 84:2-9. Dr. Ferrigni had no choice but to pay the fee in order to check his bag. *See* Ex. 6. On April 9, 2019, Dr. Ferrigni and his wife arrived at the St. Kitts airport to begin their journey home, and again he (again having no choice) was required to pay to check his bag and his wife's bag. *See* Ex. 7. After an overnight connection in Miami, Dr. Ferrigni and his wife arrived at the Miami airport on April 10 for the domestic flight from Miami to St. Louis. Yet again, and despite

---

[2] All Exhibits ("Ex.") referenced herein are included in the Appendix and described in the Declaration of Oren Giskan in Support of Plaintiffs' Motion for Class Certification ("Giskan Decl.") filed herewith.

this flight segment being entirely domestic, AA required Dr. Ferrigni to pay to check his bag and his wife's bag. *See* Ex. 6. Dr. Ferrigni paid the fees on all three occasions.

### D. Common Evidence Establishes AA's Pattern of Overcharging Baggage Fees

Complaints of excess baggage fees are not new to Defendant. Indeed, AA produced evidence that indicates that, in any given month during the Class Period, it receives several complaints of baggage overcharges per month.[3] *See* Ex. 8, AA Customer Complaint Chart.

Just four years ago, AA faced another class action over its baggage charging practices, and ultimately settled the case three years ago. *See Max Bazerman v. American Airlines, Inc.*, Case No. 1:17-CV-11297-WGY (D. Mass. 2017). Even after repeated complaints and a class action settlement, AA continues to overcharge its customers for checked bags, in breach of its contracts with its passengers. Notably, this case does not seek to relitigate any of the claims settled in the *Bazerman* action. At issue in this case are certain claims that were not settled or released in *Bazerman*.[4] Among these claims are the following situations[5]:

1. Charges incurred by people who received emails confirmations from AA that promised them free checked bags. The *Bazerman* settlement released claims by those persons who were included in that class list and to whom individual notice was directed. Class members in this case will be individuals to whom no notice was sent, such as Class Representative William Cleary.

---

[3] Plaintiffs are confident that what AA has produced thus far is an understatement of the number of complaints it receives relating to erroneous baggage charges. AA's own witness conceded that he did not know if the document produced by AA comprised all the excess baggage calculation complaints. *See* Ex. 9, Deposition Transcript of Todd Waller ("Waller Dep.") at 350:24-351:1.

[4] The *Bazerman* settlement released only charges made on or before June 7, 2018. AA continued to charge bag fees in breach of its contracts with passengers after that date.

[5] These situations are described on page 16 of the filed Class Action Complaint (ECF No. 1).

2. Charges to holders of AA-partner credit cards that were promised a free checked bag. The *Bazerman* settlement and release did not cover such charges.

3. Charges to customers with Elite and Partner Elite status, such as AA Gold or AA Platinum, who were promised by AA that they could check one or more free bags.

4. Charges to passengers who purchased a Business or First-Class ticket, or those who upgraded to such a ticket, to whom AA promised free checked bags.

5. Charges to passengers who had purchased tickets with premium benefits, including the benefit that they could check "up to three bags" for free.

6. Charges relating to overweight bags (weighing 51-70 pounds).  The *Bazerman* settlement and release did not cover charges resulting from AA's promises about the weight of checked bags. AA promised that First Class, Business Class, Executive Platinum, and oneworld Emerald members may check bags that weigh up to 70 pounds at no additional charge, yet it nonetheless charged these passengers "overweight" fees for bags weighing 51 to 70 pounds.

## II.   THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23

### A.  The Standard for Class Certification

The purpose of Fed. R. Civ. P. 23 is to provide for the efficient administration of justice, as the class action mechanism allows large numbers of claims involving the same core issues to proceed in the aggregate, providing a path to relief where otherwise there would be none. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); Wright, et al., 7A *Fed. Practice & Proc.* § 1751 (3d ed. 2010) ("Class actions serve an important function in our system of civil justice."). The decision to certify is within the broad discretion of the court, but that discretion must be

5

exercised within the framework of Rule 23  *Ackal v. Centennial Beauregard Cellular L.L.C.*, 700 F.3d 212, 215 (5th Cir. 2012).

"To obtain class certification, parties must satisfy Federal Rule of Civil Procedure 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3)." *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 252 (5th Cir. 2020) (internal brackets and citations omitted); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). Rule 23(a)'s four threshold requirements are:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These four requirements are "commonly known as 'numerosity, commonality, typicality, and adequacy of representation.'" *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766 (5th Cir. 2020) (quoting Fed. R. Civ. P. 23(a)).  In addition to satisfying Rule 23(a)'s requirements, a class plaintiff must also satisfy one Rule 23(b) requirement.  *See Torres v. Am. Airlines, Inc.*, Civil Action No. 4:18-cv-00983-O, 2020 U.S. Dist. LEXIS 109895, at *18 (N.D. Tex. May 22, 2020).  Here, the proposed class must satisfy the requirements in Rule 23(b)(3) by showing that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The Court must conduct a "rigorous analysis" of the Rule 23 prerequisites. *Comcast v. Behrend*, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 131

6

S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). Although in some circumstances this "rigorous analysis" may "entail some overlap with the merits of the plaintiff's underlying claim," *Dukes*, 131 S. Ct. at 2551, the Supreme Court has stated that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merit questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013) (citation omitted); *see also Cole v. Livingston*, 4:14-CV-1698, 2016 WL 3258345, at *3 (S.D. Tex. June 14, 2016), *aff'd sub nom. Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017) ("'However, Rule 23 does not require a showing that the questions common to the class "will be answered, on the merits, in favor of the class.' . . . 'Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.'" (quoting *Amgen,* 133 S. Ct. at 1191, 1194-95)). "The Court should 'seek to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.'" *Torres*, 2020 U.S. Dist. LEXIS 109895, at *19 (citing *Flecha*, 946 F.3d at 766).

Additionally, as this Court has previously explained, "the Fifth Circuit has articulated an 'ascertainability' doctrine implicit in Rule 23." *Vita Nuova, Inc. v. Azar*, Civil Action No. 4:19-cv-00532-O, 2020 U.S. Dist. LEXIS 250182, at *4 (N.D. Tex. Dec. 2, 2020) (citing *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007)) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23."). "To maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (*per curiam*) (citations omitted).

Courts have adopted a liberal approach to class certification by requiring that "[i]f a Court errs, the Court should err in favor of the maintenance of a class action." *Rubenstein v. Collins,* 162 F.R.D. 534, 536 (S.D. Tex. 1995). Thus, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *In re Enron Corp. Securities Derivative "ERISA" Litigation*, 228 F.R.D. 541, 555 (S.D. Tex. 2005) (quoting *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 178 (1974)).

## B. The Class Is Ascertainable

Plaintiffs move to certify the following Class:

> All persons who purchased a ticket for air travel on American Airlines ("AA") subject to AA's promises  in the (1) Checked Baggage Policy, (2) E-ticket Confirmation Email,  (3) booking confirmation screen, (4) point of purchase, and/or (5) credit card offers that their ticket would allow the passenger to check a specified number of bags for free, who were required to pay to check one or more such bags, during the period September 16, 2013, to the present (the "Class Period"). [6]

The proposed class comprises all persons who contracted with AA, which contract obligated AA to transport a certain number of checked bags for free, which AA breached. This class is ascertainable as a clearly identifiable group.

While ascertainability is not a requirement under Rule 23, "courts only certify classes ascertainable under objective criteria." *Vita Nuova*, 2020 U.S. Dist. LEXIS 250182, at *6 (citing

---

[6] Texas's Statute of Limitations ("SOL") for breach of contract is four years. Tex. Bus. & Com. Code § 2.725. As Plaintiffs' original complaint was filed on September 4, 2020, *see* n.1, *supra*, the limitations period begins September 4, 2016. However, *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), holds that timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint. Under *American Pipe*, Texas's four-year SOL should be extended due to tolling during the pendency of *Bazerman*, meaning the limitations period begins September 16, 2013. Plaintiffs anticipate that AA will raise SOL defenses in its opposition.  But the SOL is an issue that is properly litigated on summary judgement. If necessary, the Class Period can be adjusted following that adjudication.

*DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (*per curiam*)). However, "the court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding." *Frey v. First Nat'l Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015) (citations omitted). As this Court recently noted, "[t]he Fifth Circuit has upheld the ascertainability of a class even when a definition necessitates individualized membership assessments that might follow litigation, so long as the class definition is sufficiently clear." *Vita Nuova*, 2020 U.S. Dist. LEXIS 250182, at *6 (citing *Mullen v. Treasure Chest Casino*, 186 F.3d 620, 624 (5th Cir. 1999)).  So long as the proposed class is not "amorphous" or "imprecise," it should be certified.  *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 n.5 (5th Cir. 2007).  "[I]f the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist." *Sartin v. EKF Diagnostics, Inc.*, CV 16-1816, 2016 WL 7450471, at *6 (E.D. La. Dec. 28, 2016) (internal quotations omitted); *see also* 7A Fed. Prac. & Proc. Civ. § 1760 (3d ed.) (stating same).

Moreover, breach of contract class actions are straightforward.  Class members can almost always be identified through records in the defendant's or its vendors' possession.  AA's records memorialize the number of free bags each passenger checked, as well as which passengers paid checked baggage fees and in what amounts. *See* Ex. 9, Waller Dep. at 221:10-14 (AA records report the amount each passenger was charged for each bag). AA's records also memorialize which passengers were entitled to check bags at no charge.  *See id.* at 232:1-8 (AA records report which passengers paid for a premium ticket that included free checked bags), 233:12-20 (AA records report which passengers had "elite status" that entitled them to check certain bags at no additional charge), 232:9-12 (AA records are searchable by date).  These categories of passengers, all of which are ascertainable, are set forth below.

9

### 1.   Recipients of Confirmations Promising Free Bags

AA sent certain passengers an E-ticket Confirmation Email promising them a free checked bag, and showed that same promise on the booking confirmation screen on AA.com. When these passengers arrived at the airport for their flights, they were forced to pay to check a bag.  AA thereby breached the promises it made in the E-ticket.  Plaintiffs have produced E-ticket Confirmation Emails from passengers other than the Class Representatives who were recipients of this E-ticket Confirmation Emails promising a free checked bag.  *See* Exs. 10-11. Even the complaints produced by AA related to excess baggage charges identify other recipients of such E-ticket Confirmation Emails.  *See* Ex. 8, AA Customer Complaint Chart at AA-CLEARY000037610 ("I do not understand why I was charged for my first checked bag for the round trip. I do not think I should have and am asking for a refund. I am copying and pasting what is stated verbatim in my confirmation email"), AA-CLEARY 000037697 ("When we booked this flight, the reservation information that we printed following booking (prior to final ticketing), stated under 'Baggage Information' that there would be no charge for the first checked bag . . . When I got to the airport, I was nevertheless charged $30 for my checked bag."). AA will argue that it cannot identify all passengers who received such E-ticket Confirmation Emails. But AA was able to identify passengers who received E-ticket Confirmation Emails once – as part of the *Bazerman* litigation – yet by all indications overlooked some passengers including Mr. Cleary due to incorrect assumptions about who was affected. Plaintiffs' discussions with AA already revealed a promising theory about a set of passengers AA previously overlooked. *See* Ex. 9, Waller Dep. at 272:20-273:13. If discovery proves Plaintiffs' theory to be correct, AA can rerun the *Bazerman* code to find these additional passengers. This is a matter that Plaintiffs will explore during merits discovery. If Plaintiffs are unsuccessful, the

Class can be redefined to exclude them. But Plaintiffs cannot be expected to simply take AA's word at this early stage.

### 2.  Holders of AA-Branded Credit Cards

To induce passengers to apply for credit cards issued by AA's partner banks, AA promises that passengers with such cards may check their first bag without charge when they travel on AA.  But AA nonetheless charges these passengers to check bags AA had promised to transport for free.

As to passengers with AA credit cards traveling domestically, it appears AA simply messed up. One passenger's experience, discussed during AA's deposition, is illustrative: the passenger was approved for an AA-branded credit card. He flew on AA 14 days after the approval and was erroneously charged a checked bag fee. Despite the fact that (at best) the credit card offered a free bag benefit to the customer beginning 7 days from opening the credit card account, AA did not enter the benefit into passenger's loyalty accounts within that time frame, leading to the erroneous charge. *See* Ex. 9, Waller Dep. at 240:11-18, 311:14-19.[7] Other passengers similarly report AA requiring them to pay to check bags, despite their having eligible credit cards. *See* Exs. 12-17. Still other passengers complain that despite the contract specifying that a free first bag would be available to the cardholder and all others in the same reservation, AA charged the others.  *See* Ex. 18.

As to passengers with AA credit cards traveling internationally, AA's advertising and marketing prominently tout a "first checked bag fee waived" with no adjacent or prominent text restricting that offer in any way.  Plaintiffs produced screenshots of AA.COM pages, *see* Exs. 20

---

[7] This passenger was Eric Earll, a Plaintiff who is not being offered as a Class Representative on this motion.

– 23, as well as onboard printed solicitations, *see* Ex. 24, each describing a first checked bag fee with no adjacent or prominent exclusion of international travel.  Plaintiffs further produced onboard recordings of AA staff reading credit card promotions that offered a free checked bag with no mention of an international exclusion, and Plaintiffs also produced onboard recordings of AA aircraft playing prerecorded audio-video announcements of that baggage benefit without any international exclusion.[8] Indeed, Plaintiff Ferrigni heard such a solicitation on an international flight. *See* Ex. 4, Ferrigni Dep. at 37:15-20. Passengers have widely complained to AA about the surprise international exclusion, including Ex. 8, AA Customer Complaints at AA-CLEARY-000376087 ("During my flight, the flight crew again extolled the virtues of this same card and again said that there is no fee for the first checked bag, never, ever mentioning that they would be fees for every checked bag if it is not a domestic flight") and countless complaints on Twitter. *See* Exs. 18, 25-26. AA routinely brushes aside these complaints by claiming that the international exclusion was always included in fine print. This squarely raises the question of what exactly constitutes the contract or, put differently, whether AA can tout "free first checked bag" at every opportunity, but not provide that benefit.  *See* Ex. 4, Ferrigni Dep. at 71:3-14 ("When I was issued the card, it was with the understanding that there were no limitations on those first checked bag policy . . . I really have no reason to dig four layers deep into the policy for American Airlines."). AA may oppose class treatment of passengers' international credit card baggage claims because different AA advertisements made differing statements. *See* Answer at p. 23 (ECF No. 25.). But to the extent that AA's obligation to these passengers comes from statements made in AA's marketing materials, AA's business records indicate which marketing

---

[8] Copies of the audio files were produced by Plaintiffs; Plaintiffs will provide such files to the Court at the Court's request.

channel – and hence which promises – caused each customer to sign up for the credit card. *See* Ex. 9, Waller Dep. at 361:10 to 362:8 (AA records indicate which passengers clicked which offers, and hence memorialize which advertisement text a customer was responding to).[9]

### 3. Elite Status

This category of passengers, which includes AA customers with elite and partner elite status, such as AA Gold or AA Platinum, were promised that they could check one or more free bags. AA typically also memorialized this promise in the Baggage Info section of the E-ticket Confirmation Email. Nonetheless, when those passengers check a bag on the date of travel, AA sometimes charges a checked baggage fee. Complaints produced by AA related to excess baggage charges identify such passengers. *See* Ex. 8, AA Customer Complaint Chart at AA-CLEARY-000037610 ("I was charged 125 Euros in baggage fees, despite the fact that I am a Platinum AA member."), AA-CLEARY-000037608 (" I reached out to AA and requested the initial refund [ ] because as a Platinum member I am always allowed to check a second bag at no charge."). Additionally, Plaintiffs have produced evidence, through public social media posts, that this problem is widespread. *See* Exs. 13, 27-37. This category is ascertainable through a search of AA's computerized records. *See* Ex. 9, Waller Dep. at 233:12-20.

### 4. Class of Service

AA promised passengers that if they bought a Business or First-Class ticket, or if they upgraded to such a ticket, they would get free checked bags. Nonetheless, when these passengers checked into their flights, they were forced to pay to check their bags. Plaintiffs have produced evidence, through public social media posts, of this category of breach of contract. *See* Exs. 38-

---

[9] AA produced only a small sample of credit card offers in discovery to date despite Plaintiffs' request to produce all of them.

40, 32. This category is ascertainable through a search of AA's computerized records. *See* Ex. 9, Waller Dep. at 232:1-8.

### 5. "Up to Three" Bags at Point-of-Purchase

Certain passengers qualify for free checked bags based on the statements AA made when inducing them to buy a premium ticket such as a Business Class or First-Class ticket, or when inducing them to upgrade to such a ticket.  For a time period, AA used the words "up to three bags" to describe the supposed benefit of premium tickets, yet AA actually charged as much as $200 if a passenger sought to check a third bag.  Indeed, many passengers reported, on Twitter and other public discussion fora, that AA did not uphold its end of the contract. *See* Ex. 41. This category is ascertainable through a search of AA's computerized records. *See* Ex. 9, Waller Dep. at 233:12-20 (searching by class of service), 232:9-10 (date of purchase), 233:24:234-1 (searching based on purchase from AA.COM), 234:2-13 (searching by combination of factors).

### 6. Bags 51-70 Pounds

As described in paragraphs 3. and 4. above, AA's contracts provide that AA Elite status members and AA Business and First-Class passengers are entitled to check free bags aboard American Airlines.  The contracts further provide that Executive Platinum members, oneworld Emerald members, and Business and First-Class passengers may check bags that weigh up to 70 pounds for free.  But AA charged these passengers to check bags that it was contractually obliged to transport for free.  Passengers have complained about such overcharges to AA. *See* Ex. 8, AA Customer Complaint Chart at AA-CLEARY-000037606 ("Executive Platinum passengers [such as myself] are allowed to travel with three pieces of luggage weighing 70lbs each."). Plaintiffs also produced records of complaints of such breaches. *See* Exs. 42-43. This

category is ascertainable through a search of AA's computerized records. *See* Ex. 9, Waller Dep. at 222:11-21 (searching for passengers who paid overweight bag fees).

## III.    THIS ACTION SATISFIES THE REQUIREMENTS OF FED. R. CIV. P. 23(a)

The proposed class definition also meets the requirements of Fed. R. Civ. P. 23(a) because: (1) The proposed class of AA's ticket holders is so numerous that joinder is impractical; (2) there are questions of law or fact common to the proposed class of such ticket holders; (3) the claims of the named Plaintiffs are typical of the class claims; and (4) the named Plaintiffs will fairly and adequately protect the interest of the class because they are holders of tickets purchased from Defendant subject to the challenged actions, and because their counsel have extensive experience litigating class actions.

### A.  Numerosity and Impracticality of Joinder

The proposed class satisfies Rule 23(a)(1) because the class is "so numerous that joinder is impractical." Courts have found the numerosity requirement of Rule 23(a)(1) satisfied where relatively few class members are involved. *See e.g.*, *Carey v. Greyhound Bus Co*., 500 F.2d 1372, 1381 (5th Cir. 1974) (number of class members assumed to be 28); *Arkansas Education Association v. Board of Education*, 446 F.2d 763, 765-66 (8th Cir. 1971) (class membership of 20 persons). *See generally*, 3B Moore's Federal Practice ¶ 23.05 [1], at 23-154 to 23-155 (1978).

Rule 23(a)(1) does not require the moving party to determine the exact size of the class, especially where it would be unreasonable to require moving party to identify the names of all class members. *Bratcher v. Nat'l Standard Life Ins. Co. (In re Monumental Life Ins. Co.)*, 365 F.3d 408, 415 (5th Cir. 2004) (certifying class "although exact number of class members continuing to pay discriminatory premiums was unknown"); 7 Wright and Miller, Fed. Practice & Proc.: Civil § 1762. Rather, "the conduct complained of is the benchmark for determining

15

whether a subdivision (b)(2) class exists." *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972). "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith,* 541 F. Supp. 351, 370 (C.D. Cal. 1982); *see also Zeidman v. J. Ray McDermott & Co*., 651 F.2d 1030, 1038 (5th Cir. 1981) (plaintiff must offer only a "reasonable estimate of the number of purported class members").

Here, numerosity is satisfied for two reasons. First, AA has stipulated to numerosity. *See* Ex. 44, May 28, 2021 Letter from Nicholas Lessin at 2. Second, given AA's size, the number of passengers and checked luggage that it transports each day, the hundreds of millions of dollars in revenue that it generates from checked baggage fees,[10] and the large number of customer complaints alleging bag fee overcharges, it is readily apparent that the class is numerous.

The numerosity requirement of Rule 23(a)(1) is satisfied.

**B.      Common Questions of Law or Fact**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Meeting this element requires that a plaintiff allege a "common contention of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011). The Fifth Circuit has held that the test for commonality "is not demanding and is met where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members."

---

[10] In 2019, AA charged approximately $1.4 billion in baggage fees.  *See* "Baggage Fees by Airline 2019," Bureau of Transportation Statistics, *available at* https://www.bts.gov/explore-topics-and-geography/baggage-fees-airline-2019 (last visited June 9, 2021).

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1997) (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)).  The bar for proving commonality is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members. *Forbush v. JC Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993).

AA's liability to the Class members depends on the answers to two key common questions:

(1) What are the documents that comprise the contract between American Airlines and its passengers that governs the charging of checked baggage fees?; and

(2) What did that contract state regarding charging members of the class baggage fees?[11]

Even where there are individual variations in the facts relating to a particular named plaintiff or proposed class member, the commonality requirement is satisfied so long as the class shares some common question of law or fact. *See, e.g. Lightbourn*, 118 F.3d at 426 ("allegations of similar . . . practices generally meet the commonality requirement"); *Senter v. General Motors Corp.*, 532 F. 511, 524 (6th Cir. 1976), *cert. denied*, 429 U.S. 870 (1976) (class certification granted in employment discrimination action brought on behalf of Black employees even though it was "manifest that every decision to hire, fire or discharge an employee may involve individual considerations").

That the parties dispute the answers to these common questions makes this case perfect for class certification. For instance, Plaintiffs submit that each contract between a passenger and AA includes:

- Ticket: The passenger's ticket or eticket, which contains terms such as the specific flight or flights, date and time, and class of service;

---

[11] These are not the only common questions. *See* Compl. at p. 18.

17

- AA's Standard terms and conditions: AA has two standard terms and conditions, one or both of which is incorporated into each Contract.

  o If a passenger purchases a ticket entirely for travel between points in the United States (which includes the fifty states, the District of Columbia, the U.S. Virgin Islands, and Puerto Rico; collectively, "Domestic Flights"), the applicable standard terms and conditions are the Conditions of Carriage.

  o If the passenger purchases a flight that is at least partially international, the standard terms and conditions also include the "International General Rules."

- Point of Purchase Terms: When a passenger makes a purchase on AA's website (AA.com), the terms shown there (such as fare, change fees, and baggage fees) become part of the contract when the passenger purchases the ticket. These terms presented to passengers at the point of purchase are typically summarized and memorialized in an AA.com screen entitled "Your Trip Summary."

- Credit Card Terms: When AA offers specific terms for passengers who are holders of an AA-partner credit card, the terms of such offer that relate to travel on AA also become part of the contract.

For its part, when asked to identify AA's contract with its passengers regarding checked bag fees, AA submitted the following response:

> All transportation of passengers and bags provided by American is subject to the terms and conditions in American's Conditions of Carriage and the documents incorporated by reference therein. The Conditions of Carriage incorporate by reference American's checked baggage policy by providing a hyperlink to "Checked bag policies" beneath a statement about checked bag limits and fees. In turn, the Checked Bag Policy sets forth specific rules and exceptions for baggage allowances and baggage fees for certain customers and certain destinations. This document contains baggage information relating to both domestic and international travel. Further, the

> Conditions of Carriage incorporate by reference the General Rules of the International Tariff ("the International Tariff") by providing a hyperlink to the International Tariff itself. The International Tariff sets forth additional baggage regulations applicable only to international routes.

*See* Ex. 47, Def.'s Objections and Responses to Plaintiffs' Second Set of Interrogatories at 7.

Similarly, the answer to the second question – what that contract states regrading baggage fees for class members – will be answered on a class-wide basis. As the resolution of these issues "will affect all . . . of the putative class members," *Mullen*, 186 F.3d at 625, Rule 23(a)(2) is satisfied.

### C.  Typicality of Claims

Rule 23(a)(3) requires that the claims of the named plaintiffs be "typical of the claims ... of the class." The test for typicality "focuses on the similarity between the named plaintiff's legal and remedial theories and the theories of those whom they purport to represent." *Mullen*, 186 F.3d at 625. Meeting this requirement usually follows from the presence of common questions of law. *See James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001) ("critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class"); *Stirman v. Exxon Corp.,* 280 F.3d 554, 562 (5th Cir. 2002) (same); 3B Moore's Federal Practice ¶ 23.06-2, at 23-325. It is a "permissive" requirement; "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Alhassid v. Bank of Am., N.A.,* 307 F.R.D. 684, 697 (S.D. Fla. 2015) (citations omitted).

As set forth above, Plaintiffs' claims present common questions of law and fact. The predominant common questions related to the terms of the contract and the breach of the contract are shared by Plaintiffs and the other members of the Class.

Plaintiffs have no interest that conflicts with those of the proposed class. They allege that they were charged for baggage fees in breach of their contracts with AA. They seek the same relief for themselves and for the class as a whole – a refund of improperly-collected baggage fees. There may be some individual issues down the road, but they do not defeat class certification because the common issues predominate.  Plaintiffs, like the class, were entitled to free checked bags based on AA's own promises as embodied in the contract.  Nothing more is required to satisfy the typicality requirement of Rule 23(a)(3).

### D.  Adequacy of Representation

The final requirement for class certification, set out in Rule 23(a)(4), is that the named plaintiffs "will fairly and adequately protect the interest of the class." The two principal elements of this requirement are: (1) that the class representative's interests co-extensive and not antagonistic to the class members' interests; and (2) that counsel for the named representatives is qualified. *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1124-25 (5th Cir. 1969).

The Class Representatives are certainly adequate.  They checked baggage on AA, were charged AA's check baggage fees despite being entitled to free checked baggage, and were injured in the same manner as the other Class members.  Thus, the Class Representatives have ample incentive to represent the class.  Moreover, each Class Representative has provided information and documents in responses to AA's Interrogatories and Requests for the Production of Documents.  On June 8, 2021, Class Representative Filippo Ferrigni sat for an all-day deposition. On June 17, Class Representative William Cleary will sit for his deposition.  The interests of the class representative here are not antagonistic to those of the proposed class members.  Their mutual goal is to declare that AA breached the contract with Plaintiffs.

Plaintiffs are represented by able counsel who are highly experienced in handling class actions, particularly large complex class actions involving complicated legal and factual issues. *See* Ex. 45, Firm Resumes. Counsel will adequately represent both named and unnamed class members. The requirements of Rule 23(a)(4) are satisfied in this case.

## IV.     THIS ACTION SATISFIES THE REQUIREMENTS OF RULE 23(b)(3)

In addition to satisfying the four requirements of Rule 23(a), a certifiable class action must meet one of the requirements of Rule 23(b). *Regents of Univ. of Cal. v. Credit Suisse First Bos. (USA)*, 482 F.3d 372, 295 (5th Cir. 2007). This action meets the requirements of Rule 23(b)(3), which is satisfied if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### A.  Common Questions of Law or Fact Predominate

Predominance is "readily met" in certain consumer cases. *Amchem*, 521 U.S. at 625. The touchstone for predominance analysis is efficiency. An issue "central to the validity of each one of the claims" in a class action, if it can be resolved "in one stroke," can justify class treatment. *Dukes*, 131 S. Ct. at 2551. There is predominance where the "qualitatively overarching issue" is the defendant's liability, such that "the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner." *Stillmock v. Weis Markets, Inc.,* 385 F. App'x 267, 273 (4th Cir. 2010) (addressing predominance in FCRA case seeking damages for alleged class-wide violations).

In addition, as the Supreme Court has held, while Rule 23(b)(3) requires that *questions* common to the class predominate, it does not require proof that those questions will be answered, on the merits, *in favor of* the class. *Amgen*, 133 S. Ct. at 1191. "[A] Rule 23(b)(3)

21

certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Id.* Regardless of whether this case is ultimately decided in favor of the class, the issue at class certification is whether its resolution will be determined by answering questions common to all class members.

As noted above, this action is particularly suited for class certification as it presents two predominant common questions that must be answered before any breach of contract claim can be adjudicated.

### 1. Common Issues Predominate for Plaintiff's Breach of Contract Claims.

This breach of contract claim involves a large number of putative class members who were promised free checked baggage aboard AA flights, a single defendant, and a common course of conduct that affected each plaintiff in the same way.  Plaintiffs' and the proposed class members' claims arise from the same conduct, *i.e.* AA erroneously charged them fees to check baggage after AA had promised not to charge such fees. *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005) ("Predominance" is where questions of law or fact common to the class members "predominate over any questions affecting only individual members."). Liability questions common to all members of the proposed class – including, but not limited to, the questions of what comprises the contract and what does that contract state about baggage fees for members of the class substantially outweigh any possible issues that are individual to each member of the class. These predominant common questions must be resolved before adjudicating the claim of any class member.

### B.  The Class Satisfies the Superiority Requirement

The superiority inquiry tests whether resolving a dispute on a class basis will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons

similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods.*, 521 U.S. at 615. In colloquial terms, this inquiry asks: should we do this once or thousands of times? Litigating this case as a class action will achieve significant economies of time, effort and expense for the Class and for the Court. Resolving the issue of contract construction once for thousands of baggage fee claims in one action is far superior to individual lawsuits because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3).  For these reasons, the Court should certify the Class.

Class actions are particularly appropriate where "it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  Under the facts here, such "pooling" considerations are particularly compelling, as it is obviously not economically viable for Class members to pursue $25 to $200 claims against AA on an individual basis. *See Amchem Prods.*, 521 U.S. at 609 (discussing the merits of aggregating small claims).  The instant class action provides redress for Class Members who individually may not have suffered the several thousands of dollars needed to prosecute an individual claim. A class-wide resolution of common issues through this lawsuit would potentially avoid individual cases that could be filed by thousands of Class Members for the same claims asserted here.

The remaining three factors of superiority (*i.e.* other, already-commenced lawsuits, undesirability of forum, difficulties in management) do not pose any issues.  For these reasons, the class action device is the superior means of resolving this case.

## V.    STATEMENT REGARDING LOCAL RULE 23.2

Finally, Local Rule ("LR") 23.2 requires the movant on a motion for class certification to address specific topics, many of which Plaintiffs have responded to herein under their Rule 23

analysis. For the remaining LR 23.2 topics, which comprise 23.2(c)-(g), Plaintiffs respond as follows:

### A.  LR 23.2(c): Basis of the Named Plaintiffs' Claim to be Adequate Representatives

Plaintiffs are members of the putative class and have no conflicts with the members of that class. *See* Section III.C., *supra*). The costs of this action will be advanced by Plaintiffs' counsel.

### B.  LR 23.2(d): The Basis for Determining Any Required Jurisdictional Amount

AA collected approximately $1.4 billion in baggage fees in 2019 alone.[12] Though Plaintiffs have not yet obtained discovery on the amount at issue in the action, AA has stipulated to numerosity, and Plaintiffs are confident that the amount in controversy exceeds the jurisdictional minimum under the Class Action Fairness Act. Plaintiffs base that belief on, among other things, the settlement in *Bazerman v. American Airlines* and the amount of overcharges uncovered there. Notably, AA has not sought to dismiss this action on the grounds that the jurisdictional amount has not been met.

### C.  LR 23.2(e): The Type and Estimated Expense of Notice

Plaintiffs' counsel has experience with class notice programs, including with classes larger than the proposed class here.  Based on that experience, Plaintiffs' counsel has concluded that it is both possible and administratively feasible to issue notice of class certification to individuals in this Action.

Plaintiffs anticipate that notice of class certification may be given to class members by email. AA maintains email for the vast majority of the class members and routinely communicates with those passengers by email (*e.g.* as to purchase receipts, schedule changes, checkin reminders,

---

[12] *See* n.6, *supra*.

24

etc.). For any passengers without email addresses in AA's business records, notification can be sent by postal mail. Plaintiffs' counsel can bear the cost of disseminating notice in this manner.

### D.  LR 23.2(f): Discovery Necessary for Class Certification Hearing

Discovery is in the early stages. Plaintiffs have obtained limited discovery from AA in the form of documents, interrogatory responses, and 30(b)(6) testimony. AA objected to numerous requests and refused to respond to others. *See* Ex. 46, American's Objections and Responses to Plaintiffs' First Set of Requests for Production and Ex. 47, Defendant's Objections and Responses to Plaintiffs' First Set of Interrogatories. In advance of the hearing on this Motion for Class Certification, Plaintiffs will seek discovery related to, among other things, (1) the credit card offers to members of the class that referenced a free checked bag; and (2) the reasons that AA's computer systems sent members of the class an e-ticket confirmation email specifying a free checked bag.

### E.  LR 23.2(g): All Arrangements for Payment of Plaintiffs' Attorneys' Fees

Counsel for Plaintiffs' have been retained on a contingency basis. In the event of a judgment or settlement, Plaintiffs' counsel will seek agreement from AA to pay attorneys' fees subject to approval by the Court, or Plaintiffs' counsel will petition the Court for an award of attorneys' fees out of any common fund resulting from that judgment or settlement, or pursuant to Tex. Civ. Prac. & Rem. Code § 38.001(8).  Any such fees will comply with Fed. R. Civ. P. 23(h).

## VI.   CONCLUSION

For the foregoing reasons, this action should be certified as a class action pursuant to Fed. R. Civ. P. Rule 23(a) and (b)(3), and the Court should appoint Plaintiffs William Cleary and Filippo Ferrigni as Class Representatives, and Giskan, Solotaroff & Anderson, LLP, and Mark A. Alexander P.C. as Class Counsel.

Dated: June 11, 2021

Respectfully submitted,

s/ Oren Giskan

_____

Oren Giskan (*pro hac vice*)
GISKAN SOLOTAROFF &
ANDERSON LLP
90 Broad Street, 10th Floor
New York, NY 10004
Telephone: (212) 847-8315
Facsimile: (646) 964-9610
ogiskan@gslawny.com

Mark Alexander
State Bar No. 01007500
MARK A. ALEXANDER, P.C.
5080 Spectrum Drive, Suite 850E
Addison, Texas 75001
Telephone: (972) 544-6968
Facsimile: (972) 421-1500
mark@markalexanderlaw.com

Michael C. Eyerly (*pro hac vice*)
DEBLASE BROWN EYERLY LLP
680 South Santa Fe Avenue
Los Angeles, CA 90021
Telephone: (310) 575-9955
Facsimile: (310) 575-9919
deblase@dbelegal.com
eyerly@dbelegal.com

*Attorneys for the Plaintiffs*

## **CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1a.**

I met and conferred with counsel for AA, who indicated AA would oppose certification of the class.

s/ Oren Giskan
Oren Giskan

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon all counsel of record via the Court's CM/ECF system on this 11th day of June 2021.

s/ Oren Giskan
Oren Giskan
