## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

Katherine M. Cleary, *et al.*,           §
                                         §
                    Plaintiffs,          §
                                         §
        v.                               §
                                         §      Civil Action No. 4:21-cv-00184-O
American Airlines, Inc.,                 §
                                         §
                    Defendant.           §
                                         §

## DECLARATION OF OREN GISKAN IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1.      I am co-counsel for Plaintiffs and the proposed Class in this action. I am a Partner at the law firm of Giskan Solotaroff & Anderson LLP. I submit this declaration in opposition to Defendant's Motion for Summary Judgment.

2.      I make this Declaration to put before the Court the Appendix containing the Exhibits relied on in Plaintiffs' and Classes' Memorandum of Law in Opposition to American Airlines, Inc.'s ("AA") Motion for Summary Judgment.

3.      All the documents annexed as Exhibits consist of deposition transcripts and documents produced by the parties to this lawsuit with the exception of Exhibits 16 and 27-33.

4.      Exhibits that are marked with Bates numbers beginning with a "PLAINTIFFS" prefix were produced by Plaintiffs.

5.      Exhibits that are marked with Bates numbers beginning with a "AA-CLEARY" prefix were produced by Defendant.

6.     Exhibits that are marked with Bates numbers beginning with a "NATIVE" prefix were produced by Plaintiffs.

7.     **EXHIBIT 1** in the Appendix is a true and correct copy of a compilation of social media marketing documents produced by American Airlines. Portions of this document were marked as confidential, and it is filed under seal.

8.     **EXHIBIT 2** in the Appendix is a true and correct copy of a compilation of marketing documents exchanged by the parties. Portions of this document were marked as confidential, and it is filed under seal.

9.     **EXHIBIT 3** in the Appendix is a true and correct copy of a compilation of online marketing documents and web pages produced. Portions of this document were marked as confidential, and it is filed under seal.

10.    **EXHIBIT 4** in the Appendix is a true and correct copy of a compilation of marketing documents exchanged by the parties.

11.    **EXHIBIT 5** in the Appendix is a true and correct copy of a compilation of documents produced by AA. These documents are marked as confidential, and it is filed under seal.

12.    **EXHIBIT 6** in the Appendix is a true and correct copy of a compilation of social media complaints.

13.    **EXHIBIT 7** in the Appendix is a true and correct copy of AA's Responses and Objections to Plaintiffs' Second Set of Interrogatories.

14.    **EXHIBIT 8** in the Appendix is a true and correct copy of the transcript of the deposition of Todd Waller dated June 3, 2021. This document is filed under seal.

15.    **EXHIBIT 9** in the Appendix is a true and correct copy of the transcript of the deposition of Sharon Ashley-Corless dated March 1, 2022. This document is filed under seal.

16.    **EXHIBIT 10** in the Appendix is a true and correct copy of the document bearing the Bates number AA-CLEARY-38463. This document is filed under seal.

17.    **EXHIBIT 11** in the Appendix is a true and correct copy of the document bearing the Bates number AA-CLEARY-38526. This document is filed under seal.

18.    **EXHIBIT 12** in the Appendix is a true and correct copy of the transcript of the deposition of Todd Waller dated January 20, 2022. This document is filed under seal.

19.    **EXHIBIT 13** in the Appendix is a true and correct copy of the document bearing the Bates numbers AA-CLEARY-00050806-0050815 and AA-CLEARY-00052955. AA-CLEARY-00052955 are tabs from an Excel spreadsheet produced by American Airlines that correspond to defects identified by Plaintiffs' counsel in discovery after AA's 30(b)(6) witness denied that such defects had ever existed. This document is filed under seal.

20.    **EXHIBIT 14** in the Appendix is a true and correct copy of transcript of the deposition of Todd Waller dated March 3, 2022. This document is filed under seal.

21.    Pursuant to the Court-ordered notice plan, Notice of Class Certification was sent by email to the approximately 1.4 million members of the email class.

22.    **EXHIBIT 15** in the Appendix is a true and correct copy of the documents bearing the Bates number AA-CLEARY-00051475-51477 and AA-CLEARY-00051504-51509. This document is filed under seal.

23.    **EXHIBIT 16** in the Appendix is a true and correct copy of a demonstrative video from Plaintiffs.

24.     **EXHIBIT 17** in the Appendix is a true and correct copy of the document bearing the Bates number AA-CLEARY-00055264.

25.     **EXHIBIT 18** in the Appendix is a true and correct copy of the document bearing Bates number PLAINTIFFS002203.

26.     **EXHIBIT 19** in the Appendix is a true and correct copy of the document bearing Bates number AA-CLEARY-00037817.

27.     **EXHIBIT 20** in the Appendix is a true and correct copy of a compilation of documents displaying American Airlines' Wheel of Fortune, "The Flight is Right."  These images were taken in Miami in 2021 and 2022 and Philadelphia in 2022. They were featured on social media by different outlets.

28.     **EXHIBIT 21** in the Appendix is a true and correct copy of the videos and audio files bearing Bates numbers NATIVE000001-3, PLAINTIFFS002290-2291, and AA-CLEARY-00053838 and AA-CLEARY-00053872-53873.

29.     **EXHIBIT 22** in the Appendix is a true and correct copy of document bearing the Bates number AA-CLEARY-00053894. This document is filed under seal.

30.     **EXHIBIT 23** in the Appendix is a true and correct copy of the documents bearing Bates numbers PLAINTIFFS002272 and PLAINTIFFS002274.

31.     **EXHIBIT 24** in the Appendix is a true and correct copy of excerpts from the deposition transcript of Laura McAlexander dated December 14, 2021. This document is filed under seal.

32.     **EXHIBIT 25** in the Appendix is a true and correct copy of the Declaration of Laura McAlexander dated March 10, 2022.

33.     **EXHIBIT 26** in the Appendix is a true and correct copy of the documents bearing Bates numbers PLAINTIFFS002302.

34.     **EXHIBIT 27** in the Appendix is a true and correct copy of the complaint filed in the Central District of California dated September 4, 2020.

35.     **EXHIBIT 28** in the Appendix is a true and correct copy of the Memorandum of Points and Authorities in Support of Motion to Transfer for Improper Venue and Motion to Dismiss Claims of Certain Plaintiffs for Lack of Personal Jurisdiction dated November 13, 2020 in the Central District of California.

36.     **EXHIBIT 29** in the Appendix is a true and correct copy of the prior dockets for this action in California and this District.

37.     **EXHIBIT 30** in the Appendix is a true and correct copy of the complaint in *Bazerman v American Airlines*, *Inc*., 1:17-cv-11297-WGY (D. Mass.), dated July 13, 2017.

38.     **EXHIBIT 31** in the Appendix is a true and correct copy of the proposed settlement order in *Bazerman v American Airlines*, *Inc*., 1:17-cv-11297-WGY (D. Mass.).

39.     **EXHIBIT 32** in the Appendix is a true and correct copy of the final settlement order in *Bazerman v American Airlines*, *Inc*., 1:17-cv-11297-WGY (D. Mass.), dated April 8, 2019.

40.     **EXHIBIT 33** in the Appendix is a true and correct copy of the docket in *Bazerman v American Airlines*, *Inc*., 1:17-cv-11297-WGY (D. Mass.).

I hereby declare under penalty of perjury that the foregoing statements are true.

/s/_____

Oren Giskan

Executed this 17th day of March, 2022.

0005

# EXHIBIT 1

**FILED UNDER SEAL**

# EXHIBIT 2

**FILED UNDER SEAL**

# EXHIBIT 3

**FILED UNDER SEAL**

# EXHIBIT 4

# AA-CLEARY-00053069



**FIRST CHECKED BAG FREE · GROUP 1 BOARDING · DOUBLE MILES OPPORTUNITY**

The Citi® / AAdvantage® Platinum Select™ card offers benefits that enhance your travel experience. Plus, you'll earn AAdvantage® miles for your purchases, making it even easier to get to your next adventure, whether it's across the country or around the globe.



Baggage fee waiver is for domestic travel and does not apply to oversized or overweight bags.

American Airlines reserves the right to change the AAdvantage® program and its terms and conditions at any time without notice, and to end the AAdvantage® program with six months notice. American Airlines is not responsible for products or services offered by other participating companies. For complete AAdvantage® program details, visit aa.com/aadvantage. American Airlines, AAdvantage and the Flight Symbol logo are trademarks of American Airlines, Inc.

Citibank is not responsible for products or services offered by other companies. Cardmember benefits are subject to change. © 2004 Citibank, N.A. Citi, Citibank, Citi with Arc Design and Platinum Select are registered service marks of Citigroup Inc.

MasterCard and the MasterCard Brand Mark are registered trademarks of MasterCard International Incorporated.

# Pages from AA-CLEARY-00053113

0241

# THE NEW AMERICAN PASSPORT

**FIRST CHECKED BAG FREE · GROUP 1 BOARDING · 2X AADVANTAGE® MILES**

The Citi® / AAdvantage® Platinum Select® card
*Explore now at* **citi.com/yourpassport**



# THE NEW AMERICAN PASSPORT

American Airlines AAdvantage

ADMIRALS CLUB® MEMBERSHIP · FIRST CHECKED BAG FREE · 2X AADVANTAGE® MILES

Citi® / AAdvantage® Executive card

*Explore now at* **citi.com/yourpassport**

LINDA WALKER
Executive

American Airlines AAdvantage

citi

# THE NEW AMERICAN PASSPORT

FIRST CHECKED BAG FREE · GROUP 1 BOARDING · 2X AADVANTAGE® MILES

The Citi® / AAdvantage® Platinum Select® card
Explore now at **citi.com/yourpassport**

0245

# THE NEW AMERICAN PASSPORT

**citi** | American Airlines AAdvantage

FIRST CHECKED BAG FREE · GROUP 1 BOARDING · 2X AADVANTAGE® MILES

CitiBusiness® / AAdvantage® Platinum Select card
Explore now at **citi.com/yourpassport**

American Airlines
AAdvantage
CitiBusiness Platinum Select

LINDA
WALKER
COMPANY NAME

**citi**

BUSINESS

0246

# THE NEW AMERICAN PASSPORT

American Airlines AAdvantage

ADMIRALS CLUB® MEMBERSHIP · FIRST CHECKED BAG FREE · 2X AADVANTAGE® MILES

Citi® / AAdvantage® Executive card
Explore now at **citi.com/yourpassport**

LINDA WALKER
Executive

EXECUTIVE

# THE NEW AMERICAN PASSPORT

**American Airlines AAdvantage**

FIRST CHECKED BAG FREE · GROUP 1 BOARDING · 2X AADVANTAGE® MILES

CitiBusiness® / AAdvantage® Platinum Select card
Explore now at **citi.com/yourpassport**

AAdvantage
CitiBusiness Platinum Select
LINDA WALKER
COMPANY NAME
citi

0249



0251





0254



# THE NEW AMERICAN PASSPORT

ADMIRALS CLUB® MEMBERSHIP · FIRST CHECKED BAG FREE · 2X AADVANTAGE® MILES

Citi® / AAdvantage® Executive card
Explore now at **citi.com/yourpassport**

0256

THE NEW AMERICAN PASSPORT

FIRST CHECKED BAG FREE · GROUP 1 BOARDING · 2X AADVANTAGE® MILES

The Citi® / AAdvantage® Platinum Select® card
*Explore now at* **citi.com/yourpassport**

0257

# THE NEW AMERICAN PASSPORT

ADMIRALS CLUB® MEMBERSHIP · FIRST CHECKED BAG FREE · 2X AADVANTAGE® MILES

Citi® / AAdvantage® Executive card
Explore now at **citi.com/yourpassport**

LINDA WALKER
Executive

0255

citi | AAdvantage
American Airlines

# THE NEW AMERICAN PASSPORT

FIRST CHECKED BAG FREE · GROUP 1 BOARDING · 2X AADVANTAGE® MILES

The Citi® / AAdvantage® Platinum Select® card
Explore now at **citi.com/yourpassport**

AAdvantage
American Airlines
LINDA WALKER
Platinum Select
citi

0260

# THE NEW AMERICAN PASSPORT

FIRST CHECKED BAG FREE · GROUP 1 BOARDING · 2X AADVANTAGE® MILES

citi | American Airlines AAdvantage

CitiBusiness® / AAdvantage® Platinum Select card
Explore now at **citi.com/yourpassport**



THE NEW
AMERICAN
PASSPORT

ADMIRALS CLUB® MEMBERSHIP · FIRST CHECKED BAG FREE · 2X AADVANTAGE® MILES

Citi® / AAdvantage® Executive card
Explore now at **citi.com/yourpassport**

LINDA
WALKER
Executive

# AA-CLEARY-00053157





# AA-CLEARY-00053158



# AA-CLEARY-00053159

0267



# AA-CLEARY-00053160



# AA-CLEARY-00053162



# AA-CLEARY-00053201





LIMITED-TIME OFFER

CITI* / AADVANTAGE* PLATINUM SELECT* MASTERCARD*



EARN

# 50,000

American Airlines AAdvantage®
**BONUS MILES AFTER**
spending $3,000 in purchases within
the first 3 months of account opening.

GROUP 1 BOARDING

FIRST CHECKED BAG FEE WAIVED

NO FOREIGN TRANSACTION FEES

APPLY NOW

| Visit aa.com/citicardoffer

American Airlines reserves the right to change the AAdvantage® program and its terms and conditions at any time without notice, and to end the AAdvantage® program with six months notice. American Airlines is not responsible for products or services offered by other participating companies. For complete AAdvantage® program details, visit aa.com/advantage. American Airlines, AAdvantage and the Flight Symbol logo are trademarks of American Airlines, Inc.

Citibank is not responsible for products or services offered by other companies. Cardmember benefits are subject to change.

©2014 Citibank, N.A. Citi, Citibank, Citi with Arc Design and Platinum Select are registered service marks of Citigroup Inc. MasterCard and the MasterCard Brand Mark are registered trademarks of MasterCard International Incorporated.

Pricing for the Citi® / AAdvantage® Platinum Select® Card: The standard variable APR for purchases – 14.24%, 16.24%, 18.24%, 20.24%, or 22.24%, based on your creditworthiness. Balance transfers are subject to the standard purchase APR. The standard variable APR for cash advances – 25.49%. The variable Penalty APR is up to 29.99%, and may be applied if you make a late payment or make a payment that is returned. The annual fee for this card is $95. However, the fee is $0 for the first 12 months, minimum interest charge – $0.50. Fee for foreign purchases – none. Cash advance fee – Either $10 or 5% of the amount of each cash advance, whichever is greater. Balance transfer fee – Either $5 or 3% of the amount of each transfer, whichever is greater.

Baggage fee waiver and Group 1 Boarding are available only on domestic travel. Waiver does not apply to oversized or overweight bags.

0274

# AA-CLEARY-00053203



# AA-CLEARY-00053830



# FAMILY TIME THERE

## BEGINS HERE

with 60,000 AAdvantage® bonus miles[2]

$0 INTRO ANNUAL FEE FOR THE FIRST YEAR, THEN $99[1]

AADVANTAGE® AVIATOR® RED
WORLD ELITE MASTERCARD®

First checked bag free[2] | Get up to $25 back on inflight Wi-Fi purchases each anniversary year[2] | Enjoy preferred boarding[2]

visit **MyAviatorCard.com**

or scan the QR code.



Ask your flight attendant for an application & promo code.

Terms and Conditions apply.



## Business owner?

Learn more about the AAdvantage® Aviator® World Elite Business Mastercard® at **ApplyAviatorBusinessCard.com.**

1 Annual Fee is waived the first year. 0% introductory APR on balance transfers made within 45 days of account opening is applicable for the first 15 billing cycles that immediately follow each balance transfer. This introductory APR offer does not apply to purchases and cash advances. For new and outstanding balance transfers after the introductory period and all purchases, the variable APR is 15.99%, 19.99% or 24.99%, depending upon our review of your application and your credit history at account opening. The variable APR for cash advances is 25.24%. The APRs on your account will vary with the market based on the Prime Rate and are subject to change. The minimum monthly interest charge will be $0.50. Balance transfer fee: 3% (min. $5). Cash advance fee: 5% (min. $10). Foreign transaction fee: 0%. This information is accurate as of 3/1/2021 and is subject to change after this date. Contact 866-951-7197 and/or visit MyAviatorCard.com for updated and more information about the terms of this offer.
2 Conditions and limitations apply. Please see a Flight Attendant for an application and refer to the Reward Rules within the Terms and Conditions for additional information about the rewards program.

American Airlines, AAdvantage®, the Flight Symbol logo, and AAdvantage Million Miler℠ are marks of American Airlines, Inc.

The AAdvantage® Aviator® Red World Elite Mastercard® and AAdvantage® Aviator® Business Mastercard® are issued by Barclays Bank Delaware (Barclays) pursuant to a license by Mastercard International Incorporated. Mastercard, World Elite Mastercard and World Elite Mastercard for Business are registered trademarks, and the circles design is a trademark of Mastercard International Incorporated.

©2021 Barclays Bank Delaware, PO Box 8801, Wilmington, DE 19801, Member FDIC.

0276                                                                                                              2626-19-MA_0521

# AA-CLEARY-00056450





## THE BUSINESS AND TRAVEL CARD THAT
# WORKS HARD 24/7
# 365

FOR A LIMITED TIME, EARN

# 75,000
American Airlines AAdvantage® bonus miles after spending $5,000 in the first 5 months of account opening

+ **X,XXX,XXX**
YOUR AADVANTAGE® MILES as of XX/XX/XXXX

= **X,XXX,XXX**
TOTAL AADVANTAGE® MILES for AAdvantage® Number: XXXXXX

**Get the card for taking care of business:**

Sample A Sample
Address Line 1
Address Line 2
City, State Zip +4

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

Sample,

Does your current business credit card offer you travel rewards for everything you do to keep your business running? Well, it should.

From utility bills to car rentals, the CitiBusiness® / AAdvantage® Platinum Select® World Mastercard® earns double miles on select business expenses. Best of all, employee cards come at no cost and earn miles, too.

Plus, the $99 annual fee is waived for the first 12 months.*

Are you ready to put the CitiBusiness® / AAdvantage® Platinum Select® card to work and enjoy all its business and travel benefits?

### WORK SMARTER, NOT HARDER WITH THE RIGHT TOOLS

These account tools will keep you in charge of everyday business.

 **Personal Business Assistant**
Enjoy 24/7 assistance for business travel, hotel accommodations and dining arrangements.

 **Account management tools**
Cross track business expenses, control authorized user cards and reset employee access to cash advances without hassle.

 **Citi Mobile® App**
View monthly statements and gain an overview of all business spending and income anytime, anywhere.

### EARN MILES LIKE NOBODY'S BUSINESS

Earning more miles on business expenses is all in a day's work.

 **2X** **Cable and satellite providers**
Earn 2 AAdvantage® miles for every $1 spent.

 **2X** **Telecommunications merchants**
Earn 2 AAdvantage® miles for every $1 spent.

 **2X** **Car rentals and gas stations**
Earn 2 AAdvantage® miles for every $1 spent.

 **2X** **Eligible American Airlines purchases**
Earn 2 AAdvantage® miles for every $1 spent.

**1X** **All other purchases**
Earn 1 AAdvantage® mile for every $1 spent.

 **Authorized users**
Earn more miles on no-cost employee card purchases too.

### TRAVEL LIKE A BOSS

Get more out of every trip with these travel benefits – for business or pleasure.

 **American Airlines Companion Certificate**
Save a seat for a friend or business partner on a domestic trip after you make $30,000 or more in purchases each cardmembership year and cardmembership is renewed.†

 **Preferred boarding**
You'll be welcomed aboard your flight earlier and enjoy access to prime overhead bin space.

 **First checked bag free**
Travel hands-free through the airport when you check your suitcase at the check-in desk.

 **No foreign transaction fees**
Shop more freely for business or pleasure on your next adventure abroad.

 **Save on inflight dining**
Sample the inflight offerings and save 25% on inflight drink and snack purchases when you use your card on American Airlines flights.

 **Save on inflight WiFi**
Stay connected to work email at 10,000+ feet and save 25% on inflight Wi-Fi purchases when you use your card on American Airlines flights.

## GET THE CARD THAT
# MEANS
# BUSINESS

**FOR FASTEST RESPONSE:**
citi.com/applynowAAbusinesscard

1-800-710-3027 (TTY: Use Relay Service)

Mail the enclosed form

Use your invitation number: 999999999

**APPLY BY
10/15/2018**

†Redeeming the certificate costs $99 for the ticketing fee plus $21.60 to $43.20 in government taxes and fees, based on itinerary.

T-XXXX-XXXXXXX   WX   99999999999999999999   999   99   999999999   99999   99   99   A-XXXX-XXXXXXX

**CitiBusiness® / AAdvantage® Platinum Select® World Mastercard® Invitation Form**

Please see the enclosed Citi Disclosures, which include rates, fees and other cost information. *Required Field

citi | AAdvantage

Please fill out each section. Unless all information is complete and the application is signed, this application may not be approved. This application must be signed by an Authorized Officer of the company.

Please print in ink and mail in the enclosed envelope.

*Doing Business as (Up to 21 Characters Will Appear on Your Card)

*Business Address, Street, Suite # (No P.O. Boxes)

*City                    *State    *Zip    *Country of Bus. Formation

*Business Phone No. with Area Code    *Taxpayer ID Number    *Annual Business Revenue    $

**Apply online and get a faster response:** citi.com/applynowAAbusinesscard  Apply by 04/15/2018

If you have entered a cell phone number, or another number that you later convert to a cell phone number, you agree that we may contact you at this number. You also agree to receive calls and messages such as pre-recorded messages, calls and messages from automated dialing systems, or text messages. Normal cell phone charges may apply.

*Number of Employees    Line of Business

| 1-5 | 6-10 | 10-99 | 100-499 | 500+ | Professional | Service | Manufacturing | Retail | Sales | Farm/Agri. | Construction | Other |

*Legal Structure of Business    Sole Proprietorship/Self-Employed    Corporation    General Partnership    Limited Partnership    LLP

LLC    Government/School    Embassy

*Organization Type    Financial Institution    Non-Profit    Other

*Financial Institution Type (if financial institution selected for organization type)    Bank    Non-Bank    Fund    MSB    Wealth Holding Vehicle

Bank: licensed and regulated; Non-Bank: insurance, brokers, financers; Fund: mutual, hedge, pension and private equity firms; Money Service Business: currency dealers, check cashiers, payday lending companies; Wealth Holding Vehicle: trusts, estates, personal investment, personal holding or personal investment companies

999999999

NAME
BUSINESS NAME
ADDRESS LINE 2
ADDRESS LINE 1
CITY, ST98765-4321

👤 Authorized Officer Information  An Authorized Officer is also a controlling party with significant responsibility to control, manage, or direct the business entity, and (2) exclusively liable for all charges on the account in any manner.

*Name (Please do not exceed 21 characters)    *Auth. Officer Country of Residence

Security Word    16 characters or less. Use letters or numbers. Please use one: Best friend's last name; Last 4 digits of a relative's or friend's phone number; Pet's name; Favorite teacher's name    *Auth. Officer Country of Citizenship

AADVANTAGE® NUMBER: **9999999**

*Home Address (No P.O. Boxes)

*City    *State    *Zip

*Social Security Number    *Home Phone No. with Area Code    *Percent of Business Ownership

If you have entered a cell phone number, or another number that you later convert to a cell phone number, you agree that we may contact you at this number. You also agree to receive calls and messages such as pre-recorded messages, calls and messages from automated dialing systems, or text messages. Normal cell phone charges may apply.

*Date of Birth    *Total Annual Income*    $

Alimony, child support or separate maintenance income need not be revealed if you do not wish it to be considered as a basis for repaying this obligation.

Email Address Include full address with punctuation. Example: jdoe@citi.net If you provide an email address, you agree we may contact you about your application, account and/or any related products and services you might need online. We may also use your email to send you information about products and services you might find useful.

👤 Authorized Officer Signature

I am an Authorized Officer of the Business and Controlling Party (and the person whose information is provided above) with the authority to bind the Business to the Terms and Conditions on the reverse side. I will provide the evidence of such authorization upon request. I understand that the Business and I am individually and jointly liable for paying charges on the account and agree to the Terms and Conditions on the reverse side. I hereby certify, to the best of my knowledge, that the information provided above (including the information for Beneficial Ownership) is complete and correct.

X    *Signature    *Date

Signed individually and on behalf of the Business.

FPO

👤 Beneficial Owner Information  When a person opens an account, we will ask for the name, address, date of birth and other information about the person(s) required to open an account (beneficial owner[s]). This applies to each individual who directly or indirectly owns 25 percent or more of the equity interests. This information allows us to identify beneficial owner(s). This information is not used for credit decisioning or approval.

*First, Middle Initial, Last Name    *Date of Birth

*Home Address (No P.O. Boxes)    *Social Security Number    — — —    or

*Address Line 2    *Percent of Business Ownership

*City    *State    *Zip/Postal Code    *Passport Number

Country    Country of Issuance

*First, Middle Initial, Last Name    *Date of Birth

*Home Address (No P.O. Boxes)    *Social Security Number    — — —    or

*Address Line 2    *Percent of Business Ownership

*City    *State    *Zip/Postal Code    *Passport Number

Country    Country of Issuance

*First, Middle Initial, Last Name    *Date of Birth

*Home Address (No P.O. Boxes)    *Social Security Number    — — —    or

*Address Line 2    *Percent of Business Ownership

*City    *State    *Zip/Postal Code    *Passport Number

Country    Country of Issuance

*First, Middle Initial, Last Name    *Date of Birth

*Home Address (No P.O. Boxes)    *Social Security Number    — — —    or

*Address Line 2    *Percent of Business Ownership

*City    *State    *Zip/Postal Code    *Passport Number

Country    Country of Issuance

0282

■    9999999999999999999    999999999    99 999    XBAPP 833115


mastercard



EARN MILES
# AROUND THE CLOCK

Watch your everyday business expenses turn into miles and earn 75,000 American Airlines AAdvantage® bonus miles in no time when you use your CitiBusiness® / AAdvantage® Platinum Select® World Mastercard®.

**OFFICE SUPPLIES DELIVERY**
11:00 AM
$117 x 1X mile = 117 miles

**PAY MONTHLY PHONE BILL**
9:45 AM
$220 x 2X miles = 440 miles

**COFFEE FOR MEETING**
9:00 AM
$18 x 1X mile = 18 miles

**EARN 75,000 AADVANTAGE® BONUS MILES**
AFTER QUALIFYING PURCHASES

**FLIGHT TO ATL ON AMERICAN AIRLINES**
1:45 PM
$375 x 2X miles = 750 miles

**RENTAL CAR PICKUP**
3:00 PM
$120 x 2X miles = 240 miles

**CLIENT DINNER**
5:30 PM
$150 x 1X mile = 150 miles

It's simple to earn AAdvantage® bonus miles. Plus, eligible everyday business expenses also earn AAdvantage® miles. So, after spending an average of $1,000 in the first 5 months, including your bonus, you can earn 76,715 AAdvantage® miles.

# APPLY TODAY
citi.com/applynowAAbusinesscard

FOR ILLUSTRATIVE PURPOSES ONLY

0283

# OWN ALL YOUR
# BUSINESS'S REWARDS

With new ways to earn more miles on business expenses toward your next trip — **plus 75,000 AAdvantage® bonus miles** after spending $5,000 in the first 5 months of account opening — there's never been a better time to apply for the CitiBusiness® / AAdvantage® Platinum Select® World Mastercard® **Earn AAdvantage® miles on all your business needs, including:**

**2X**  | CABLE AND SATELLITE PROVIDERS
_NEW!_

**2X** | TELECOMMUNICATIONS MERCHANTS

**2X** | CAR RENTALS AND GAS STATIONS

**2X** | ELIGIBLE AMERICAN AIRLINES PURCHASES

**1X** | OTHER PURCHASES FOR YOUR BUSINESS

 | EMPLOYEE CARD PURCHASES



# APPLY TODAY
citi.com/applynowAAbusinesscard

CITIBUSINESS® / AADVANTAGE® PLATINUM SELECT® WORLD MASTERCARD®



MAKE QUICK WORK OF **EARNING MORE MILES** ON BUSINESS EXPENSES

C I T I B U S I N E S S® / A A D V A N T A G E® P L A T I N U M S E L E C T® W O R L D M A S T E R C A R D®

**2X** NEW
CABLE AND SATELLITE PROVIDERS

**2X**
TELECOMMUNICATIONS MERCHANTS

**2X**
CAR RENTAL MERCHANTS AND GAS STATIONS

2019 – Airport Terminal Marketing Handout



AA-CLEARY-00037813

2021 – American Way Insert



AA-CLEARY-00037818

# EXHIBIT 5

**FILED UNDER SEAL**

# EXHIBIT 6

 **Carissa**
@WorldSearchHer



@AmericanAir Very disorganized at Benito Juarez! 50 min in line to check a bag that they can't take for me at the kiosk because they say I have to pay even though it says credit card holder in my pass and I have cc in hand. Boo!

12:30 PM - 22 Mar 2018

♡ 1      ↻      ♡      ✉

Tweet your reply

**American Airlines** ✔ @AmericanAir · Mar 22

Replying to @WorldSearchHer

Our apologies for the wait. Our airport team will work through the lines and quickly take care of your bags. We appreciate your patience.

♡      ↻      ♡      ✉

PLAINTIFFS002175

0343



**Two Gadabouts**
@TwoGadabouts

Follow ∨

@AmericanAir Feeling ripped off. Paid for checked bag from BZE to DFW, as expected, yesterday. Today, was told I had to pay again for my remaining domestic legs, even though I have an AA credit card because "layover was over 12 hours and origination was international." OKPJHK

8:26 AM - 13 Apr 2018

♡ 1    ⟲    ♡    ✉

Tweet your reply

**American Airlines** ✓ @AmericanAir · Apr 13    ∨
Replying to @TwoGadabouts
Good morning. We'd like to take a look at this for you. and will reply back soon via DM.

♡    ⟲    ♡    ✉    PLAINTIFFS002172

 **Tim Leffel** @timleffel · Mar 20

Unlike the @**AmericanAir** **credit card**, the @Delta Amex one got my checked **bag** fee waived from Belize. No "domestic only" gotcha. Thanks!

PLAINTIFFS002170

   ⟲ 2   ♡ 3   

**Sara** @sfknechtel · Mar 26

@AmericanAir @Citi @AskCiti I don't see footnotes limiting free bags to domestic flights. Why was I charged $26 for my bag? #falseadvertising



Platinum Select™ World
Elite™ Mastercard

## Enjoy these perks when you travel:

You won't pay any foreign transaction fees while traveling abroad

First checked bag free for you and up to four people traveling with you on American Airlines itineraries

Preferred boarding on American Airlines

♡ 1    ⇄    ♡    ✉

**American Airlines** ✓ @AmericanAir · Mar 26

If you're the primary card holder, your first bag is free on domestic flights. bit.ly /AA_CitiCards

♡ 1    ⇄    ♡    ✉

0346

PLAINTIFFS002166



**Sara** @sfknechtel · Mar 26
@AmericanAir @Citi @AskCiti you're only restating what I've already been told. The problem is that your website doesn't qualify that it only applies to domestic flights.

Platinum Select World Elite™ Mastercard

### Enjoy these perks when you travel:

You won't pay any foreign transaction fees while traveling abroad

First checked bag free for you and up to four people traveling with you on American Airlines itineraries

Preferred boarding on American Airlines

**American Airlines** ✓
@AmericanAir

Follow

Replying to @sfknechtel

In the link provided when you select your credit card, towards the bottom of the page where it says First Checked Bag Free.

1:11 PM - 26 Mar 2018

PLAINTIFFS002166



**Olivia LaVaun**
@olive2travel

Follow

Realizing my @AmericanAir credit card only gets me first bag free on domestic... would've only had a carry-on had I known! #TravelTuesday

6:24 AM - 1 Aug 2017 from Arlington, VA

♡ 2    ⟳    ♡    ✉

Tweet your reply

**American Airlines** ● @AmericanAir · 1 Aug 2017
Replying to @olive2travel
We're sorry that you weren't aware. Take a look here for more info: bit.ly /AA_CitiCards

PLAINTIFFS002165

♡    ⟳    ♡ 1    ✉

0348





**Kishen Ratilal** @kishengiggs1 · Jan 10

@AmericanAir i am traveling to Cancun tomorrow from Phoenix. i am a AAdvantage platinum select credit card holder. Do I have to pay for a check in bag?

♡ 2        ♡        ♡        ✉

**American Airlines** ✓
@AmericanAir

Follow

Replying to @kishengiggs1

Your Citibank AAdvantage credit card offers the first checked bag free on domestic flights only. bit.ly/AA_CitiCards

1:39 PM - 10 Jan 2018

♡        ♡        ♡        ✉                              PLAINTIFFS002158





**William Skutch**
@billskutch

@AmericanAir tell me why I have the American Airlines credit card. Charging me $25 per bag to fly International? #customerservice #fail
Time to look into a new Affinity credit card.

2:54 AM · Mar 26, 2018 · Twitter for Android

**americanair** ✔ @AmericanAir · Mar 26, 2018
Replying to @billskutch
Sorry for any confusion. You can learn more about your card benefits here: bit.ly/AA_CitiCards

**William Skutch** @billskutch · Mar 26, 2018
you say free bag with your flight if you have the credit card however why would that NOT include international flights!?!
#fail #customerservice

PLAINTIFFS002147



**Angela Haas** @ahaas1215 · Jan 17

@AmericanAir don't bother holding a credit card with them or flying this airline. They Lost my luggage on the way to Cancun after charging us 25 dollars (yes with a credit card u still pay for bags) then say they don't have a client relations team. #garbage #cuttingmycard #delta

💬 1          ⟲          ♡          ✉

**American Airlines** ✓

@AmericanAir

( Follow )

Replying to @ahaas1215

# The first bag charge is waived with the credit card for domestic flights only.  We're sorry your things were delayed, Angela.

5:45 PM - 17 Jan 2018

💬          ⟲          ♡          ✉          PLAINTIFFS002145



@paulypaul 2021-08-25

PLAINTIFF6022130



@davemorningstar 2017-12-27



americanair ✔
@AmericanAir

···

Replying to @HaLachmaAnya

Our apology for any misunderstanding. The credit card offers complimentary bags on domestic travel, not for Mexico.

1:33 PM · Dec 20, 2018 · SNAP101

Tweet your reply

Reply

(((Anya Gelernt-Dunkle))) @HaLachmaAnya · Dec 20, 2018    ···
Replying to @AmericanAir
I was told that "today", but three weeks ago I was given different information. It wasn't a misunderstanding; your staff sold me a false bill of goods. You should at least honor SOME of that, considering that people are responsible for their own mistakes, and this one was on you.

♡ 1      ↻ 1

americanair ✔ @AmericanAir · Dec 20, 2018    ···
Again, our apologies for any confusion. The benefits of your AAdvantage card are listed here: bit.ly/AA_CitiCards.

♡ 1

Show replies

@halachmaanya 2018-12-20

PLAINTIFFS002330



@englandandiowa 2019-02-25

PLAINTIFFS002331



**Chip Branson**
@CBransonCattle

Let down in @AmericanAir and their @Citi advantage credit card. Why would the credit card only cover checked bags for domestic flights when booking basic economy? I remember a time when airlines valued customer service and loyalty. #Disappointed #BeBest

6:00 AM · Jun 27, 2019 · Twitter for iPhone

Tweet your reply          Reply

americanair ✓ @AmericanAir · Jun 27, 2019
Replying to @CBransonCattle
The baggage perk is only for domestic flights. We're sorry for any confusion on the credit card perks, Chip.

@CBransonCattle 2019-06-27

PLAINTIFFS002332



**A R**
@abr2026

···

@AmericanAir how is it that US to Mexico is not considered international for a free checked bag right now but my $495 a year AA credit card with free checked bags only covers domestic flights?!  It's hard to keep my loyalty when these new rules make it impossible to win!

5:58 PM · Jul 20, 2020 · Twitter for Android

@abr2026 2020-07-20

PLAINTIFFS002333

 **Mark Ryan**
@RichmondDoc

                                                                            ...

@AmericanAir checked in for an international flight.
Have the credit card. When did we start having to pay
for *every* bag? Not allowed even one free checked
bag any longer? Maybe I had forgotten this policy?

2:55 AM · Jun 11, 2019 from Sandston, VA · Twitter for iPhone



@richmonddoc 2019-06-11

PLAINTIFFS002334



**Savannah Sill**
@savannah_biker

Replying to @AmericanAir

Don't need another credit card when I'm already paying $90/ yr for this one. Thought a free checked bag was for everywhere? Apparently Mexico isn't international for required free bag but not included as domestic either to count for the free perk?

1:53 AM · Jan 4, 2018 · Twitter Web App

Tweet your reply

Reply

**americanair** ✔ @AmericanAir · Jan 4, 2018
Replying to @savannah_biker
You can read more about your card's benefits here: bit.ly/AA_CitiCards

@savannah_biker 2018-01-04

PLAINTIFFS002335



**NancyA**
@npa222

@AmericanAir not only do you charge for checked baggage on international flights now you charge for AA credit card holders too?  I was told the checked baggage waiver fee is only for domestic fllights.  That doesn't seem right. Maybe I need to cancel my card and not fly you.

4:25 PM · Sep 9, 2018 · Twitter for iPhone

Tweet your reply                                    Reply

**americanair** @AmericanAir · Sep 9, 2018
Replying to @npa222
Depending on what card you hold different rules apply. If you come to DMs we can give you more info on the rules associated with your card.

○ 1      ↝      ♡      ♡

**NancyA** @npa222 · Sep 9, 2018
I will be canceling it.  Perks for airline cards are free baggage on all flights.

○      ↝      ♡      ♡ 1      ⬆

@npa222 2018-09-09

PLAINTIFFS002336



**Javier_Mercedes** @JavierMercede16 · Dec 3, 2020                    · · ·

@AmericanAir Hiiii, I was trying to find out how much a checked bag is for an **international** trip to Dom Rep. I thought because I was a AAVantage **credit card** holder it would be free for the first bag. Can you please tell me how much the first checked bag is? Thank you

💬 1                    ⟲                    ♡                    ⬆

@javiermercede16 2020-12-03

PLAINTIFFS002337



**Liz Thomasson**
@LizT21146                                                    ...

@AmericanAir hey AA - not happy that the bag fee isn't waived with your credit card on international flights.

5:13 AM · Jan 23, 2016 · Twitter for iPhone

Tweet your reply                                          Reply

**americanair** ✔ @AmericanAir · Jan 23, 2016                   ...
Replying to @LizT21146
@LizT21146 The complimentary bag program is only valid for the domestic flights, Liz.

**Liz Thomasson** @LizT21146 · Jan 23, 2016                     ...
@AmericanAir - agreed but that fact is buried in small print. Will be cancelling the cc since most of our travel is international.

@lizt21146 2016-01-23

PLAINTIFFS002338



**Captain B** @mrgoodbarr61 · Dec 17, 2019                                     · · ·
Replying to @RealCandaceO and @AmericanAir
They are terrible Candace. They dropped a leg of my trip to Mexico and
then made me pay extra for that leg. Also charged me for my bag even
though I have their **credit card**. Said they don't honor that for **international**
flights. Unbelievable, I'm done.

♡                            ♡              

@mrgoodbarr61 2019-12-17

PLAINTIFFS002339



**(((brandon wind)))**
@bwindesq

So flying on @americanair...use their credit card to book flight so no baggage fees. Except that isn't true on international flights. Know where it says that during booking?  Nowhere. They Let you know when you get to airport with a 'sorry...small print exclusion'. Smh.

6:10 AM · Aug 7, 2019 · Twitter for iPhone

@bwindesq 2019-08-07

PLAINTIFFS002340



**Lina Saha**
@LinaSaha23

We are credit card members with @AmericanAir yet still had to pay for a bag for international flight. Now our flight does not even have personal screens or charging ports!!! Horrible experience so far! #AmericanAirlines #MaybeItsTimeToSwitchCards @pointsguy #pointsguy

5:33 AM · May 3, 2018 · Twitter for iPhone

Tweet your reply                    Reply

**americanair** @AmericanAir · May 3, 2018
Replying to @LinaSaha23
We're happy to have you on board with us again today, Lina. The card perks apply for domestic travel for you and others in your reservation.

@linasaha23 2018-05-03

PLAINTIFFS002341

# EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| KATHERINE CLEARY, ET AL., | § | |
|    Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-CV-00184-O |
| | § | |
| AMERICAN AIRLINES, INC. | § | |
|    Defendant. | § | |
| | § | |
| | § | |

**DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFFS'
SECOND SET OF INTERROGATORIES (NO. 2)**

American Airlines, Inc. ("American" or "Defendant"), through its counsel, pursuant to Fed. R. Civ. P. 26 and 33 and the Local Rules of the United States District Court for the Northern District of Texas, hereby submits its objections and responses to Plaintiffs' Interrogatory No. 2, dated May 21, 2021.

**GENERAL OBJECTIONS AND RESPONSES**

American has the following General Objections and Responses that apply to Plaintiffs' Interrogatory and, unless otherwise stated, shall have the same force and effect as if set forth in full in response to Interrogatory.

1. In responding to the Interrogatory, American states it will provide responses based on existing and reasonably available information. To the extent the Interrogatory purports to require American to do more than the foregoing, American objects. Without in any way undertaking any obligation to do so, American reserves the right to alter, supplement, amend, or otherwise modify these responses and objections in any manner, at any time, in light of additional facts revealed through subsequent inquiry or otherwise brought to American's attention.

2.      American objects to Plaintiffs' Interrogatory, and all definitions and instructions set forth by Plaintiffs for responding thereto, to the extent it seeks to impose upon American any obligations greater than those required by the Federal Rules of Civil Procedure, the Local Rules of the Northern District of Texas, or any other applicable laws or rules.

3.      In responding to the Interrogatory, American will only provide information within the putative class period, unless otherwise indicated.  The class is defined in the Complaint as "[a]ll persons who purchased a ticket for air travel on American Airlines . . . during the relevant statute of limitations period prior to the filing of the complaint."  *See* Complaint, ¶ 24.  Under Texas law, the statute of limitations period for breach of a written agreement is four years.  TEX. CIV. PRAC. & REM. CODE ANN. § 16.051.  Since Plaintiffs filed the Complaint on February 24, 2021, American will produce information from February 24, 2017 to February 24, 2021 (hereafter the "Covered Period").

4.      American objects to the Interrogatory to the extent it seeks documents or information that are unreasonably cumulative or duplicative.  In particular, American objects to the Interrogatory to the extent they seek "all" documents, communications, or information concerning a particular topic or topics when less than "all" documents or information are either necessary or material to the prosecution or defense of the action.  American objects to the Interrogatory to the extent they would require American to produce multiple copies of a single document.

5.      American objects to Plaintiffs' Interrogatory to the extent it is vague, ambiguous, and unclear, including Plaintiffs' use of terms that are not defined and/or are not otherwise susceptible to any single meaning.  The specific responses set forth below are based on American's interpretation of the language used in the Interrogatory.  American reserves the right

2

to amend or supplement its responses in the event Plaintiffs assert an interpretation that differs from American's interpretation, without in any way undertaking an obligation to do so.

6.      American objects to Plaintiffs' Interrogatory to the extent it seeks to impose obligations to produce publicly available information, or to produce information that is equally or more easily available to Plaintiffs than it is to American.

7.      American objects to the Interrogatory to the extent it purports to extend beyond the claims or defenses in the litigation or seek documents or information that are not relevant to the subject matter of this action.

8.      American objects to the Interrogatory to the extent it purports to be directed to individuals and entities that are separate and distinct from American, including, without limitation, any subsidiaries, divisions, branches, partnerships, or affiliates.  American responds to the Interrogatories on behalf of American only.

9.      American objects to Plaintiffs' Interrogatory to the extent it seeks information, documents, or other things that are not within the custody, control, or possession of American or that can be obtained from other sources that are more convenient, less burdensome, or less expensive.

10.      American objects to the Interrogatory to the extent that it requires creation of documents not currently in existence or kept in the regular course of business.

11.      American objects to Plaintiffs' Interrogatory to the extent it seeks information protected by attorney-client privilege, the attorney work product doctrine, joint defense privilege, or any applicable privilege, immunity or limitation on discovery.  American will not produce any such privileged information.  American does not intend to waive any of the privileges asserted in this objection by any inadvertent production of protected information.  Defendant reserves the

3

right to object to the use or introduction of privileged information or otherwise to seek the return of such information.

12.     If American agrees to produce documents in response to an Interrogatory, such a response does not constitute a representation that responsive documents or information exists, but only that responsive documents will be produced if they exist and can be located with a reasonable and diligent search.

13.     To the extent that Defendant provides information, it does not admit that the information is true, accurate, authentic, relevant, or admissible in this action.  Defendant reserves the right to challenge on evidentiary grounds any information or documents provided in response to these Interrogatories.

14.     American objects to the Interrogatory, and each definition therein, to the extent it seeks, assumes, or calls for legal conclusions.

15.     American's failure to object to a particular aspect of the  Interrogatory should not be construed as an admission that responsive information exists.

16.     American incorporates these General Objections and responses by reference into each and every response below.

17.     By asserting these objections and responses, American does not waive, but on the contrary reserves: (i) all questions as to competency, relevance, materiality, privilege, and admissibility of any of the documents or information produced hereunder or the subject matter thereof; (ii) the right to object on any ground to the use of the documents or information produced hereunder or the subject matter thereof at any trial or hearing in this matter or in any related or subsequent action or proceeding; (iii) the right to object on any ground to a demand for further responses or production; and (iv) the right to seek further relief from the Court.

0372

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

Defendant hereby incorporate all objections stated above.

## DEFINITIONS

1.      Defendant objects to each of Plaintiffs' "Definitions" contained in Plaintiffs' First Set of Interrogatories, which have been incorporate by reference, dated April 14, 2021, to the extent the definitions would: (a) expand the definition of a term beyond its ordinary use in the English language; (b) create an undue burden for Defendant when propounding responses and objections to the Interrogatories; and/or (c) impose obligations that exceed, or are inconsistent with, the obligations imposed by the Federal Rules of Civil Procedure, the Local Rules of the Northern District of Texas, or other applicable law.

2.      American objects to the definition of "AA" or "You" or "Your" to the extent that Plaintiffs purport to define these terms to include American's predecessors, officers, directors, employees, partners, corporate parents, subsidiaries, divisions, holding companies, commissioned salespeople, agents, representatives, associates, members, affiliates, or any other individuals and/or entities other than American, or acting on behalf of individuals or entities other than American.

3.      American objects to the definition of "Document" to the extent that Plaintiffs purport to expand the meaning of this term beyond the definition in Fed R. Civ. P. 34(a)(1)(A).

4.      American objects to the definitions of "Concerning" and "Evidencing" on the grounds that the terms are vague, ambiguous, and overly broad.

## INSTRUCTIONS

American objects to all of Plaintiffs' instructions contained in Plaintiffs' First Set of Interrogatories, dated April 14, 2021, which have been incorporated by reference, to the extent that they seek to impose obligations on American in addition to, beyond the scope of, or different from those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Northern District of Texas, or any other applicable laws or rules.  American will fulfill its obligations to the extent required by Federal Rule of Civil Procedure 26(e)(1) and the Local Rules of the Northern District of Texas.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORY NO. 2

American hereby incorporates all objections stated above in response to the Interrogatory stated below.

## INTERROGATORY NO. 2

Identify all documents that comprise AA's contract with its passengers regarding checked bag fees.

## RESPONSE TO INTERROGATORY NO. 2:

American incorporates each of its General Objections.  American objects to this Interrogatory to the extent it seeks or calls for legal conclusions as to what documents form the basis of a "contract" between American and its passengers.  American further objects to this Interrogatory as cumulative and duplicative of requests for production of documents previously served upon American to which American already produced responsive documents or objected. American also objects to this Interrogatory because it seeks information that is equally or more easily available to Plaintiffs than it is to American.  American likewise objects to this Interrogatory because it fails to identify with sufficient particularity the documents or information sought and

6

encompasses an indefinite time period.  Subject to and without waiving any of its specific and General Objections, American provides the following response:

All transportation of passengers and bags provided by American is subject to the terms and conditions in American's Conditions of Carriage and the documents incorporated by reference therein.  The Conditions of Carriage incorporate by reference American's checked baggage policy by providing a hyperlink to "Checked bag policies" beneath a statement about checked bag limits and fees.  In turn, the Checked Bag Policy sets forth specific rules and exceptions for baggage allowances and baggage fees for certain customers and certain destinations.  This document contains baggage information relating to both domestic and international travel.  Further, the Conditions of Carriage incorporate by reference the General Rules of the International Tariff ("the International Tariff") by providing a hyperlink to the International Tariff itself.  The International Tariff sets forth additional baggage regulations applicable only to international routes.

 Dated:  May 28, 2021

LATHAM & WATKINS LLP

By: s/ Nicholas S. Lessin_____
    Nicholas S. Lessin (*pro hac vice*)
    LATHAM & WATKINS LLP
    200 Clarendon Street
    Boston, Massachusetts 02116
    Telephone: 617.948.6000
    Facsimile: 617.948.6001
    nicholas.lessin@lw.com

    Attorney for Defendant
    AMERICAN AIRLINES, INC.

0375

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon all counsel of record via electronic means, pursuant to the parties' electric service agreement, on May 28, 2021.

<u>s/Nicholas S. Lessin</u>

8

# EXHIBIT 8

**FILED UNDER SEAL**

# EXHIBIT 9

**FILED UNDER SEAL**

# EXHIBIT 10

**FILED UNDER SEAL**

0479

# EXHIBIT 11

**FILED UNDER SEAL**

# EXHIBIT 12

**FILED UNDER SEAL**

# EXHIBIT 13

**FILED UNDER SEAL**

# EXHIBIT 14

**FILED UNDER SEAL**

# EXHIBIT 15

**FILED UNDER SEAL**

# EXHIBIT 16

**PRODUCED IN NATIVE FORMAT**

# EXHIBIT 17

# AA-CLEARY-0055264



# EXHIBIT 18



PLAINTIFFS002203

# EXHIBIT 19

0891



2021 – Airport Advertisement

0892

AA-CLEARY-00037817

# EXHIBIT 20

0894



AA Aviator Mastercard - Miami - 2022-02-01

PLAINTIFFS002296

0895

## AA Aviator Mastercard - Miami 2021-06-24



JT Genter
@JTGenter

In @iflymia, @AmericanAir is running a fun promotion through the end of June: "The Flight is Right" - near Gate D39!

Of course they want you to sign up for the Aviator Red Mastercard, but you can just sign a waiver to play for up to 25k miles!

I spun and only won 40 miles

7:33 AM · Jun 24, 2021 from Miami, FL · Twitter for Android

12 Likes

Tweet your reply

Ben Bearup @ · Jun 24, 2021
Replying to @JTGenter @iflymia and @AmericanAir
Don't spend it all in one place.

PLAINTIFFS002297

0896

AA Aviator Mastercard - promotion honored by Adweek 2021-11-16



PLAINTIFFS002298

0897



The Flight Is Right - Engage and Resonate - 2021-11-16 0021

PLAINTIFFS002317

0898



# Clear Channel Outdoor 2022-02-16

PLAINTIFFS0023318

0899



@JCDecaux 2021-11-10

PLAINTIFFS002319

# EXHIBIT 21

## PRODUCED IN NATIVE FORMAT

# EXHIBIT 22

**FILED UNDER SEAL**

# EXHIBIT 23

0908

napkin 2021-10-25



PLAINTIFFS0022272



PLAINTIFFS002274

# EXHIBIT 24

**FILED UNDER SEAL**

# EXHIBIT 25

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| Katherine M. Cleary, *et al*., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-00184-O |
| | § | |
| American Airlines, Inc., | § | |
| | § | |
| Defendant. | § | |

**DECLARATION OF LAURA McALEXANDER IN RESPONSE TO
PLAINTIFFS' FEBRUARY 14, 2022 NOTICE OF DEPOSITION**

I, Laura McAlexander, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.   The facts set forth below are known to me personally, or I have knowledge of such facts based upon corporate records which I reviewed or based upon practices and/or transactions with which I am familiar.  If I were called as a witness in this matter, I could and would testify competently to each fact so set forth.

2.   I am the director of Barclays Credit Card partnership for American Airlines, Inc. ("American") and have served in that role since 2018.  In that role, I have become familiar with and knowledgeable about certain travel benefits offered by American.  Further, I have reviewed relevant records and policies regarding the same.

3.   The offer terms and conditions for the American Airlines AAdvantage Aviator Red Mastercard from Barclays provide:[1]

**"Free Checked Bag**

"Primary cardmembers may check one bag free of charge when traveling on domestic itineraries marketed and operated by American Airlines or American Eagle® domestic itineraries marketed by American Airlines and operated by Compass Airlines, LLC, Envoy Air Inc., Mesa Airlines, Inc., Piedmont Airlines, Inc., PSA Airlines, Inc., Republic Airline

---

[1] *See* AA-CLEARY00052729 at AA-CLEARY00052735. AAdvantage Aviator Red Mastercard offer terms and conditions (as of February 21, 2022) available at: https://creditcards.aa.com/barclay-credit-card-aviator-red-american-airlines-aadvantage/

Inc., or SkyWest Airlines, Inc. This benefit is not available for travel on codeshare flights booked with an American Airlines flight number but operated by another airlines.

"Up to 4 companions traveling with the eligible primary cardmember will also get their first checked bag free of charge if they are listed in the same reservation.

"For this benefit to apply, the Card Account must be open 7 days prior to air travel, and the reservation much include the primary cardmember's AAdvantage® Account number 7 days prior to air travel. If your <u>Card</u> Account is closed for any reason, these benefits will be cancelled. This benefit cannot be combined with any existing AAdvantage® Program elite program benefits, or premium cabin benefits, including any waiver of baggage charges. The first checked bag benefit does not apply to overweight or oversized bags. Please see aa.com for  baggage weight and size restrictions. Application terms and conditions are subject to change without notice."

4.    The offer terms and conditions for the American Airlines AAdvantage Aviator Silver Mastercard from Barclays provide:[2]

**"Free Checked Bag**

"Primary cardmembers may check one bag free of charge when traveling on domestic itineraries marketed and operated by American Airlines or on American Eagle® domestic itineraries marketed by American Airlines and operated by Compass Airlines, LLC, Envoy Air Inc., Mesa Airlines, Inc., Piedmont Airlines, Inc., PSA Airlines, Inc., Republic Airline Inc., or SkyWest Airlines, Inc. This is not available for travel on codeshare flights booked with an American Airlines flight number but operated by another airline. Up to eight (8) companions traveling with the eligible primary cardmember will also get their first checked bag free of charge if they are listed in the same reservation. For this benefit to apply, the Card Account must be open 7 days prior to air travel, and the reservation must include the primary cardmember's AAdvantage® Account number 7 days prior to air travel. If your Card Account is closed for any reason, these benefits will be canceled. This benefit cannot be combined with any existing AAdvantage® Program elite program benefits, or Premium cabin benefits, including any waiver of baggage charges. The First Checked Bag benefit does not apply to overweight or oversized bags. Please see aa.com for baggage weight and size restrictions. Applicable terms and conditions are subject to change without notice. If a free bag code was provided after being approved for a Card Account on the same day of travel, that free bag code can be manually applied by ticketing agents only, for any flights under the Record Locator entered at application for up to 21 days after application date."

5.    The Citi / AAdvantage Platinum Select World Elite Mastercard offer terms and conditions provide for a partner credit card holder to receive a first checked bag free when traveling

---

[2] AAdvantage Aviator Silver Mastercard offer terms and conditions (as of February 21, 2022) available at: https://creditcards.aa.com/barclay-credit-card-aviator-silver-american-airlines-aadvantage/

on domestic American Airlines itineraries and a first checked bag free for up to four (4) travel companions traveling on the same reservation as an eligible partner credit card holder.

6. The credit card's offer terms and conditions provide:[3]

**"First checked bag free**

"For benefit to apply, the Citi® / AAdvantage® account must be open 7 days prior to air travel, and reservation must include the primary credit cardmember's American Airlines AAdvantage® number 7 days prior to air travel. If your credit card account is closed for any reason, these benefits will be cancelled.

"Eligible Citi® / AAdvantage® primary credit cardmembers may check one bag free of charge when traveling on domestic itineraries marketed and operated by American Airlines, or on itineraries marketed by American Airlines and operated as American Eagle® flights by Envoy Air Inc., Republic Airways Inc., SkyWest Airlines, Inc., Mesa Airlines, Inc., PSA Airlines, Inc., or Piedmont Airlines, Inc. All flights on the itinerary must be domestic flights marketed by American Airlines and operated by American Airlines or American Eagle. This benefit will not be available for travel on codeshare flights booked with an American Airlines flight number but operated by another airline. For the Citi® / AAdvantage® credit card, up to four (4) companions traveling with the eligible primary credit cardmember will also get their first checked bag free of charge if they are listed in the same reservation. Waiver does not apply to overweight or oversized bags. This benefit cannot be combined with any existing AAdvantage® elite program benefits, or with First or Business class benefits, including any waiver of baggage charges. Please see aa.com/baggage » for baggage weight and size restrictions. Applicable terms and conditions are subject to change without notice."

7. The Citi / AAdvantage Executive World Elite Mastercard offer terms and conditions provide for a partner credit card holder to receive a first checked bag free when traveling on domestic American Airlines itineraries and a first checked bag free for up to eight (8) travel companions traveling on the same reservation as an eligible partner credit card holder.

8. The credit card's offer terms and conditions provide:[4]

**"First checked bag free**

"For benefit to apply, the Citi® / AAdvantage® account must be open 7 days prior to air

---

[3] Citi / AAdvantage Platinum Select World Elite Mastercard offer terms and conditions (as of February 21, 2022) available at: https://creditcards.aa.com/citi-platinum-card-american-airlines-direct/

[4] The Citi / AAdvantage Executive World Elite Mastercard offer terms and conditions (as of February 21, 2022) available at: https://creditcards.aa.com/citi-executive-card-american-airlines-direct/

travel, and reservation must include the primary credit cardmember's American Airlines AAdvantage® number 7 days prior to air travel. If your credit card account is closed for any reason, these benefits will be cancelled.

"Eligible Citi® / AAdvantage® primary credit cardmembers may check one bag free of charge when traveling on domestic itineraries marketed and operated by American Airlines, or on domestic itineraries marketed by American Airlines and operated as American Eagle® flights by Envoy Air Inc., Republic Airways Inc., SkyWest Airlines, Inc., Mesa Airlines, Inc., PSA Airlines, Inc., or Piedmont Airlines, Inc. All flights on the itinerary must be domestic flights marketed by American Airlines and operated by American Airlines or American Eagle. This benefit will not be available for travel on codeshare flights booked with an American Airlines flight number but operated by another airline. For the Citi® / AAdvantage® card, up to eight (8) companions traveling with the eligible primary credit cardmember will also get their first checked bag free of charge if they are listed in the same reservation. Waiver does not apply to overweight or oversized bags. This benefit cannot be combined with any existing AAdvantage® elite program benefits, or with First or Business class benefits, including any waiver of baggage charges. Please see aa.com/baggage » for baggage weight and size restrictions. Applicable terms and conditions are subject to change without notice."

9. The AAdvantage Program is American's free loyalty program that provides members with certain benefits. The AAdvantage Program Elite Status Benefits page provides under the heading "More information about benefits at the airport":[5]

**"Free checked bags**

"Free checked bags apply, based on the member's status, for members and guests traveling on the same reservation (excluding group reservations) on itineraries marketed and operated by American Airlines or marketed by American and operated by a oneworld® partner. If the standard cabin allowance is higher than the number of free checked bags for your status, then the standard cabin allowance applies.

"The number of free checked bags depends on your highest status level at time of ticketing or check-in. If your status level is:
- Higher at ticketing than at check-in, show your ticket receipt to the airport agent
- Lower at ticketing than at check-in, current benefits will automatically apply

"Oversize or overweight bags may incur additional fees."

10. AirPass is an all-inclusive, pre-paid membership that offers certain privileges, benefits, and status to members of the AirPass program. AirPass members are allowed two or more

---

[5] AAdvantage Program Elite Status Benefits page (as of February 21, 2022) available at: https://www.aa.com/i18n/aadvantage-program/elite-status/elite-status-benefits.jsp

complimentary checked bags when traveling on AirPass.  Members are also required to register for the AAdvantage Program in order to join AirPass. [6]

11.    The Conditions of Carriage and General Rules of the International Tariff do not discuss the program cited in paragraph 10, nor do they incorporate that program by reference.

12.    American Airlines' General Rules of the International Tariff provides, in relevant part:[7]

**"Rule 1 Definitions . . .**

"Most significant carrier (MSC) is determined by a methodology established by IATA (resolution 302) which establishes, for each portion of a passenger's itinerary where baggage is checked through to a new stopover point, which carrier will be performing the most significant part of the service. For travelers under the resolution 302 system, the baggage rules of the MSC will apply. For complex itineraries involving multiple checked baggage points, there may be more than one MSC, resulting in the application of differing baggage rules through an itinerary. Most significant carrier (MSC) – IATA resolution 302 as conditioned by the agency means the MSC is determined by applying IATA resolution 302 methodology as conditioned by the agency. The agency's reservation has stipulated that only a single set of baggage rules may apply to any given interline itinerary. The aim of the agency's reservation is to allow the selecting carrier to use the MSC methodology to determine which carrier's baggage rules apply to an international interline itinerary to or from Canada, while reinforcing the role of tariffs in the determination of which carrier's rules apply."

13.    American employees are provided certain travel benefits in connection with their employment with the company, including baggage benefits.  Those baggage benefits are not included in American's Checked Bag Policy.

14.    Per the terms of the credit card offer terms and conditions, the AAdvantage Program terms and conditions, the AirPass Program terms and conditions, and American's General Rules of the International Tariff, respectively, the baggage benefits detailed above are granted by American Airlines in the ordinary course of business; restrictions detailed above are also applied by American Airlines in the ordinary course of business. These benefits and restrictions are subject

---

[6] *See* https://airpass.aa.com/airpass-faqs/

[7] Tariff No. AA1 as of January 28, 2022 is available (as of March 10, 2022) at https://www.aa.com/content/images/tariff/american-airlines-general-rules-of-the-international-tariff.pdf

0924

to change and American's recognition of these benefits and restrictions does not guarantee their future availability nor applicability.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 10, 2022 in Dallas, Texas.

Laura McAlexander

6

# EXHIBIT 26

# PLAINTIFFS002302

**Screenshot 2022-02-14 at 14-11-19 Citi® AAdvantage® Platinum Select® World Elite™Mastercard®asof 2017-12-03**





citi  AAdvantage
CELEBRATING 30 YEARS

# Your travel explorations can earn you rewards

## Enjoy these perks when you travel:



You won't pay any foreign transaction fees while traveling abroad

First checked bag free for you and up to four people traveling with you on American Airlines itineraries

Preferred boarding on American Airlines

Citi / AAdvantage Platinum Select World Elite Mastercard

Not a current cardmember? »

View all cards

## Earn AAdvantage® miles on all purchases:

**2X** Earn 2 miles for every $1 spent on eligible American Airlines purchases

**1X** Earn 1 mile for every $1 you spend on other purchases

Earn 10% of your redeemed AAdvantage miles back – up to 10,000 miles each calendar year

## Additional Citi® / AAdvantage® benefits that let you explore even more corners of the world:



Save 25% on inflight food and beverage purchases on American Airlines flights



Reduced Mileage Awards allow you to fly to great destinations on select American Airlines flights

**VIP** Citi Private Pass gives you special access to some of the best live music, sporting events and restaurants in the world. Learn more about Citi® Private Pass®



| Compare our best cards | Citi / AAdvantage Executive World Elite™ Mastercard » | Citi / AAdvantage Platinum Select World Elite™ Mastercard » | CitiBusiness / AAdvantage Platinum Select World Mastercard » | CitiBusiness / AAdvantage Select card » | Citi / AAdvantage Gold Mastercard » | Citi / AAdvantage Bronze Mastercard » |
|---|---|---|---|---|---|---|
| **Travel Perks -** | | | | | | |
| ADMIRALS Club. Admirals Club® Membership [+] | ✓ | | | | | |
| First checked bag fee waived on itineraries | ✓ Up to 8 travel companions on the same reservation | ✓ Up to 4 travel companions on the same reservation | ✓ Up to 4 travel companions on the same reservation | | | |
| Global Entry or TSA Pre✓™ Application Fee Credit [+] | ✓ | | | | | |

0928



| | Priority boarding | Preferred boarding | Preferred boarding | | | |
|---|---|---|---|---|---|---|
| Privileges [+] | ✓ | ✓ | ✓ | | | |
| No Foreign Transaction Fees | ✓ | ✓ | ✓ | | | |
| 25% Inflight Savings [+] | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Enhanced Airport Experience [+] | ✓ | | | | | |
| American Airlines Companion Certificate [+] | | | ✓ | | | |
| Citi® Private Pass® [+] | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

## Mileage Perks +

## Business Benefits +

⧉ Link opens in new window.

**\*Pricing**
The standard variable APR for purchases is 16.74% to 24.74% based on your creditworthiness. Balance transfers also are subject to the standard variable purchase APR. The standard variable APR for cash advances is 26.24%. The variable Penalty APR is up to 29.99% and may be applied if you make a late payment or make a payment that is returned. The annual fee for this card is $95. However, this fee is waived for the first 12 months of account opening. Minimum interest charge is $0.50. Fee for Foreign Purchases – None. Cash advance fee - either $10 or 5% of the amount of each cash advance, whichever is greater. Balance transfer fee - either $5 or 3% of the amount of each transfer, whichever is greater. The variable rates shown here are accurate based on the 3.75% Prime Rate as of 12/1/2017 ⧉

**First Checked Bag Free**
For benefit to apply, the Citi® / AAdvantage® account must be open 7 days prior to air travel, and reservation must include the primary cardmember's American Airlines AAdvantage® number 7 days prior to air travel. If your credit card account is closed for any reason, these benefits will be cancelled.

Eligible Citi® / AAdvantage® primary cardmembers may check one bag free of charge when traveling on domestic itineraries marketed and operated by American Airlines , or on domestic itineraries marketed by American Airlines and operated as American Eagle® flights by Compass Airlines, LLC, Envoy Air Inc., ExpressJet Airlines, Inc., Mesa Airlines, Inc., Republic Airline Inc., PSA Airlines, Inc., Piedmont Airlines, Inc., Air Wisconsin Airline Corp., SkyWest Airlines, Inc., Trans States Airlines, LLC. All flights on the itinerary must be domestic flights marketed by American Airlines and operated by American Airlines or American Eagle. This benefit will not be available for travel on codeshare flights booked with an American Airlines flight number but operated by another airline. For the Citi® / AAdvantage® card, up to eight (8) customers traveling with the eligible primary cardmember will also get their first checked bag free of charge if they are listed in the same reservation. Waiver does not apply to overweight or oversized bags. This benefit cannot be combined with any existing AAdvantage® elite program benefits, or with First or Business class benefits, including any waiver of baggage charges. Please see aa.com for baggage weight and size restrictions. Applicable terms and conditions are subject to change without notice.

**Preferred Boarding Privileges**
For benefit to apply, the Citi® / AAdvantage® account must be open 7 days prior to air travel, and reservation must include the primary cardmember's American Airlines AAdvantage® number 7 days prior to air travel. If your credit card account is closed for any reason, this benefit will be cancelled. This benefit will not be available for travel on codeshare flights booked with an American Airlines flight number but operated by another airline. Up to four (4) customers traveling with and listed in the same reservation as the Citi® / AAdvantage® primary credit cardmember are eligible to board at the same time as the primary cardmember. Applicable terms and conditions are subject to change without notice.

Eligible cardmembers will board after Priority boarding is complete, but before the rest of economy boarding. The boarding benefit will display on your American Airlines boarding pass as Group 5. This benefit applies on flights marketed and operated by American Airlines, or on flights marketed by American Airlines and operated as American Eagle® flights by Compass Airlines, LLC, Envoy Air Inc., ExpressJet Airlines, Inc., Mesa Airlines, Inc., Republic Airline Inc., PSA Airlines, Inc., Piedmont Airlines, Inc., Air Wisconsin Airline Corp., SkyWest Airlines, Inc., or Trans States Airlines, LLC.

**Double Miles on American Airlines Purchases**
Eligible American Airlines purchases are items billed by American Airlines as merchant of record booked through American Airlines channels (AA.com, American Airlines reservations, and American Airlines airport and city ticket counters). Products or services that do not qualify are car rentals and hotel reservations (except taxes and charges paid when redeeming miles for car/hotel), purchase of elite status boost or renewal, and AA Cargo℠ products and services. Miles earned will be posted to the primary cardmember's AAdvantage® account in 8-10 weeks.

**1 Mile per $1 on other purchases**
AAdvantage® miles are earned on purchases, except returned goods and services, cash advances, convenience checks, transferred balances, credits, fees and interest charges. Miles may be earned on purchases made by primary cardmembers and authorized users. Miles earned will be posted to the primary cardmember's AAdvantage® account in 8-10 weeks.

0929

**10% Miles Back**

For benefit to apply, your Citi® / AAdvantage® account must be open and active at the time of redemption. The American Airlines AAdvantage® bonus miles the remaining cardmember earns on eligible purchases that post to their Card Account will be automatically redeposited into their AAdvantage® account. There is a maximum number of AAdvantage® bonus miles that can be earned annually from this benefit is 10,000 AAdvantage® bonus miles per calendar year and per AAdvantage® account, regardless of how many AAdvantage® miles you redeem in that calendar year, and regardless of how many AAdvantage® program co-branded credit cards you have. This benefit only applies to AAdvantage® miles redeemed from the primary cardmember's AAdvantage® account. Discover all the ways to redeem AAdvantage® miles at aa.com/redeem. American Airlines AAdvantage® bonus miles typically post 6–8 weeks after your redemption to the primary cardmember's AAdvantage® account.

**Reduced Mileage Awards**

The Reduced Mileage Awards program allows Citi® / AAdvantage® cardmembers to redeem American Airlines AAdvantage® miles for discounted round trip or one-way travel on MileSAAver® awards to destinations selected every other month. The MileSAAver® discount is 7,500 American Airlines AAdvantage® miles round trip or 3,750 one-way for this Citi® / AAdvantage® card if travel booked is greater than 500 miles in distance. If travel booked is less than or equal to 500 miles in distance, which qualifies for a short haul MileSAAver® award, the mileage discount will be 2,000 American Airlines AAdvantage® miles round trip or 1,000 one-way for this Citi® / AAdvantage® card.

Redemption of Reduced Mileage Awards applies only to bookings made by phone through American Airlines Reservations or through airport or city ticket centers. A $35 USD award service charge per person applies to AAdvantage® award reservations ticketed by our Travel Centers, or a $35 USD award service charge per person applies to AAdvantage® award reservations ticketed by our Airport Agents. This payment does not apply to AAdvantage® Executive Platinum members and American Airlines AirPass customers. All such additional amounts are subject to change. Flights and availability are subject to change without notice. For the complete list of Reduced Mileage Awards, visit aa.com/reducedmileageawards.

**25% Savings on Inflight Purchases**

Citi® / AAdvantage® cardmembers will receive a 25% savings on inflight purchases of food and beverages on flights operated by American Airlines when purchased with their Citi® / AAdvantage® card. Savings do not apply to any other inflight purchases, such as wireless internet access. This benefit is not available on codeshare flights booked with an American Airlines flight number but operated by another airline. Offer is available on eligible flights as long as supplies last. Savings will appear as a statement credit 6–8 weeks after the transaction is posted to the cardmember's credit card account. Applicable terms and conditions are subject to change without notice.

**Authorized User**

Before adding an authorized user to your Card Account you should know:

You're responsible for all charges made or allowed to the Card Account by the authorized user. Authorized users have access to your Card Account information. Before adding an authorized user, you must let him/her know that we may report Card Account performance to the credit reporting agencies in the authorized user's name. If we ask for information about the authorized user, you must obtain their permission to share their information with us and for us to share it as allowed by applicable law.

American Airlines AAdvantage® miles earned can only be redeemed by the primary cardholder. Authorized users do not receive the first checked bag free or boarding benefits.

**Mileage Expiration**

American Airlines AAdvantage® miles will not expire provided that once every 18 months you earn or redeem miles on American Airlines, an affiliated carrier, or with an American Airlines AAdvantage® participant. For complete details, visit aa.com/aadvantage.

American Airlines reserves the right to change the AAdvantage® program and its terms and conditions at any time without notice, and to end the AAdvantage® program with six months' notice. Any such changes may affect your ability to use the awards or mileage credits that you have accumulated. Unless specified, AAdvantage® miles earned through this promotion/offer do not count toward elite-status qualification or AAdvantage Million Miler℠ status. American Airlines is not responsible for products or services offered by other participating companies. For complete details about the AAdvantage® program, visit aa.com/aadvantage.

American Eagle® service is operated by Compass Airlines, LLC, Envoy Air Inc., ExpressJet Airlines, Inc., Mesa Airlines, Inc., Republic Airline Inc., PSA Airlines, Inc., Piedmont Airlines, Inc., Air Wisconsin Airline Corp., SkyWest Airlines, Inc., or Trans States Airlines, LLC.

American Airlines, AAdvantage, American Eagle, the Flight Symbol logo, Admirals Club, Million Miler, MileSAAver, Business Extra, Flagship and AA Cargo are trademarks of American Airlines, Inc.

oneworld is a mark of the oneworld Alliance, LLC.

Citibank is not responsible for products or services offered by other companies. Cardmember program terms are subject to change.

Mastercard and the Mastercard Brand Mark are registered trademarks of Mastercard International Incorporated.

World Elite is a trademark of Mastercard International Incorporated.

© 2017 Citibank, N.A. Citi, Citi and Arc Design and other marks used herein are service marks of Citigroup Inc. or its affiliates, used and registered throughout the world.



0930

**Page 3 of 3**

# EXHIBIT 27

Patrick DeBlase (SBN 167138)
deblase@dbelegal.com
Michael C. Eyerly (SBN 178693)
eyerly@dbelegal.com
**DEBLASE BROWN EYERLY LLP**
680 S. Santa Fe Ave.
Los Angeles, CA 90021
Telephone: (310) 575-9955
Facsimile: (310) 575-9919


**GISKAN SOLOTAROFF & ANDERSON LLP**
Oren Giskan (*Pro Hac Pending*)
ogiskan@gslawny.com
90 Broad Street, 10th Floor
New York, NY 10004
Telephone: (212) 847-8315

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| Katherine M. Cleary, et. al., individually and on behalf of others similarly situated, | **Case No.:** |
|---|---|
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | **1. Breach of Contract** |
| AMERICAN AIRLINES, INC., a Delaware Corporation, | **DEMAND FOR JURY** |
| Defendants. | |

1

CLASS ACTION COMPLAINT

1.     Baggage fees are big business for American Airlines ("AA").  In 2019, AA took in over $1.4 billion in baggage fees. Knowing that waiving baggage fees would entice fliers, AA offered free checked bags to certain customers including customers who flew frequently in AA's loyalty program AAdvantage, customers who purchased first or business class tickets, and customers who held AA's branded credit cards.

2.     AA's passenger contracts specify that certain of its passengers are permitted to check bag(s), for free.  Yet, AA systematically required these passengers to pay to check bags and thus breached its contract with affected passengers.

3.     AA failed to program its checked bag terms in the standardized software system that AA uses to determine whether passengers must pay for checked bags when they check in at the airport.   As a result, AA passengers were improperly charged, and forced to pay, baggage fees.

## I.     **PARTIES**

4.     Plaintiffs Katherine Cleary and William Cleary are U.S. citizens residing in Los Angeles, California.  They purchased their tickets while at their home.  Plaintiff Eric Earll is a U.S. citizen residing in Minneapolis, Minnesota.  Plaintiff Filippo Ferrigni is a U.S. citizen residing in St. Louis, Missouri.

5.     On or around February 6, 2017, Plaintiffs William and Katherine Cleary purchased tickets online from AA for travel from Los Angeles to Dallas and return. When they purchased these tickets, they and AA entered into a contract which specified that they could each check their first bag for no additional charge.  AA presented this term of its contract both in the confirmation screens shown at the conclusion of booking, and in the e-ticket confirmation emails AA sent after booking. However, when the Clearys arrived at the airport on March 21, 2017, each with a bag to check, AA required them to pay to check each bag, and similarly upon their return three days later.  They paid the fees.

CLASS ACTION COMPLAINT

6.    On March 8, 2018, AA sent Plaintiff Judy Crosson an email indicating that she had received "Gold status" valid through May 25, 2018.  On May 14, 2018, Crosson purchased a ticket online from AA for herself to travel from Dallas to Myrtle Beach and return.  AA sent Crosson an e-ticket confirmation after booking, confirming that there would be no charge for her first bag.  However, when Crosson arrived at the airport on August 26, 2018, AA required her to pay to check her first bag.

7.    On or around May 13, 2016, Plaintiff Eric Earll purchased a ticket online from AA for himself to travel from Minneapolis to Kansas City and return.  On or around May 13, 2016, Earll also applied for a Citi / AAdvantage Platinum Select credit card which he understood would allow him to check a bag at no additional charge on his upcoming flight.  On May 13, Citi confirmed that Earll has "been approved" and his "account is considered open as of today, 05/13/2016."  However, when Earll arrived at the airport on May 20, 2016, AA required him to pay to check his first bag.  Earll objected that he had the credit card, but the AA check-in agent told him the computer showed no bag fee waiver, that this happens all the time, and that he had to pay the fee in order to check the bag.  Earll paid the fee.

8.    In approximately 2014, Plaintiff Filippo Ferrigni was onboard an AA flight when an oral solicitation invited him to apply for an AA-partner credit card, which he understood would allow him to check a bag at no additional charge on each of his future flights with AA.  Ferrigni received a paper application from a flight attendant and applied for the specified credit card.  On November 12, 2018, Ferrigni purchased a ticket online from AA for travel from St. Louis to St. Kitts and return.  When Ferrigni arrived at the St. Louis airport on April 2, 2019, the AA check-in agent told him his credit card provided a free checked bag only on domestic flights.  Ferrigni had no choice but to pay the fee in order to check his bag.  On April 9, 2019, Ferrigni arrived at the St. Kitts airport to begin his journey home, and again he was required to pay to check his bag.  After an overnight connection in Miami, Ferrigni arrived at the

3

CLASS ACTION COMPLAINT

Miami airport on April 10 for the domestic flight from Miami to St. Louis. Yet again, and despite this flight segment being entirely domestic, AA required Ferrigni to pay to check his bag. Ferrigni paid the fee on all three occasions.

9.      Defendant American Airlines, Inc. is one of the world's largest airlines, providing air travel to passengers and their luggage both domestically and internationally. AA is incorporated in Delaware, headquartered in Texas, and does business in all fifty states, including California.[1]

## II.      VENUE AND JURISDICTION

10.      The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d) because the amount of controversy exceeds $5,000,000 and the class is comprised of at least some persons who are citizens of a state different from AA.

11.      This Court has personal jurisdiction over AA because AA does continuous business in this District.

12.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiffs William and Katherine Cleary. are residents of this District, those Plaintiffs purchased their AA tickets in this District, and AA does business in this District.

## III.      FACTUAL ALLEGATIONS

13.      AA entered into air travel contracts with categories of passengers, whereby AA committed to transport a certain number of checked bags for those passengers, with certain weights, for free. But AA systematically breached those contracts by nevertheless requiring those passengers to pay AA to check such bags.

14.       AA enters into a contract with each of its passengers when a passenger purchases a ticket for travel on AA ("Contract"). In particular, when a passenger

---

[1] *See http://aa.fltmaps.com/en* (AA's flight map, which shows destinations in all 50 states) (last visited on May 29, 2020).

4

purchases a ticket for an AA flight, AA specifies that AA will provide flights as well as other benefits.  First, each Contract includes the ticket, which contains terms such as the specific flight or flights, date and time, and class of service.  Second, each Contract includes AA's standard terms and conditions, described further in the following paragraph. Third, when a passenger makes a purchase on AA's website (AA.COM), the terms shown there (such as fare, change fees, and baggage fees) become part of the contract when the passenger purchases the ticket.  These terms presented to passengers at the point of purchase ("Point of Purchase Terms") are typically summarized and memorialized in an AA.COM screen entitled "Your Trip Summary."  Fourth, when AA offers specific terms for passengers who obtain an AA-partner credit card, the terms of such offer that relate to travel on AA also become part of the contract.

15.   AA has two standard terms and conditions, one or both of which is incorporated into each Contract.  If a passenger purchases a ticket entirely for travel between points in the United States (which includes the fifty states, the District of Columbia, the U.S. Virgin Islands, and Puerto Rico; collectively, "Domestic Flights"), the applicable standard terms and conditions are the Conditions of Carriage.  If the passenger purchases a flight that is at least partially international, the standard terms and conditions also include the "International General Rules."

16.   At all airports, AA uses computers, including check-in kiosks for passengers and computer terminals for agents, to check passenger bags.  On information and belief, these computers all run, connect to, and/or are controlled by AA's Passenger Service System ("PSS").  The PSS determines whether and what amount passengers have to pay to check bags for AA flights.  According to AA, it operates on a "Single Passenger Service System."[2]  On information and belief, AA's PSS is a standardized system that runs consistently throughout AA's operation.

---

[2] *See* History of American Airlines, available at: https://www.aa.com/i18n/customer-service/about-us/history-of-american-airlines.jsp (last visited on August 6, 2020).

5

17.     AA's records memorialize the number of free bags each passenger checked, as well as which passengers paid checked baggage fees and in what amounts.

**A.    AA's Contracts provide that AA will transport a certain number of checked bags for no additional charge.**

18.     The Contract provides that AA will transport a certain number of checked bags for free for certain passengers.  This Contract term is included in the standard terms and conditions, the ticket, and, where applicable, the Point of Purchase terms, and any credit card term offer accepted by those passengers. For example, Plaintiff Judy Crosson and AA entered into the Contract on May 14, 2018, when she used AA.COM to purchase travel from Dallas to Myrtle Beach and return.  The e-ticket confirmation email (memorializing the ticket purchase, as described further in paragraph 29) which AA sent to Crosson expressly stated that she would incur a fee of "USD0.00" for her first checked bag.

**1.     AA Contracts specify that certain passengers may check bags for free.**

19.     The current version of AA's Conditions of Carriage is available online at https://www.aa.com/i18n/customer-service/support/conditions-of-carriage.jsp.

20.     The Conditions of Carriage document includes a section titled "Checked baggage," where AA provides a link to, and thereby incorporates, the Checked Bag Policy.  The Checked Baggage Policy is available online at https://www.aa.com/i18n/travel-info/baggage/checked-baggage-policy.jsp.

21.     In the Checked Bag Policy's section titled "What will it cost?," AA specifies that certain passengers  may check bags for free: AAdvantage Gold members, oneworld Ruby members, and certain AA-partner credit card holders on domestic flights (one bag each); AAdvantage Platinum and Platinum Pro members, oneworld Sapphire members, and passengers confirmed in business class and first class (two bags each); Executive Platinum members, oneworld Emerald members, and

passengers confirmed in first class on three-cabin aircraft (three bags each).  AA further specifies that these checked bag benefits extend to other passengers traveling on the same reservation.

22.     The Checked Baggage Policy links to, and thereby incorporates, a page entitled Oversize and Overweight Bags. The current Oversize and Overweight Bags page is available online at https://www.aa.com/i18n/travel-info/baggage/oversize-and-overweight-baggage.jsp .  That page indicates that each free checked bag by a first class, business class, Executive Platinum and oneworld Emerald member may weigh up to 70 pounds.

**2.      The Point of Purchase Terms are part of the Contract between AA and those passengers who purchase tickets from AA.COM.**

23.     When a passenger purchases a ticket on AA.COM, the passenger first chooses destination, dates, and class of service.  After the passenger makes these choices and before the passenger pays, AA displays a "Your Trip Summary" screen where it specifies the specific flights as well as certain benefits, including the number of bags the passenger can check for free, if the passenger pays AA the listed fare.

24.     The AA Your Trip Summary screen specified that passengers who purchased domestic first class tickets, domestic business class tickets, and international business class tickets would be able to check their first, second, and third bags for free.  These terms presented at the Point of Purchase became part of the Contract when the passenger performed by paying the listed fare.

25.     For example, below is a screenshot from the class period showing the terms AA offered at the Point of Purchase to passengers purchasing domestic first class tickets.

CLASS ACTION COMPLAINT

0938

26.     For tickets purchased from AA.COM from March 29, 2016 through at least December 1, 2016, the AA.COM Your Trip Summary screen indicated that all domestic first class tickets included "Up to 3 checked bags" for free.  The screenshot above (captured on October 16, 2016) demonstrates that promise.

27.     During portions of 2016, AA.COM offered "up to 3 checked bags" for passengers purchasing domestic business class tickets and international business class tickets.

28.     When a customer checks in for an AA flight, AA.COM sometimes encourages the passenger to pay an additional fee to upgrade to business class or first class ("Check-in Upsell Page").  During a portion of 2016, the Check-in Upsell Page specified "up to 3 checked bags" as a benefit of such upgrade.  If a passenger accepted the Check-In Upsell offer, AA reconfirmed that benefit in a Your Trip Summary page again affirming that "up to 3 checked bags" were included in the fare.

**3.     All AA tickets specify how many checked bags AA will transport for no additional charge.**

29.     When a passenger buys an electronic ticket ("e-ticket") from AA, AA does not provide the passenger with a paper ticket.  Nor does AA provide the

passenger with the actual e-ticket, which is a record in an AA computer server.

Instead, AA sends the passenger an e-ticket confirmation email, which reports key

terms of the e-ticket.  AA's e-ticket confirmation emails specify certain checked bag

charges associated with the passenger's itinerary and ticket.  On information and

belief, the e-ticket confirmation specifications regarding checked bag charges match

the terms of the actual e-ticket.

30.    AA sends e-ticket confirmation emails that systematically confirm that

certain passengers may check their first bag for free.  For example, Plaintiff William

Cleary's e-ticket confirmation email, which has the same format and types of

information as the other e-ticket confirmation emails AA sends to passengers, stated:

> Baggage charges for your itinerary will be governed by American
> Airlines BAG ALLOWANCE -LAXDFW-No free checked bags/
> American Airlines BAG ALLOWANCE -DFWLAX-No free
> checked bags/ American Airlines 1STCHECKED BAG FEE-
> LAXDFW-USD0.00/ American Airlines /UP TO 50 LB/23 KG
> AND UP TO 62 LINEAR IN/158 LINEAR CM 1STCHECKED
> BAG FEE-DFWLAX-USD0.00/ American Airlines /UP TO 50
> LB/23 KG AND UP TO 62 LINEAR IN/158 LINEAR CM
> 2NDCHECKED BAG FEE-LAXDFW-USD35.00/ American
> Airlines /UP TO 50 LB/23 KG AND UP TO 62 LINEAR IN/158
> LINEAR CM 2NDCHECKED BAG FEE-DFWLAX-USD35.00/
> American Airlines /UP TO 50 LB/23 KG AND UP TO 62
> LINEAR IN/158 LINEAR CM ADDITIONAL ALLOWANCES
> AND/OR DISCOUNTS MAY APPLY

31.    These terms set forth AA checked bag fees.  For example, Cleary's e-

ticket confirmation email states, "American Airlines 1STCHECKED BAG FEE-

LAXDFW-USD0.00/."  This means that Cleary, like all other passengers who

received this promise from AA, was entitled to check his first bag for free.

32.    Notably, passengers who received this confirmation relied on it and

brought bags to check.

**4.    AA's promises about credit card benefits are part of the Contract**
**between AA and those passengers who apply for and receive those**
**credit cards.**

9

CLASS ACTION COMPLAINT

33.     To induce passengers to apply for credit cards with AA's partner credit card issuers, AA specifies that holders of these credit cards will receive a free checked bag on AA flights, among other benefits.  These offers occur in text on AA.COM, in prerecorded audio-video announcements played aboard AA aircraft, in scripts provided to AA cabin crew to read to passengers through public address systems aboard AA aircraft, and in displays shown at and around AA airport facilities.  When AA makes such an offer to a passenger and the passenger accepts by signing up for the specified credit card, AA's offer of a free checked bag is also a part of the Contract.

34.     On AA.COM, AA prominently featured certain credit cards as allowing passengers to check baggage for free.  For example, as of April 15, 2018, an AA.COM page entitled "AAdvantage Credit Cards" indicated that the "Citi / AAdvantage Platinum Select Card" and "CitiBusiness AAdvantage Platinum Select Card" both offered "First checked bag fee waived."  That page indicated no relevant restriction, such as a first bag available only on domestic journeys or only in other circumstances.



35.     As of April 13, 2018, a page on the AA.COM web site indicated that passengers who obtain certain credit cards receive: "First checked bag free for you and up to four people traveling with you on American Airlines itineraries."  The page went on to present a table indicating that the "Citi AAdvantage Executive World Elite Mastercard", "Citi AAdvantage Platinum Select World Elite Mastercard", and "Citi AAdvantage Platinum Select World Mastercard" each offered "First checked bag waived on itineraries" for "Up to 8 travel companions on the same reservation" or "Up to 4 travel companions on the same reservation" (depending on which card the passenger chose).  No footnote or other disclaimer on or around those statements added any restriction.

36.     Furthermore, AA's onboard statements to passengers promised that a first bag could be checked without charge.  In prerecorded audio announcements on AA aircraft, one recording announced "Our AAdvantage Aviator Mastercard is another great way to earn miles with everyday purchases, and enjoy benefits such as your first checked bag free."  No statement in the audio solicitation limited that benefit to certain flights such as domestic flights.  (Recording made on an AA aircraft on December 6, 2017.)  On aircraft with audio-video capabilities, AA provided both audio and video recordings to promote credit cards to passengers.  One such recording announced that customers who obtain the featured credit card "enjoy benefits such as your first checked bag free."  No statement in the audio solicitation limited that benefit to certain flights such as domestic flights, nor did any on-screen text limit that benefit to certain flights such as domestic flights.  (Recording made May 6, 2018.) On information and belief, AA provided its cabin crew with scripts to be read verbatim to promote AA-partner credit cards.  On information and belief, one such script instructed crew to announce that for a certain AA credit card, "Other benefits include … your first checked bag is free for you and up to four of your traveling companions on your reservation."  No statement in the audio solicitation limited that benefit to certain flights such as domestic flights.  (Recording made on an AA aircraft

11

CLASS ACTION COMPLAINT

on November 25, 2018.)  On information and belief, AA systems played these solicitations and AA staff read these solicitations even on international flights.  With passengers flying internationally, the AA solicitations could only be understood as applying on passengers' future international journeys.  On information and belief, Plaintiff Ferrigni first learned about an AA credit card based on an AA inflight solicitation, during an international flight, that mentioned a free checked bag benefit.

37.     On information and belief, AA promised in offers on airport premises that passengers who obtained certain credit cards could check a first bag free of charge, and did not in these statements indicate any restriction to domestic flights.  On information and belief, these offers included brochures at check-in counters, gate areas, and clubs.  On information, these offers included large-format wall displays.

38.     No matter where AA made credit card offers – whether on AA.COM, through airplane systems, or at airport premises – AA made offers which customers accepted by applying for the specified credit cards.  When passengers did so, the terms of those offers became part of passengers' contracts with AA.

39.     Class representative Eric Earll was traveling from Minneapolis to Kansas City on May 20, 2016.  He had an AA-partner credit card which he obtained in order to check baggage without charge.  But when he presented his baggage for check-in in Minneapolis, an AA employee told him that there was no baggage fee waiver in AA's computer system for his travel.  AA required Mr. Earll to pay a baggage fee in order to check his bag and travel.  An AA employee told Mr. Earll that "this happens all the time" and suggested that he contact AA by phone to request a refund.  When Mr. Earll did so, AA did not return his funds.

40.     Class representative Filippo Ferrigni was traveling from St. Louis to St. Kitts on April 2, 2019.  He had an AA-partner credit card which he obtained in order to check baggage without charge.  But when he presented his baggage for check-in in St. Louis, an AA employee told him that his credit card waived baggage fees only on domestic travel.  Mr. Ferrigni reluctantly paid to check his baggage.

12

CLASS ACTION COMPLAINT

**B.**   **AA systematically breached the Contract because it required certain passengers to pay to check certain bags.**

41.   AA breached its baggage fee obligations in the contract in the same way for all affected passengers.  At the time when specified passengers purchased a ticket, AA formed a Contract with each such passenger that included a number of free checked bags.  But when these passengers attempted to check their bags, AA systematically required such passengers to pay to check such bags.

**1.**   **AA breached the Contract's terms promising that certain passengers could check certain bags for no additional fee.**

42.   As described above, AA's contracts provided that elite members and business and first class passengers could check free bags as specified in paragraph 21. The contracts further provided that Executive Platinum members, oneworld Emerald members, and business and first class passengers could check bags of up to 70 pounds for free.  But AA charged these passengers to check bags that it was contractually obliged to transport for free.

43.   Many passengers reported, on Twitter and other public discussion forums, that AA required them to pay for checked bags that AA was obliged to transport for free because they qualified for a particular frequent flyer status.  For example, on April 29, 2019, a passenger complained on twitter that "I guess being Gold only gives you a free checked bag on occasion?!?!", thereby indicating that AA had denied the promised benefit of a first free checked bag for each Gold passenger. On January 23, 2020, a passenger complained on Twitter that AA staff "still insist on charging me for my third bag" despite her Executive Platinum status.  On February 29, 2020, another Executive Platinum member reported on Twitter that AA's computer system allowed him to check only two bags without an additional charge.

44.   Executive Platinum and oneworld Emerald Passengers further reported, on Twitter and other public discussion forums, that AA required them to pay to check

CLASS ACTION COMPLAINT

1  bags of up to 70 pounds.  For example, on April 21, 2017, a passenger on Facebook

2  reported "Heads up to those that fly with bags over 50 pounds to and from SMF.

3  Those clowns tried to make me pay for over weight baggage, even though exec plat

4  members can have bags up to 70 pounds. They were arguing with me that I needed

5  first class ticket for this perk."  Another passenger replied: "I've run into this a number

6  of times; I regularly travel with anywhere between 3-12 70lb pieces (depending on the

7  number of people with me). PHL is notoriously bad about that. And when I run into it,

8  it's widespread issue at that station. Not just an agent or two."

9      45.    AA's e-ticket confirmation emails specify the baggage benefits of the

10  elite status that a passenger held as of the date of ticketing apply to that ticket.

11  Passengers rely on the confirmation of benefits plainly listed within their travel

12  documents. But when those passengers check a bag on the date of travel, AA charges

13  a checked baggage fee.

14      46.    For example, Plaintiff Crosson held Gold status as of the date of

15  ticketing.  Her e-ticket confirmation email specified one free checked bag, the

16  baggage benefit associated with the Gold status she held at the date of ticketing.  AA

17  breached the Contract when it charged her to check her first bag.

18      47.    Other passengers reported, on Twitter and other public discussion

19  forums, that AA required them to pay for checked bags that AA promised to transport

20  for no additional charge because of their then-applicable frequent flyer status.  For

21  example, on Twitter on February 29, 2020, a passenger complained that he "booked a

22  flight while AA Platinum."  He reported that his e-ticket confirmation email said he

23  could check two bags at no charge, but AA staff charged him anyway.

24      **2.    AA breached the Point of Purchase Terms specifying that passengers**

25          **who travelled on business and first class tickets could check three**

26          **bags for no additional fee.**

27      48.    As described above, AA's Contracts with business and first class

28  passengers specified that they could transport up to three bags, each weighing up to 70

pounds, at no additional charge.  Yet AA systematically breached its contracts with these passengers.  AA passengers have reported, on Twitter and flyertalk.com, that AA required them to pay for checked bags that AA promised in the terms of the Contract to transport without charge.

49.     For example, a passenger purchased a first-class ticket on AA's website for travel in January 2017.  AA's Your Trip Summary screen specified that she could check her first, second, and third bags for no additional charge if she paid AA the stated fare.  Nonetheless, AA required her to pay to check her third bag.

50.     Similarly, another passenger stated that he purchased a ticket on AA's website for a first-class seat on a domestic flight in or around November 2016.  AA's Your Trip Summary screen specified that he could check his first, second, and third bags for no additional charge.  Nonetheless, AA required him to pay to check his third bag.

51.     Another passenger reported having purchased a ticket on AA's website for travel in July 2016 and choosing a first class ticket based on AA's Point of Purchase terms specifying that she could receive "Up to 3 checked bags" if she bought that ticket.  Upon checking in, she was not able to check a third bag for free because AA refused to accept her third checked bag unless she paid an additional $200.

52.     Many passengers complained directly to AA, including publicly via Twitter.  Affected passengers widely reported surprise at being charged for their third checked bag, particularly when they were told prominently at the Point of Purchase that three bags could be checked for free.  For example, one passenger complained on Twitter: AA "says I get three bags with 1st class upgrade… But I was charged $150. Shame on you!"  Another passenger explained on Twitter: "When I purchased my ticket, the box I clicked stated I was allowed 3 free bags."  Multiple passengers posted screenshots or photographs showing the Point of Purchase terms on AA.COM specifying that business and first class passengers may check up to three bags for free.

CLASS ACTION COMPLAINT

0946

**3.**   <u>**AA breached the promises in e-tickets promising a free first bag to certain passengers.**</u>

53.   As described above, AA's e-tickets and e-ticket confirmation emails include baggage terms.  Contrary to these terms, AA charged passengers to check bags when the e-ticket confirmation email specifically said such bags would be checked for free .

54.   For example, Plaintiffs William and Katherine Cleary held e-tickets and presented e-ticket confirmation emails indicating that they could each check their first bag for free.  At the airport on both their outbound and return flights, AA staff required them to pay.  Similarly, Plaintiff Crosson received an e-ticket confirmation email specifying a free checked bag, but nonetheless AA charged her to check her bag.

55.   Other passengers on Twitter complained that AA similarly charged them despite the terms written in their e-ticket confirmation emails.  For example, on February 29, 2020, a passenger complained that his e-ticket confirmation email said he could check two bags at no charge, but AA staff charged him anyway.

**4.**   <u>**AA breached the Contract's terms promising a free first bag to passengers with certain partner credit cards.**</u>

56.   As described above, AA specified that passengers with certain credit cards could check a free first bag.  Yet AA charged passengers with AA-partner credit cards to check their first bag.  For example, Plaintiff Earll had a Citi / AAdvantage Platinum Select credit card which AA promised would allow him to check a bag for free on his upcoming flight, but AA nonetheless charged him.  Users on Twitter similarly reported that despite having AA-partner credit cards that included a free first checked bag, AA required them to pay to check such bags during domestic travel.

57.   Furthermore, AA systematically refused to provide a free checked bag to holders of its partner credit cards traveling on international flights.  For example, AA induced Plaintiff Ferrigni to obtain an AA credit card via the promise that it would

16

1  provide a free checked bag, but when Ferrigni tried to check a bag on an international

2  itinerary, AA required him to pay.  Users on Twitter similarly reported that despite

3  having AA-partner credit cards that included a free first checked bag, AA required

4  them to pay to check such bags during international travel.  For example, on March

5  26, 2018, a Twitter user complained about a charge for checking a bag on an

6  international flight, based on AA marketing materials indicating that a bag could be

7  checked for free and nowhere mentioning any exclusion of international journeys.

8  **C.** **AA CONTINUED IMPROPER BAG FEES DESPITE PRIOR CLASS**

9  **ACTION LITIGATION**

10  58.  AA has faced prior class action litigation about charging fees to check

11  bags it had promised to transport for free.  See *Max Bazerman v. American Airlines,*

12  *Inc.*, Case No. 1:17-cv-11297-WGY (D. Mass. 2017).  At issue in this case are certain

13  claims that were not settled or released in Bazerman.  Among those claims are the

14  following situations.

15  59.  *Charges after Bazerman settlement*.  The Bazerman settlement released

16  only charges made on or before June 7, 2018.  AA continued to charge bag fees in

17  breach of its contracts, after that date.

18  60.  *Charges not found in the Bazerman settlement due to underinclusive*

19  *class list*.  The Bazerman settlement released only claims by those persons who were

20  included in the class list and to whom individual notice was directed.   No notice was

21  sent to Plaintiff William Cleary.

22  61.  *Charges not found in the Bazerman settlement due to other software*

23  *errors*.  On information and belief, the search criteria in Bazerman identified only a

24  portion of the bags that should have been refunded under the plain language of the

25  Bazerman settlement and release.

26  62.  *Charges relating to overweight bags*.  The Bazerman settlement and

27  release did not cover charges resulting from to AA's promises about the weight of

28  such bags, including transporting 51 to 70 pound bags without additional charge.

17

CLASS ACTION COMPLAINT

63.     *Charges relating to credit card promises*.  The Bazerman settlement and release did not cover charges for holders of AA branded credit cards.

## IV.     CLASS ACTION ALLEGATIONS

64.     Plaintiffs reallege the foregoing paragraphs of this Complaint as though fully set forth herein.

65.     Plaintiffs bring this action as a class action for monetary relief pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons who purchased a ticket for air travel on American Airlines ("AA") subject to AA promises that their ticket would allow the passenger to check a specified number of bags for free, when in fact AA required the passengers to pay to check one or more such bags, during the relevant statute of limitations period prior to the filing of the complaint.  ("Class Definition" or "Class")

66.     Excluded from the Class are defendants herein, and any person, firm, trust, corporation, or other entity related to or affiliated with defendants, including without limitation persons who are officers, directors, employees, agents, associates or partners of defendants, and Plaintiffs' Counsel and employees of their firms.  Also excluded from the Class are those persons whose only claims arise from baggage fees released in *Max Bazerman v. American Airlines, Inc.*, Case No. 1:17-cv-11297-WGY (D. Mass. 2017).

67.     This action is properly maintained as a class action.  The Class satisfies all of the requirements of Rule 23 for maintaining a class action.

68.     **Ascertainability.**  The members of the Class (collectively "class members") are known to AA.  Their identities are recorded in AA's business records.  Moreover, the Class Definition enables every putative class member to identify himself or herself as a member of the Class.

69.     **Numerosity.**  The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  Plaintiff believes there are thousands

18

1    of members of the Class, who are geographically dispersed throughout the United

2    States.

3         70.    **Existence and predominance of common questions of law or fact.**

4    There are questions of law or fact that are common to the Class, which predominate

5    over questions affecting any individual class member.  AA's PSS is centralized

6    software that AA uses to manage different parts of its business.  The PSS includes

7    databases containing all of AA's domestic and international passenger reservations

8    and ticketing information as well as the baggage fees each passenger paid.  AA's PSS

9    determines whether domestic and international passengers pay for checked bags when

10   they check in for their flights.  The PSS did not incorporate AA's contractual terms

11   regarding checked bag fees to international and domestic passengers.  As a result, AA

12   systematically charged passengers for checked bags in breach of the Contracts

13   specifying that AA would transport such checked bags for free.  The common nucleus

14   of operative facts also includes AA's standardized terms and conditions for customer

15   air travel described above, as well as the presentation of the same promises to

16   passengers through e-ticket confirmation emails and computerized displays on

17   AA.COM.

18        71.    Common questions of law or fact include without limitation:

19        a.     Whether class members performed pursuant to AA's offer when they

20               purchased a ticket for travel on AA;

21        b.     Whether the Contract was formed at the time when a class member

22               purchased a ticket for travel on AA;

23        c.     Whether the Contract specified that class members could check a

24               specified quantity and weight of bags at no additional charge;

25        d.     Whether AA failed to program its Passenger Service System to embody

26               the terms of its Contracts with passengers;

27        e.     Whether AA breached the Contract when it required class members to

28               pay checked bag fees.

19

CLASS ACTION COMPLAINT

72.     **Typicality.**  The claims of Plaintiffs are typical of those of the class members, and Defendant has no defenses that are unique to Plaintiffs.

73.     **Adequacy of representation.**  Plaintiffs will fairly and adequately protect the interests of the class and has no interests adverse or antagonistic to the interests of the other members of the class.  Plaintiffs have retained competent counsel who are experienced in the prosecution of consumer class action litigation.

74.     **Superiority.**A class action is superior to other methods for the fair and efficient adjudication of the claims asserted herein.  A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of time and expense that the prosecution of numerous individual actions would entail.  Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of in this action.  Plaintiffs do not anticipate any unusual difficulties in the management of this class action.

## CAUSE OF ACTION: BREACH OF CONTRACT

## (all Class Members)

75.     Plaintiffs reallege the foregoing paragraphs of this Complaint as though fully set forth herein.

76.     Plaintiffs and all other class members entered into valid and enforceable written contracts with AA for air transportation.  Each such contract specified that the passenger could check a specified quantity of baggage for free.  Plaintiffs and all members of the Class accepted AA's offer and fully performed their obligations under the Contract.

77.     AA nonetheless refused and failed to provide the free baggage transportation services specified by the Contract.  In breach of its contracts with class

0951                                    CLASS ACTION COMPLAINT

members, AA's centralized software system, the PSS, required all members of the Class to pay these baggage fees.

78.    As a direct result of AA's breach of the Contract, Plaintiffs and all other members of the Class suffered actual damages in the form of bag check expenses and incurred reasonable and foreseeable economic harm.

WHEREFORE, Plaintiffs request relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, prays for judgment against Defendant as follows:

A.    Certification of Plaintiffs' claim as a class action, pursuant to Fed. R. Civ. P. 23(b)(2) & (3), on behalf of the proposed Class;

B.    Actual damages in an amount not less than the amount AA obtained from Plaintiffs and the Class to transport checked bags in breach of the Contract;

C.    An order enjoining Defendant from charging fees beyond those promised in applicable contracts, or from denying benefits provided in applicable contracts;

D.    An award of reasonable attorneys' fees on behalf of Plaintiffs and the Class, pursuant to Texas Civil Practices and Remedies Code § 38.001 and other applicable contract law;

E.    An award of costs of suit on behalf of Plaintiffs and the Class, pursuant to Texas Civil Practices and Remedies Code § 38.001 and other applicable contract law;

F.    Pre-judgment at the maximum rate of interest permitted by law;

G.    Post-judgment interest at the maximum rate of interest permitted by law; and

H.    Such other and further relief that the court may deem just and proper.

## **DEMAND FOR A JURY TRIAL**

CLASS ACTION COMPLAINT

1    Plaintiffs hereby demand a trial by jury.

2

3

4    DATED: September 4, 2020          Respectfully submitted,

5

6

7                                     _____
                                      Patrick DeBlase
8                                     Attorney for Plaintiffs and the Proposed Class

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22

0958

# EXHIBIT 28

1  **LATHAM & WATKINS LLP**
   JOSHUA G. HAMILTON (Bar No. 199610)
2  joshua.hamilton@lw.com
   10250 Constellation Boulevard, Suite 1100
3  Los Angeles, CA 90067
   Telephone: 424.653.5500
4  Facsimile: 424.635.5501

5  **LATHAM & WATKINS LLP**
   GWYN WILLIAMS (*admitted pro hac vice*)
6  DAVID C. TOLLEY (*admitted pro hac vice*)
   gwyn.williams@lw.com
7  david.tolley@lw.com
   200 Clarendon Street, Floor 26
8  Boston, MA 02116
   Telephone: 617.948.6000
9  Facsimile: 617.948.6001

10
   *Attorneys for Defendant*
11 *American Airlines, Inc.*

12                 UNITED STATES DISTRICT COURT

13                 CENTRAL DISTRICT OF CALIFORNIA

14

15 Katherine M. Cleary, et al.,           CASE NO. 2:20-cv-08139-PA-MRW
   individually and on behalf of others
16 similarly situated,                    **AMERICAN AIRLINES, INC.'S**
                                          **MEMORANDUM OF POINTS AND**
17              Plaintiffs,               **AUTHORITIES IN SUPPORT OF**
                                          **MOTION TO TRANSFER FOR**
18     v.                                 **IMPROPER VENUE AND MOTION**
                                          **TO DISMISS CLAIMS OF CERTAIN**
19 AMERICAN AIRLINES, INC., a             **PLAINTIFFS FOR LACK OF**
   Delaware Corporation,                  **PERSONAL JURISDICTION**
20
              Defendant.
21

22                                        Hearing
23                                        Date: December 14, 2020
                                          Time: 1:30 p.m.
24                                        Courtroom: 9A
                                          Judge: Hon. Percy Anderson
25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

0955

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

# **TABLE OF CONTENTS**

I.      INTRODUCTION.................................................................................1

II.     BACKGROUND..................................................................................2

III.    ARGUMENT .......................................................................................3

    A.   This Court Cannot Exercise Personal Jurisdiction Over
         The Claims Asserted By Three Plaintiffs..............................................4

        1.  General Jurisdiction Over American Does Not
             Exist in California .........................................................................4

        2.  Specific Jurisdiction Over The Claims That Mr.
             Earll, Mr. Ferrigni, and Ms. Crosson Assert
             Against American Does Not Exist....................................................6

    B.   This District Is Not The Proper Venue For The Claims
         Asserted By Three Plaintiffs ................................................................8

    C.   Transfer Of This Action To The Northern District Of
         Texas Would Best Serve The Interests of Justice and
         Convenience ........................................................................................10

        1.  Transfer Is Warranted Pursuant to 28 U.S.C. §
             1406(a) ..........................................................................................11

        2.  Transfer Is Warranted Pursuant to 28 U.S.C. §
             1404(a) ..........................................................................................11

            a.  Plaintiffs' Choice of Forum and Putative
                 Class Action Cut Against Litigating In This
                 Forum.......................................................................................12

            b.  Location of the Witnesses and Documents
                 Weighs In Favor Of Transfer.........................................12

            c.  Location of the Parties Weighs In Favor Of
                 Transfer....................................................................................13

            d.  Interests of Justice Weigh In Favor of
                 Transfer....................................................................................14

        3.  Transfer Is Warranted Pursuant To Plaintiffs'
             Agreement To A Forum Selection Clause.................................16

            a.  American's AAdvantage Loyalty Program..................16

            b.  Plaintiffs Entered Into A Valid Clickwrap
                 Agreement...............................................................................18

IV.     CONCLUSION ..................................................................................21

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

0956

i

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## __TABLE OF AUTHORITIES__

**Page(s)**

### CASES

*Abrams Shell v. Shell Oil Co.*,
 165 F. Supp. 2d 1096 (C.D. Cal. 2001) ................................................................8

*Agher v. Envoy Air Inc.*,
 No. CV 18-6753-R, 2018 WL 6444888 (C.D. Cal. Oct. 12, 2018).....................5

*Amity Rubberized Pen Co. v. Mkt. Quest Grp. Inc.*,
 793 F.3d 991 (9th Cir. 2015) .............................................................................11

*Arencibia v. AGA Serv. Co.*,
 No. 1:19-cv-24300-MGC (S.D. Fla. Aug. 5, 2020), ECF No. 63 ......................20

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
 571 U.S. 49 (2013)......................................................................................10, 16

*Bandurin v. Aeroflot Russian Airlines*,
 2020 WL 362781 (N.D. Ill. Jan. 22, 2020).........................................................7

*Banks v. Am. Airlines*,
 No. 19-cv-04026-JSC, 2019 WL 5579479 (N.D. Cal. Oct. 29,
 2019) ....................................................................................................................5

*Bristol-Myers Squibb Co. v. Superior Ct.*,
 137 S. Ct. 1773 (2017)......................................................................................6, 7

*Coffey v. Mesa Airlines Inc.*,
 No. CV 18-3688-DMG, 2019 WL 4492952 (C.D. Cal. Apr. 15,
 2019), *aff'd*, 812 F. App'x 657 (9th Cir. 2020)...................................................4

*Crawford v. Beachbody, LLC*,
 No. 14cv1583-GPC(KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5,
 2014) ............................................................................................................18, 19

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014)............................................................................................5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

0957

ii

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

*Gamayo v. Match.com LLC*,
   No. C 11-00762 SBA, 2011 WL 3739542 (N.D. Cal. Aug. 24,
   2011) ...............................................................................................19

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) ...........................................................12

*Kabbash v. Jewelry Channel, Inc. USA*,
   No. CV154007DMGMRWX, 2016 WL 9132930 (C.D. Cal. Feb.
   22, 2016) .........................................................................................19

*L.A. Printex Indus., Inc. v. Pretty Girl of Cal., Inc.*,
   No. CV 08-3238 PA, 2008 WL 11343013 (C.D. Cal. Dec. 15,
   2008) ...............................................................................................11

*LaGuardia v. Designer Brands, Inc.*,
   No. 19CV1568 JM (BLM), 2020 WL 2463385 (S.D. Cal. May 7,
   2020) .................................................................................................8

*Leong v. Myspace, Inc.*,
   No. CV 10-8366 AHM (Ex), 2011 WL 7808208 (C.D. Cal. Mar.
   11, 2011) .........................................................................................19

*Luna v. Wal-Mart Transp., LLC*,
   No. EDCV 18-331 PSG (KKx), 2018 WL 3569357 (C.D. Cal. July
   11, 2018) ....................................................................................13, 14

*Metz v. U.S. Life Ins. Co.*,
   674 F. Supp. 2d 1141 (C.D. Cal. 2009) ......................................13, 15

*Mina v. Red Robin Int'l, Inc.*,
   No. CV 18-9472 PSG, 2020 WL 4037163 (C.D. Cal. Mar. 3, 2020) ..........14, 15

*Moretti v. Hertz Corp.*,
   No. C 13-02972 JSW, 2014 WL 1410432 (N.D. Cal. Apr. 11,
   2014) ...............................................................................................19

*In re Nissan N. Am., Inc. Litig.*,
   No. 18-cv-07292-HSG, 2019 WL 4601557 (N.D. Cal. Sept. 23,
   2019) .......................................................................................8, 9, 10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

0958

iii

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

*Prime Healthcare Servs., Inc. v. United Healthcare Servs., Inc.*,
   No. ED CV 16-1159 PA, 2017 WL 2713328 (C.D. Cal. Jan. 26,
   2017) ............................................................................................15

*Sandler v. iStockphoto LP*,
   No. 2:15-cv-03659-SVW-JEM, 2016 WL 871626 (C.D. Cal. Feb.
   5, 2016) ...................................................................................18, 20

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ...............................................................6

*Siefert v. Specialty Rests. Corp.*,
   No. CV 20-790 PA, 2020 WL 5077002 (C.D. Cal. July 6, 2020) ....................12

*Smithson v. Jackson Nat'l Life Ins. Co.*,
   No. CV 17-7485 FMO, 2018 WL 5099510 (C.D. Cal. May 29,
   2018) ............................................................................................14

*Strickland v. Aramark Unif. & Career Apparel, LLC*,
   No. 2:14-cv-09851-CAS-JEMx, 2015 WL 13742905 (C.D. Cal.
   May 1, 2015)...................................................................................12

*United States v. Drew*,
   259 F.R.D. 449 (C.D. Cal. 2009).........................................................18

*Visions of Am., LLC v. Bos. Symphony Orchestra, Inc.*,
   No. CV 13-4355 PA, 2013 WL 12148278 (C.D. Cal. Oct. 28,
   2013) ............................................................................................13

*Wasson v. LogMeIn, Inc.*,
   No. CV 18-7285 PA, 2018 WL 6016283 (C.D. Cal. Nov. 2, 2018) ............12, 14

*Zamber v. Am. Airlines, Inc.*,
   No. 1:16-cv-23901-JEM (S.D. Fla. Feb. 11, 2020), ECF No. 474....................20

## STATUTES

28 U.S.C.
   § 1391(b)........................................................................................8, 9, 10
   § 1391(c)(2) ....................................................................................9
   § 1404(a) ........................................................................................11, 12, 16
   § 1406(a) ........................................................................................1, 10, 11, 21

LATHAM&WATKINS™
ATTORNEYS AT LAW
LOS ANGELES

0959

iv

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

Cal. Civ. Proc. Code § 337 .............................................................2

Tex. Civ. Prac. & Rem. Code Ann. § 16.004 ...................................2

**RULES**

Fed. R. of Civ. Proc. 12(b)(2) ...................................................1, 21

**OTHER AUTHORITIES**

American Airlines, *Conditions of carriage: Contract details*,
    https://www.aa.com/i18n/customer-service/support/conditions-of-
    carriage.jsp?anchorEvent=false&from=footer? (last visited Nov.
    12, 2020) ..................................................................................15

United States District Courts—National Judicial Caseload Profile,
    available at
    https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_d
    istprofile0630.2020.pdf (last visited Nov. 12, 2020).......................15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

0960

v

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

## I.      INTRODUCTION

This Court cannot hear this matter as currently pleaded as Plaintiffs' putative class action complaint fails to clear threshold personal jurisdiction and venue hurdles.  Plaintiffs cannot demonstrate that American Airlines, Inc.—a Delaware corporation headquartered in Texas—can be sued in California for the claims of three named Plaintiffs—Eric Earll, Filippo Ferrigni, and Judy Crosson—that do not arise from any conduct that occurred in California.  Without such connection, the Court does not have personal jurisdiction over American with respect to the claims of these three Plaintiffs and, relatedly, makes venue improper in this district for those claims.

Under these circumstances, the law provides this Court with two options: (i) either dismiss or transfer the entire case pursuant to 28 U.S.C § 1406(a) to another district where the action could have been brought, or (ii) dismiss the offending claims under Rule 12(b)(2) for lack of personal jurisdiction.  In this case, transfer to the United States District Court for the Northern District of Texas would be the most sensible course of action given that American is subject to general jurisdiction there and its principal witnesses are found there too.  Further, the majority of Plaintiffs agreed to a forum selection clause obligating them to bring suit in Tarrant County, Texas (located within the Northern District of Texas).  Transfer would thus serve the interest of justice as it would allow this Court to simultaneously and efficiently resolve personal jurisdiction, venue, and forum selection issues.

American therefore moves to transfer this action to the U.S. District Court for the Northern District of Texas under 28 U.S.C. § 1406(a).  Should this Court decline to transfer this action, American moves to dismiss the claims of Mr. Earll, Mr. Ferrigni, and Ms. Crosson pursuant to Rule 12(b)(2).

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

0961

1

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

## II.    BACKGROUND

American is incorporated in Delaware and headquartered in Texas.  Compl. ¶ 9, ECF No. 1.  All five of the named Plaintiffs claim that American breached promises to transport a certain number of checked baggage for no cost by charging Plaintiffs baggage fees.  *Id.* ¶ 13.  Plaintiffs allege that these promises were included in American's "standard terms and conditions, the ticket, and, where applicable, the Point of Purchase terms, and any credit card term offer accepted by . . . passengers."  *Id.* ¶ 18.  Plaintiffs contend that this Court can assert personal jurisdiction over American because it does "continuous business" in the district and that venue is proper because Plaintiffs William and Katherine Cleary booked tickets for travel while in this district.  *Id.* ¶¶ 11, 12.  Yet, there is no allegation that the claims of the remaining three Plaintiffs—Mr. Earll, Mr. Ferrigni, and Ms. Crosson—relate to California in any way.

Mr. Earll, a resident of Minnesota, claims that he booked roundtrip travel from Minneapolis, Minnesota to Kansas City, Missouri on American's website on May 13, 2016.  *Id.* ¶¶ 4, 7.  On the same day, Mr. Earll allegedly applied for an American partner credit card, which he understood entitled him to check a bag on his upcoming flight for no charge.  *Id.* ¶¶ 7, 39.  Mr. Earll claims that, despite this alleged credit card benefit, he paid to check his bag at the airport in Minneapolis on May 20, 2016.[1]  *Id.*

Mr. Ferrigni, a resident of Missouri, asserts that he purchased a roundtrip ticket for international travel from St. Louis, Missouri to St. Kitts on American's website on November 12, 2018.  *Id.* ¶¶ 4, 8.  Mr. Ferrigni alleges that he applied

---

[1] Because Mr. Earll's breach of contract claim arises from events occurring in May 2016 and Plaintiffs filed their Complaint on September 11, 2020, Mr. Earll's claim runs afoul of both California's and Texas's four year statute of limitations for breach of contract claims.  *See* Cal. Civ. Proc. Code § 337; Tex. Civ. Prac. & Rem. Code Ann. § 16.004. For efficiency's sake this Court could dismiss Mr. Earll's claims now or it may leave that step to the transferee Texas court.

LATHAM&WATKINS ᴸᴸᴾ
ATTORNEYS AT LAW
LOS ANGELES

0962

2

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

1   for an American partner credit card in 2014 with the understanding that it would

2   entitle him to check baggage for no charge.  *Id.* ¶¶ 8, 40.  Mr. Ferrigni claims that,

3   despite this alleged credit card benefit, he paid to check his bag at the St. Louis

4   airport, Miami airport, and St. Kitts airport.  *Id.* ¶ 8.

5        Ms. Crosson alleges that she purchased a roundtrip ticket for travel from

6   Dallas, Texas to Myrtle Beach, South Carolina on American's website on May 14,

7   2018.[2]  *Id.* ¶¶ 6, 18.  Ms. Crosson alleges that American sent her an e-ticket

8   confirmation email that stated she would not incur a fee for her first checked bag

9   on her upcoming flight.  *Id.* ¶ 18.  Ms. Crosson contends that, despite this e-ticket

10  confirmation, she paid to check her first bag when she arrived at the airport in

11  Texas on August 26, 2018.  *Id.* ¶ 6.

12  **III.  ARGUMENT**

13       Plaintiffs' claims are not properly before this Court, but would properly be

14  before the federal court in the Northern District of Texas following transfer.  First,

15  Plaintiffs cannot demonstrate that American is subject to general jurisdiction in

16  California, which is the only way that claims unconnected to American's activities

17  in California can be brought here.  Second, Plaintiffs cannot demonstrate that this

18  Court has specific jurisdiction with regard to the claims of Mr. Earll, Mr. Ferrigni,

19  and Ms. Crosson because there are no facts showing that these claims are

20  connected to California.  Third, Plaintiffs also fail to show that venue for all claims

21  is proper in this district where the events underlying Plaintiffs' breach of contract

22  claims occurred in several different states.

23       Consequently, this Court cannot allow Plaintiffs to pursue their claims here

24  without dismissal of Mr. Earll's, Mr. Ferrigni's, and Ms. Crosson's claims to cure

25

26  _____

27  [2] While the Complaint makes no mention of Ms. Crosson's place of residence, American's records indicate that Ms. Crosson is a resident of Abilene, Texas.  *See* Declaration of Nital Ghosh ("Ghosh Decl.") ¶ 6.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

0963

3

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

1   the personal jurisdiction and venue defects.  However, Plaintiffs could proceed

2   with this action as currently pleaded if it were transferred to the Northern District

3   of Texas.  Indeed, the Northern District of Texas is the only suitable forum for this

4   action, as American is subject to general jurisdiction there and venue would also be

5   proper in that district.  Transfer is also supported by several other factors, including

6   that American's principal witnesses and records are located in Texas and that

7   Plaintiffs affirmatively assented to a forum selection clause that obligates suits to

8   be brought in Tarrant County, Texas.  Thus, in the interest of justice, this Court

9   must transfer this matter to the Northern District of Texas.

10      **A.**      **This Court Cannot Exercise Personal Jurisdiction Over The**

11   **Claims Asserted By Three Plaintiffs**

12      Plaintiffs cannot demonstrate that the requirements of either general

13   jurisdiction or specific jurisdiction over all claims asserted against American are

14   met.  First, Plaintiffs fail to allege that American operates its business in a way that

15   renders the company at home in California, such that it can be sued *in* California

16   for acts it committed *outside* of California.  Second, Plaintiffs fail to allege that the

17   breach of contract claims asserted by Mr. Earll, Mr. Ferrigni, and Ms. Crosson

18   arise out of American's contacts in California.  Plaintiffs thus cannot meet their

19   burden to make a prima facie showing of jurisdictional facts to withstand

20   dismissal.  *See Coffey v. Mesa Airlines Inc.*, No. CV 18-3688-DMG (PLAx), 2019

21   WL 4492952, at *3 (C.D. Cal. Apr. 15, 2019), *aff'd*, 812 F. App'x 657 (9th Cir.

22   2020).

23      *1.*      *General Jurisdiction Over American Does Not Exist in*

24   *California*

25      General jurisdiction over American does not exist in California because

26   American is neither incorporated nor headquartered in the state.  The United States

27   Supreme Court has rejected the notion, espoused here by Plaintiffs, that it is

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

0964

4

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

1  enough to do "continuous business" (Compl. ¶ 11) in a district to be subject to

2  general jurisdiction there.  *See Daimler AG v. Bauman*, 571 U.S. 117, 132 (2014)

3  ("[A] corporation's continuous activity of some sorts within a state is not enough

4  to support the demand that the corporation be amenable to suits unrelated to that

5  activity.") (internal quotation marks omitted).  To the contrary, a corporation is

6  subject to general jurisdiction only where its operations are "so substantial and of

7  such a nature as to render the corporation at home in that State."  *Id.* at 139 n.19

8  (internal quotation marks omitted).  A corporation's principal place of business or

9  state of incorporation are the paradigmatic places that a corporation is "at home."

10 *Id.* at 137.[3]  Plaintiffs recognize that neither American's state of incorporation

11 (Delaware) nor its principal place of business (Texas) is located in California,

12 (Compl. ¶ 9), thereby conceding that American is not subject to general

13 jurisdiction here.  Indeed, other courts have already found that American is not at

14 home in California.  *See Agher v. Envoy Air Inc.*, No. CV 18-6753-R, 2018 WL

15 6444888, at *2 (C.D. Cal. Oct. 12, 2018) (finding no general jurisdiction over

16 American despite 16% of American's flights departed or arrived in California and

17 8% of American's workforce were based in California); *Banks v. Am. Airlines*, No.

18 19-cv-04026-JSC, 2019 WL 5579479, at *3 (N.D. Cal. Oct. 29, 2019) (finding no

19 general jurisdiction over American even though American operates one of its hubs

20 in California given that American is neither incorporated nor has its principal place

21 of business in California).  Therefore, because American is not subject to general

22 jurisdiction in California, Plaintiffs must establish that their claims arise out of or

23 relate to American's connections with California in order to survive dismissal.

24

25

26

27

28

---

[3] While the Supreme Court left open the hypothetical possibility that in "an exceptional case" a corporation might be at home in other forums (*Daimler*, 571 U.S. at 139 n.19), no courts have exercised general jurisdiction under that standard.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

0965

5

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

**2.      *Specific Jurisdiction Over The Claims That Mr. Earll, Mr.
Ferrigni, and Ms. Crosson Assert Against American Does Not Exist***

Plaintiffs do not allege any facts that connect the breach of contract claims
by Mr. Earll, Mr. Ferrigni, or Ms. Crosson to American's conduct in California
such that this Court could exercise specific jurisdiction over these claims.  Under
the Ninth Circuit's test for analyzing specific jurisdiction, Plaintiffs must show that
each claim is "one which arises out of or relates to [American's] forum-related
activities" and that American purposefully availed itself of the forum.[4]
*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).
Plaintiffs allege that only Mr. and Mrs. Cleary reside in California, purchased
tickets for travel while at their home in California, and paid to check their bags at
the airport in California.  Compl. ¶¶ 4, 5.  In contrast, Plaintiffs do not allege that
the other three Plaintiffs lived in California, booked tickets for travel while in
California, or traveled to, from, or through California.  Further, Plaintiffs do not
allege that the other three Plaintiffs interacted with any American personnel in
California or otherwise had any contacts with American in California giving rise to
their breach of contract claims.  To the contrary, Plaintiffs assert that these three
Plaintiffs purchased their tickets and paid to check baggage in Minnesota (Mr.
Earll), Missouri (Mr. Ferrigni)[5] and Texas (Ms. Crosson).  Thus, aside from Mr.
and Mrs. Cleary's breach of contract claims, the other three Plaintiffs' claims do
not arise of out American's activities in California.

The Supreme Court has held that a court cannot exercise specific jurisdiction
over an entire case where specific jurisdiction only exists for the claims of some

---

[4] Any purposeful availment by American of the California forum is not relevant to the Court's specific jurisdiction analysis for the claims of Mr. Earll, Mr. Ferrigni, and Ms. Crosson because  any such availment was not connected to the transactions for these Plaintiffs.

[5] Mr. Ferrigni also claims that he paid to check baggage in Florida and St. Kitts.  Compl. ¶ 8.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

0966

6

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

1    Plaintiffs.  *Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1781 (2017).

2    In *Bristol-Myers Squibb*, California residents and nonresidents filed suit in

3    California alleging that they were injured by defendant's drug Plavix.  *Id.* at 1778.

4    Unlike the resident plaintiffs, the nonresidents did not allege that they were

5    prescribed Plavix, purchased Plavix, ingested Plavix, or injured by Plavix in

6    California.  *Id.* at 1781.  Without demonstrating a "connection between the forum

7    and the specific claims at issue" the nonresidents could not rely on the injuries of

8    the resident plaintiffs to confer specific jurisdiction over their claims.  *Id.*  The

9    Supreme Court explained that "[t]he mere fact that *other* plaintiffs . . . allegedly

10   sustained the same injuries as did the nonresidents—does not allow the State to

11   assert specific jurisdiction over the nonresidents' claims."  *Id.*

12          Similarly, Plaintiffs here attempt to establish specific jurisdiction over the

13   claims of Mr. Earll, Mr. Ferrigni, and Ms. Crosson by piggybacking off of the

14   connection that Mr. and Mrs. Cleary's claims have with California.  That notion

15   must be rejected under *Bristol-Myers Squibb* because there is no independent

16   connection between those three Plaintiffs' claims and this forum.  Presented with a

17   similar scenario, the court in *Bandurin v. Aeroflot Russian Airlines* concluded that

18   it could not assert personal jurisdiction over the breach of contract claims asserted

19   by three of five sets of plaintiffs where those plaintiffs alleged claim-related

20   conduct occurring in four different places—none of which was the forum state.

21   No. 19 CV 255, 2020 WL 362781, at *4–6 (N.D. Ill. Jan. 22, 2020).  The court

22   dismissed those claims given the absence of any connection between the airlines'

23   conduct in the forum state and the underlying claims.  *Id.*  As in *Bandurin*, it is

24   plain from the Complaint that Mr. Earll's, Mr. Ferrigni's, and Ms. Crosson's

25   contacts with American did not occur in California and therefore their breach of

26   contract claims cannot possibly arise out of American's forum-related conduct.

27   Thus, specific jurisdiction over these claims is lacking.

28

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
LOS ANGELES

0967

7

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

1   Because specific jurisdiction over the claims of three Plaintiffs does not exist

2   and there is no general jurisdiction over American in California, this action cannot

3   proceed as pleaded in this Court without dismissal of certain Plaintiffs' claims.

4   **B.    This District Is Not The Proper Venue For The Claims Asserted**

5   **By Three Plaintiffs**

6   Relatedly, Plaintiffs cannot demonstrate that all claims asserted in this action

7   have proper venue in this district where American does not reside here and no

8   events giving rise to Plaintiffs' claims occurred in this district, except for those

9   related to Mr. and Mrs. Cleary's claims.  Just as *Bristol-Myers Squibb* established

10  that a court may not exercise jurisdiction over all plaintiffs' claims when only

11  some are properly before the court, the cases on venue similarly dictate that venue

12  is not proper in one district simply because venue is proper over some of the

13  claims.  *See Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1107 n.5 (C.D.

14  Cal. 2001) (collecting cases); *LaGuardia v. Designer Brands, Inc.*, No. 19CV1568

15  JM (BLM), 2020 WL 2463385, at *3 (S.D. Cal. May 7, 2020); *In re Nissan N.*

16  *Am., Inc. Litig.*, No. 18-cv-07292-HSG, 2019 WL 4601557, at *3 (N.D. Cal. Sept.

17  23, 2019).  The rule in putative class actions is that each named plaintiff must

18  independently establish that venue is proper for his or her claim or else the court

19  has the power to transfer the case elsewhere or dismiss the suit.  *See Abrams Shell*,

20  165 F. Supp. 2d at 1107 n.5.  Pursuant to 28 U.S.C. § 1391(b), venue for Plaintiffs'

21  individual claims in the Central District of California is only proper if each

22  Plaintiff can either show that: (i) American resides in the district or (ii) a

23  substantial part of the events giving rise to their claims occurred in this district.

24  *See* 28 U.S.C. § 1391(b)(1)–(2).  For the reasons discussed below, Mr. Earll, Mr.

25  Ferrigni, and Ms. Crosson cannot show either.

26  Under the first avenue, venue is proper in a district where a corporation

27  resides, which for venue purposes is where it is subject to the court's personal

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

0968

8

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

1  jurisdiction with respect to the relevant action.  28 U.S.C. § 1391(b)(1), (c)(2).

2  Plaintiffs attempt to make this showing by asserting that American "does business"

3  in the district.  Compl. ¶ 12.  But, as discussed, *supra*, in Section III.A, this

4  conclusory allegation is not sufficient to demonstrate that this Court can assert

5  either general jurisdiction over American or specific jurisdiction over American

6  with respect to Mr. Earll's, Mr. Ferrigni's, and Ms. Crosson's claims.  Because

7  American is not subject to the Court's personal jurisdiction for the claims of these

8  Plaintiffs, American does not reside in the Central District of California with

9  respect to all claims asserted in this action, which makes venue under section

10  1391(b)(1) improper.

11       As an alternative avenue, venue is proper in a district if a "substantial part"

12  of the events giving rise to Plaintiffs' claims occur in the district.  28 U.S.C. §

13  1391(b)(2).  Here, too, Plaintiffs' allegations fall short as they rely only on the

14  claim that Mr. and Mrs. Cleary purchased tickets for travel while at their home in

15  Los Angeles and omit any statements about how venue is proper for the claims of

16  the other three Plaintiffs.  Indeed, Plaintiffs cannot establish that a substantial part

17  of the events giving rise to their breach of contract claims occurred in this district

18  given that the events supporting Mr. Earll's, Mr. Ferrigni's, and Ms. Crosson's

19  claims occurred entirely outside of California, as discussed, *supra*, in Section

20  III.A.2.  In *Nissan North America, Inc.*, ten named plaintiffs filed a putative class

21  action in the Northern District of California against Nissan for claims related to

22  defects in the braking systems of their vehicles.  2019 WL 4601557, at *1.  The

23  court found that plaintiffs could not show that a substantial part of the events

24  giving rise to their claims occurred in the district because nine of the ten named

25  plaintiffs did not purchase their vehicles in the district and there was no allegation

26  that Nissan engaged in any advertising in the district that caused the nine plaintiffs

27  to buy a car in their home states.  *Id.* at *6.  The court concluded that venue was

28

LATHAM&WATKINS℠
ATTORNEYS AT LAW
LOS ANGELES

0969

9

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

1   not proper under section 1391(b)(2) and transferred the entire action pursuant to its

2   authority under 28 U.S.C. § 1406(a).  *Id.*  For the same reasons, Plaintiffs cannot

3   demonstrate that venue is proper under section 1391(b)(2) because the events

4   underlying Plaintiffs' claims arise out of American's conduct in Minnesota,

5   Missouri, Florida, Texas, and St. Kitts.

6        Thus, Plaintiffs cannot show that venue in the Central District is proper as to

7   all of Plaintiffs' claims.[6]

8   **C.    Transfer Of This Action To The Northern District Of Texas**

9   **Would Best Serve The Interests of Justice and Convenience**

10       Given that this Court does not have personal jurisdiction over the claims of

11  three Plaintiffs and that venue for those same claims does not properly lie in this

12  district, the Court is faced with two options: either dismiss the offending claims or

13  transfer the action to another district that can properly hear the action as pleaded.

14  American submits that transfer to the Northern District of Texas—where it is

15  headquartered and subject to general jurisdiction—is the only suitable choice.

16  Such transfer is not only dictated under 28 U.S.C. § 1406(a) but also supported by

17  the convenience to the parties and witnesses and the interest of justice and in

18  accord with the majority of Plaintiffs' agreement to a forum selection clause

19  obligating them to bring suit in Tarrant County, Texas (located within the Northern

20  District of Texas).  Therefore, this Court should not hesitate to transfer the action

21  to the Northern District of Texas.

22

23

24  _____

    [6] Because there exists a judicial district in which this action may be brought—namely the
25  Northern District of Texas where American is subject to general jurisdiction—Plaintiffs
    cannot rely on section 1391(b)(3) to establish venue.  *See Atl. Marine Constr. Co. v. U.S.
    Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 56–57 (2013) (explaining that section
26  1391(b)(3) is a "fallback" option that is only available if no venue is proper under section
    1391(b)(1)–(2)); *Nissan N. Am., Inc.*, 2019 WL 4601557, at *6 (finding that section
27  1391(b)(3) did not apply where venue was proper in the Middle District of Tennessee
    where defendant is headquartered).

28

LATHAM&WATKINS℠
ATTORNEYS AT LAW
LOS ANGELES

0970

10

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

1.   ***Transfer Is Warranted Pursuant to 28 U.S.C. § 1406(a)***

Because this action can be brought in the Northern District of Texas, transfer rather than dismissal for improper venue is warranted.  Where, as here, venue for a case does not lie in this district, the Court must dismiss or transfer the case to another district where it could have been brought, if it be in the interest of justice. 28 U.S.C. § 1406(a).  If the proper forum for the suit exists elsewhere, the Ninth Circuit has recognized that transfer serves the interest of justice over dismissal because the dismissal of a case that can be brought elsewhere is "time-consuming" and "justice-defeating."  *Amity Rubberized Pen Co. v. Mkt. Quest Grp. Inc.*, 793 F.3d 991, 996 (9th Cir. 2015); *L.A. Printex Indus., Inc. v. Pretty Girl of Cal., Inc.*, No. CV 08-3238 PA (JWJx), 2008 WL 11343013, at *4 (C.D. Cal. Dec. 15, 2008). Here, the Northern District of Texas is the only other district in which Plaintiffs could have properly filed suit.  Given that American is subject to general jurisdiction in that district, all of Plaintiffs' claims would be proper before that court and venue would be proper in that district.  Thus, rather than dismiss the claims of Mr. Earll, Mr. Ferrigni, and Ms. Crosson and invite those claims to be refiled in Texas, this Court should exercise its power to transfer pursuant to 28 U.S.C. § 1406(a) and efficiently resolve the threshold issues of personal jurisdiction and venue.

2.   ***Transfer Is Warranted Pursuant to 28 U.S.C. § 1404(a)***

Transfer to the Northern District of Texas is also appropriate given that it would best serve the interests of convenience and justice.  Pursuant to 28 U.S.C. § 1404(a), this Court may transfer an action to any other district where it might have been brought, based on "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a).  Courts evaluating a motion to transfer consider multiple factors, including: (i) the plaintiffs' choice of forum; (ii) location of witnesses and documents; (iii) location of the parties; (iv) the court

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

0971

11

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

1   most familiar with the governing law, (v) the local interest in having localized

2   controversies decided at home, and (vi) relative court congestion.  *See Jones v.*

3   *GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).  Consideration of

4   the relevant section 1404(a) factors weigh strongly in favor of transfer.

5                  a.      Plaintiffs' Choice of Forum and Putative Class Action

6   Cut Against Litigating In This Forum

7          "[A] plaintiff's choice of forum is discounted in the convenience analysis

8   where, as here, the plaintiffs do not reside in the chosen forum and seek to

9   maintain a collective or class action."  *Strickland v. Aramark Unif. & Career*

10  *Apparel, LLC*, No. 2:14-cv-09851-CAS-JEMx, 2015 WL 13742905, at *3 (C.D.

11  Cal. May 1, 2015).  Further, "[p]laintiff's choice is given less weight where the

12  chosen forum lacks any significant contact with the activities alleged in the

13  complaint."  *Siefert v. Specialty Rests. Corp.*, No. CV 20-790 PA (DFMx), 2020

14  WL 5077002, at *2 (C.D. Cal. July 6, 2020).  Here, three of the five Plaintiffs do

15  not reside in California.  Further, as discussed, *supra*, in Sections III.A.2 and III.B,

16  the events giving rise to the claims of the majority of Plaintiffs did not occur in and

17  have no connection with California.  Thus, Plaintiffs' decision to file a putative suit

18  in this district should be given little deference.  *See Wasson v. LogMeIn, Inc.*, No.

19  CV 18-7285 PA (GJSx), 2018 WL 6016283, at *3 (C.D. Cal. Nov. 2, 2018)

20  (transferring matter to the District of Massachusetts where a non-resident filed a

21  putative class action in this district and "the locus of operative events" appeared to

22  have occurred in Massachusetts, not California).

23                  b.      Location of the Witnesses and Documents Weighs In

24  Favor Of Transfer

25          Courts have found transfer appropriate where the majority of the evidence

26  and witnesses who are likely to have knowledge about key allegations are located

27  in the transferee district.  *See Siefert*, 2020 WL 5077002, at *3–4 (transferring

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

0972

12

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

1   action to the Western District of New York where defendant contended that most

2   of the witnesses lived in New York); *Visions of Am., LLC v. Bos. Symphony*

3   *Orchestra, Inc.*, No. CV 13-4355 PA (AJWx), 2013 WL 12148278, at *4 (C.D.

4   Cal. Oct. 28, 2013) (granting transfer to District of Massachusetts where

5   employees or former employees whom defendant expected would be called as

6   witnesses were located in Massachusetts and the documents relevant to the case

7   were located in Massachusetts); *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141,

8   1148 (C.D. Cal. 2009) (granting transfer to Southern District of New York where

9   "the majority of potential witnesses are in the New York area" and "well within the

10  jurisdictional reach of the Southern District of New York").  Here, American's

11  principal witnesses who are likely to have relevant information regarding

12  American's systems, databases, and records work at American's headquarters in

13  Texas.  In the same vein, the bulk of the documents likely relating to Plaintiffs'

14  booking and checked bag charges are located in Texas thus making litigation in

15  California both a substantial burden and inefficient.  *See Luna v. Wal-Mart*

16  *Transp., LLC*, No. EDCV 18-331 PSG (KKx), 2018 WL 3569357, at *2–3 (C.D.

17  Cal. July 11, 2018) (granting transfer to the Western District of Arkansas after

18  finding that the convenience of the Central District of California as a forum to

19  plaintiff was outweighed by the inconvenience to defendant, who was

20  headquartered in Arkansas and who would be made to produce "material evidence"

21  located in Arkansas and make available witnesses who reside in Arkansas).  Thus,

22  this factor supports transfer.

23              c.     Location of the Parties Weighs In Favor Of Transfer

24         Any claim of convenience for litigating in California is undercut by the fact

25  that only two of the named Plaintiffs live in the state.  In contrast, the Northern

26  District of Texas is a substantially closer forum than the Central District of

27  California for Mr. Earll (resident of Minnesota), Mr. Ferrigni (resident of

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

0973

13

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

1  Missouri), and Ms. Crosson (resident of Texas).  *See Luna*, 2018 WL 3569357, at

2  *4 (transferring matter to Western District of Arkansas after finding that "the more

3  central location of Arkansas would likely result in less travel for the majority of

4  parties involved").  Any inconvenience stemming from transfer to Mr. and Mrs.

5  Cleary is outweighed by the burden this current forum would impose on the three

6  other Plaintiffs and American.  Given that Plaintiffs are not all located in the same

7  place, the relative convenience of the parties weighs heavily in favor of transfer to

8  the Northern District of Texas where American is headquartered.  Indeed, this

9  district has frequently transferred actions to a forum encompassing a defendant's

10  headquarters in putative class actions.  *See Mina v. Red Robin Int'l, Inc.*, No. CV

11  18-9472 PSG (GJSx), 2020 WL 4037163, at *3 (C.D. Cal. Mar. 3, 2020)

12  ("Defendants' headquarters in Colorado and Plaintiff's putative class action weigh

13  in favor of transfer."); *Smithson v. Jackson Nat'l Life Ins. Co.*, No. CV 17-7485

14  FMO (RAOx), 2018 WL 5099510, at *3 (C.D. Cal. May 29, 2018) (granting

15  transfer to the Western District of Michigan, district of defendant's headquarters,

16  because the Western District of Michigan would "clearly be a more convenient

17  forum for [defendant]" and because plaintiff did not currently reside in the forum

18  where action was brought).

19        Further, any argument that California is a more convenient forum because

20  class counsel is located in California is "of little consequence."  *Wasson*, 2018 WL

21  6016283, at *3.  Plus, Plaintiffs' retention of New York counsel cuts against any

22  convenience arguments in favor of the California forum.

23                  d.      Interests of Justice Weigh In Favor of Transfer

24        Finally, in evaluating whether a motion to transfer would promote the

25  interests of justice, courts consider: (i) the state that is most familiar with the

26  governing law, (ii) the local interest in having localized controversies decided at

27  home, and (iii) relative court congestion.  *Luna*, 2018 WL 3569357, at *2.  Here,

28

LATHAM&WATKINS

ATTORNEYS AT LAW

LOS ANGELES

0974

14

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

1   all of these factors favor transfer to the Northern District of Texas.  First, a Texas

2   court would have more familiarity with the law governing the substance of this

3   dispute.  Specifically, Plaintiffs allege that their contract with American includes

4   "standard terms and conditions" found in the Conditions of Carriage.  Compl. ¶ 15.

5   The Conditions of Carriage state, "Texas law applies to this contract and any

6   dispute from your ticket purchase or travel on American Airlines without regard to

7   conflict of law principles."[7]  This governing law provision weighs in favor of

8   transfer to Texas.  *See Metz*, 674 F. Supp. 2d at 1149 (granting transfer to the

9   Southern District of New York after finding that the insurance policy in dispute

10  was governed by the laws of New York).  Second, any interest that a California

11  court could have in deciding this action is lessened because the majority of

12  Plaintiffs do not reside in California nor have any contacts in the state giving rise

13  to the current action.  These factors, considered with Texas's greater interest in

14  overseeing a case where the defendant is a home company, weighs in favor of

15  transfer.  *See Mina*, 2020 WL 4037163, at *4 ("Colorado has a significant local

16  interest in having a dispute involving a company headquartered in its state decided

17  at home.").  Finally, relative court congestion also weighs in favor of transfer

18  because the Northern District of Texas has 14,659 pending cases as compared to

19  15,164 pending cases in this district.[8]  *See Prime Healthcare Servs., Inc. v. United*

20  *Healthcare Servs., Inc.*, No. ED CV 16-1159 PA (KKx), 2017 WL 2713328, at *2

21  n.1 (C.D. Cal. Jan. 26, 2017) (finding that transfer served the interest of justice

22  where transfer would put action in a district that had fewer pending cases than the

23  Central District of California).

24  _____

25  [7] American Airlines, *Conditions of carriage: Contract details*,
    https://www.aa.com/i18n/customer-service/support/conditions-of-
26  carriage.jsp?anchorEvent=false&from=footer? (last visited Nov. 12, 2020).

27  [8] *See* U.S. Courts, *U.S. District Courts—National Judicial Caseload Profile*,
    https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2020.pd
    f (last visited Nov. 12, 2020).

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

0975

15

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

1    Because all relevant section 1404(a) factors weigh decidedly in favor of

2    transfer to the Northern District of Texas, this Court should exercise its power to

3    transfer the case.[9]

4    ### 3.    *Transfer Is Warranted Pursuant To Plaintiffs' Agreement To*

5    *A Forum Selection Clause*

6    Transfer to the Northern District of Texas under 28 U.S.C. § 1404(a) is

7    further bolstered by a forum selection clause governing the present action that a

8    majority of the Plaintiffs agreed to when they registered for American's loyalty

9    program and again when they logged in to their accounts before booking the travel

10   at issue.  The forum selection clause obligates suits arising out of Plaintiffs' use of

11   American's website to be filed in Tarrant County, Texas.  Courts have routinely

12   enforced forum selection clauses, similar to the one here, that are contained in

13   internet terms and conditions agreements.  The forum selection clause that

14   Plaintiffs seek to avoid here has already been found to be valid and enforceable in

15   two other putative class actions.  Indeed, a valid forum selection should be "given

16   controlling weight in all but the most exceptional cases."  *Atl. Marine Const. Co.*,

17   571 U.S. at 60.

18   a.    American's AAdvantage Loyalty Program

19   The forum selection clause in this case is found in the terms and conditions

20   of American's loyalty program.  American has long offered a free loyalty program

21   to its customers called AAdvantage.  *See* Ghosh Decl. ¶ 3.  Members of

22   American's AAdvantage program are eligible to earn miles by flying on an

23   American flight or engaging with American's partners, including by staying at

24   hotels, renting cars, dining out, or using a co-branded credit card.  *Id.*  AAdvantage

25

26   [9] These same types of considerations—burden on the defendant in litigating in the forum, the forum state's interest in adjudicating the dispute, judicial economy—are also relevant

27   to why the exercise of personal jurisdiction over American would be unreasonable in this forum.

28

Latham&Watkins LLP
ATTORNEYS AT LAW
LOS ANGELES

0976

16

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

1   members may redeem accrued miles for free travel, cabin upgrades, and other

2   benefits.  *Id.*

3       Plaintiffs are all members of the AAdvantage Program.  *Id.* ¶¶ 4–8.  In

4   exchange for the valuable opportunity to participate in the AAdvantage program,

5   individuals agree to the AAdvantage terms and conditions, which include

6   American's site usage policy.  *Id.* ¶¶ 9–12.  In particular, during the online signup

7   process, individuals must click on a box next to the statement: "I agree to the

8   AAdvantage terms/conditions."  *Id.* ¶ 9.  The phrase "terms/conditions" are

9   displayed in blue text with an arrow, indicating a hyperlink to the complete terms

10  and conditions.  *Id.*, Ex. 1.  Individuals cannot join the AAdvantage program

11  online without proceeding through this process.  *Id.* ¶ 9.

12      The AAdvantage terms and conditions state that "[b]y accessing your

13  AAdvantage account on aa.com, you agree to the aa.com site usage policy."  *Id.*

14  ¶ 11, Ex. 2.  This sentence is immediately followed by a blue hyperlink to "Legal

15  information" where customers can view the site usage policy in its entirety.  *Id.*

16  The site usage policy contains a forum selection clause obligating Plaintiffs to

17  bring any lawsuit "related to [] access to, dealings with, or use of the Site" "in the

18  state or federal courts of Tarrant County, Texas."  *Id.* ¶ 12, Ex. 3.[10]

19      Additionally, AAdvantage members who log in to their accounts using

20  certain access points on American's website are presented with the AAdvantage

21  terms and conditions.  *See* Declaration of Jeffrey Jarrell ¶ 3.  Certain AAdvantage

22  log in screens present members with a statement immediately above the log in

23  button stating: "By logging in, you accept the AAdvantage terms and conditions."

24  *Id.*  The words "terms and conditions" are similarly displayed in blue text,

25

26  [10] Given that Plaintiffs allege that American made various promises to customers on its
    website (*see e.g.*, Compl. ¶¶ 14, 18, 23, 34), Plaintiffs' claims necessarily arise from their

27  access to, dealings, with, or use of the Site.  Therefore, by Plaintiffs' own admission,
    their activities fall within the scope of the forum selection clause.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

0977

17

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

1  indicating a hyperlink to the AAdvantage terms and conditions, which contain the

2  forum selection clause discussed above.  *Id.*  Plaintiffs (with the exception of Mr.

3  Cleary) logged in to their AAdvantage accounts in order to book the travel alleged

4  in the Complaint, and given the links these Plaintiffs used to log in to their

5  AAdvantage accounts, it appears that they would have been presented with the

6  hyperlinked AAdvantage terms and conditions containing the forum selection

7  clause.[11]  *Id.* ¶¶ 4–8.

8         b.  Plaintiffs Entered Into A Valid Clickwrap Agreement

9     Clickwrap agreements, like the one agreed to by these Plaintiffs, "have been

10  routinely upheld by circuit and district courts."  *Sandler v. iStockphoto LP*, No.

11  2:15-cv-03659-SVW-JEM, 2016 WL 871626, at *2 (C.D. Cal. Feb. 5, 2016)

12  (quoting *United States v. Drew*, 259 F.R.D. 449, 462 n.22 (C.D. Cal. 2009)).

13  Clickwrap agreements are those that "require[] users to expressly manifest assent

14  to the terms by, for example, clicking an 'I accept' button."  *Crawford v.*

15  *Beachbody, LLC*, No. 14cv1583-GPC(KSC), 2014 WL 6606563, at *3 (S.D. Cal.

16  Nov. 5, 2014).  Forum selection clauses contained in internet terms and conditions

17  agreements are valid when businesses make their terms and conditions accessible

18  to users by use of a hyperlink prior to users' assenting to the terms.  *Sandler*, 2016

19  WL 871626, at *2.

20     Applying this standard here makes clear that the way in which the

21  AAdvantage terms and conditions are displayed during the sign up process is

22  sufficient to bind users, such as these Plaintiffs.  Indeed, the full AAdvantage terms

23  and conditions, containing the site usage policy and forum selection clause, are

24  accessible during the registration process by one click of a hyperlink.  Courts

25  frequently enforce forum selection clauses in this situation.  *See Kabbash v.*

26

27  [11] According to American's records, Mrs. Cleary used her AAdvantage number to book
Mr. Cleary's travel.  Ghosh Decl. ¶ 5.

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

0978

18

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

1    *Jewelry Channel, Inc. USA*, No. CV 15-4007 DMG (MRWx), 2016 WL 9132930,

2    at *1–2 (C.D. Cal. Feb. 22, 2016) (transferring action to the Western District of

3    Texas after enforcing forum selection clause contained in website's hyperlinked

4    terms and conditions where plaintiff selected a box during the account set up

5    process affirming that she read and accepted the terms before registering to create

6    an account); *Moretti v. Hertz Corp.*, No. C 13-02972 JSW, 2014 WL 1410432, at

7    *3 (N.D. Cal. Apr. 11, 2014) (transferring action to the District Court of Delaware

8    after finding the forum selection clause contained in Hotwire.com's Terms of Use

9    valid and enforceable where plaintiffs were required to check the acceptance box

10   next to the hyperlinked terms and conditions before booking a car); *Gamayo v.

11   Match.com LLC*, No. C 11-00762 SBA, 2011 WL 3739542, at *7 (N.D. Cal. Aug.

12   24, 2011) (enforcing forum selection clause and transferring action to the Northern

13   District of Texas where Plaintiffs checked a box agreeing to Match.com's

14   hyperlinked terms of use before subscribing to Match.com's services).

15          Further, by logging in to their AAdvantage accounts to book the travel

16   alleged in the Complaint, Plaintiffs (with the exception of Mr. Cleary) again

17   accepted the AAdvantage terms and conditions containing the forum selection

18   clause.  Courts have similarly held that the way the AAdvantage log in screens

19   present the terms and conditions is sufficient to bind users to a business' terms.

20   *See Crawford*, 2014 WL 6606563, at *3 ("Courts have held that a modified or

21   hybrid clickwrap/browsewrap agreement constitutes a binding contract where the

22   user is provided with an opportunity to review the terms of service in the form of a

23   hyperlink immediately under the 'I Accept' button and clicks that button."); *Leong

24   v. Myspace, Inc.*, No. CV 10-8366 AHM (Ex), 2011 WL 7808208, at *6 (C.D. Cal.

25   Mar. 11, 2011) (finding forum selection clause contained in Myspace's

26   hyperlinked terms of service valid where plaintiff clicked the Sign Up Free button

27   immediately below the statement "By clicking Sign Up Free, you agree to

28

LATHAM&WATKINS™
ATTORNEYS AT LAW
LOS ANGELES

0979

19

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

1   Myspace terms of service and privacy policy").  Nor can Plaintiffs here

2   demonstrate any exceptional circumstances that would make enforcement

3   inappropriate as courts enforce clickwrap agreements "[e]ven if Plaintiffs did not

4   ultimately read the terms."  *Sandler*, 2016 WL 871626, at *2.

5         Notably, two courts considering similar motions to transfer in putative class

6   actions involving American enforced the same forum selection clause at issue here,

7   resulting in the transfer of both matters to the Northern District of Texas.  *See*

8   Motion Hearing Transcript at 23:24–24:3, *Arencibia v. AGA Serv. Co.*, No. 1:19-

9   cv-24300-MGC (S.D. Fla. Aug. 5, 2020) (Cooke, J.), ECF No. 63 (finding that the

10  terms "weren't buried, . . . weren't invisible, . . . [and] . . .weren't hidden" and

11  upholding the forum selection clause as a "classic clickwrap"); Order Reversing

12  Magistrate Judge's Order Denying Transfer at 6, *Zamber v. Am. Airlines, Inc.*, No.

13  1:16-cv-23901-JEM (S.D. Fla. Feb. 11, 2020) (Martinez, J.), ECF No. 474

14  (enforcing the forum selection clause because it is "sufficiently akin to clickwrap

15  or at minimum, a hybrid 'browserwrap' agreement, since it was conspicuous and

16  easily accessible to Plaintiff by clicking through a hyperlink which is only one step

17  removed from the terms and conditions that Defendant acknowledged and

18  accepted").  This Court should enforce the forum selection clause against Plaintiffs

19  on the same grounds and transfer the action to the Northern District of Texas.

20        Even if the Court were to reason that these Plaintiffs were not bound by the

21  forum selection clause for individualized reasons, the forum selection clause would

22  still apply to at least some class members.  Thus, should this Court retain

23  jurisdiction over this matter, this Court would need to contend with this

24  individualized forum selection clause inquiry at a later stage in litigation.

25  Conversely, transfer of this action to the Northern District of Texas resolves any

26  forum selection issues once and for all.

27                              *        *        *

28

LATHAM&WATKINS
ATTORNEYS AT LAW
LOS ANGELES

0980

20

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO TRANSFER AND MOTION TO DISMISS

1    Thus, for the reasons set forth in Section III.C, transfer of this action to the

2  Northern District of Texas is the only appropriate choice for this Court to make in

3  light of case law instructing that transfer, rather than dismal of claims, is preferable

4  in these cases; given that transfer would best serve the interests of convenience and

5  justice; and after considering that transfer would simultaneously resolve personal

6  jurisdiction, venue, and forum selection issues.

7  **IV.    CONCLUSION**

8    For the foregoing reasons, American requests that the Court transfer this

9  action, pursuant to 28 U.S.C. § 1406(a), to the Northern District of Texas.  In the

10 event that the Court does not transfer this action, it should dismiss claims of Mr.

11 Earll, Mr. Ferrigni, and Ms. Crosson pursuant to Rule 12(b)(2) for lack of personal

12 jurisdiction.

13

14 Dated:  November 13, 2020              Respectfully submitted,

15                                        LATHAM & WATKINS LLP

16

17                                        By */s/ Gwyn Williams*_____
                                             Gwyn Williams
18
                                          *Attorney for Defendant*
19                                        *American Airlines, Inc.*

20

21

22

23

24

25

26

27

28

# EXHIBIT 29

Case 4:21-cv-00184-O   Document 158   Filed 03/17/22   Page 188 of 245   PageID 3683

**4:21-cv-00019-P** Katherine M. Cleary et al v. American Airlines

Mark Pittman, presiding

**Date filed:** 01/07/2021

**Date terminated:** 01/22/2021

**Date of last filing:** 01/22/2021

# History

| Doc. No. | Dates | | Description |
|---|---|---|---|
| 1 | *Filed & Entered:* | 09/04/2020 | Complaint |
| 2 | *Filed & Entered:* | 09/08/2020 | Case Assigned/Reassigned |
| 3 | *Filed & Entered:* | 09/08/2020 | Notice (Other) |
| 4 | *Filed & Entered:* | 09/08/2020 | Notice (Other) |
| 5 | *Filed & Entered:* | 09/08/2020 | Notice (Other) |
| 6 | *Filed & Entered:* | 09/08/2020 | Notice (Other) |
| 7 | *Filed & Entered:* | 09/08/2020 | Notice (Other) |
| 8 | *Filed & Entered:* | 09/08/2020 | Summons Issued |
| 9 | *Filed & Entered:*   *Terminated:* | 09/11/2020   10/27/2020 | ICMS - converted docket entry |
| 10 | *Filed & Entered:* | 10/07/2020 | Summons Returned |
| 11 | *Filed & Entered:* | 10/08/2020 | Order Reassigning Case |
| 12 | *Filed & Entered:* | 10/09/2020 | Notice of Attorney Appearance |
| 13 | *Filed & Entered:* | 10/09/2020 | Notice (Other) |
| 14 | *Filed & Entered:* | 10/09/2020 | Cert. Of Interested Persons/Disclosure Statement |
| 15 | *Filed & Entered:* | 10/09/2020 | Cert. Of Interested Persons/Disclosure Statement |
| 16 | *Filed & Entered:*   *Terminated:* | 10/15/2020   10/27/2020 | ICMS - converted docket entry |
| 17 | *Filed & Entered:* | 10/26/2020 | Order Reassigning Case |
| 18 | *Filed & Entered:* | 10/27/2020 | Order |
| 19 | *Filed:*   *Entered:* | 10/27/2020   10/28/2020 | Order Transferring Successive Habeas to Fifth Circuit |
| 20 | *Filed:*   *Entered:* | 10/27/2020   10/29/2020 | Order Transferring Successive Habeas to Fifth Circuit |
| 21 | *Filed & Entered:*   *Terminated:* | 11/04/2020   11/05/2020 | ICMS - converted docket entry |
| 22 | *Filed & Entered:* | 11/05/2020 | Order Transferring Successive Habeas to Fifth Circuit |
| 23 | *Filed & Entered:* | 11/13/2020 | Notice (Other) |
| 24 | *Filed & Entered:*   *Terminated:* | 11/13/2020   01/06/2021 | Motion to Transfer Case Out of District/Division |
| 25 | *Filed & Entered:* | 11/16/2020 | Remark |
| 26 | *Filed & Entered:* | 11/20/2020 | Notice (Other) |
| 27 | *Filed:* | 11/23/2020 | Order |

0983

| | | | |
|---|---|---|---|
| | *Entered:* | 11/24/2020 | |
| [28](#) | *Filed & Entered:* | 12/17/2020 | ⬤ Proposed Scheduling and Discovery Order |
| [29](#) | *Filed & Entered:* | 01/05/2021 | ⬤ Stipulation |
| [30](#) | *Filed:* <br> *Entered:* | 01/06/2021 <br> 01/07/2021 | ⬤ Order on Motion to Transfer Case Out of District/Division |
| [31](#) | *Filed & Entered:* | 01/07/2021 | ⬤ Case Transferred In - District Transfer |
| [32](#) | *Filed & Entered:* | 01/07/2021 | ⬤ Pittman |
| [33](#) | *Filed & Entered:* | 01/11/2021 | ⬤ Notice of Attorney Appearance |
| [34](#) | *Filed & Entered:* <br> *Terminated:* | 01/11/2021 <br> 01/12/2021 | ⬤ Application for Admission Pro Hac Vice |
| 35 | *Filed & Entered:* | 01/12/2021 | ⬤ Order on Application for Admission Pro Hac Vice |
| [36](#) | *Filed & Entered:* <br> *Terminated:* | 01/19/2021 <br> 01/22/2021 | ⬤ Motion To Extend Time |
| [37](#) | *Filed & Entered:* <br> *Terminated:* | 01/21/2021 <br> 01/22/2021 | ⬤ Application for Admission Pro Hac Vice |
| [38](#) | *Filed & Entered:* <br> *Terminated:* | 01/21/2021 <br> 01/22/2021 | ⬤ Application for Admission Pro Hac Vice |
| [39](#) | *Filed & Entered:* | 01/22/2021 | ⬤ Order of Dismissal or Administrative Closure |
| [40](#) | *Filed & Entered:* | 01/22/2021 | ⬤ Judgment |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/17/2022 15:47:32 | | | |
| **PACER Login:** | Davidobrien1:6992258:0 | **Client Code:** | |
| **Description:** | History/Documents | **Search Criteria:** | 4:21-cv-00019-P |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

**4:21-cv-00135-P** Cleary et al v. American Airlines, Inc.
Mark Pittman, presiding
**Date filed:** 02/08/2021
**Date terminated:** 02/09/2021
**Date of last filing:** 02/18/2021

# History

| Doc. No. | Dates | Description |
|---|---|---|
| 1 | *Filed & Entered:* 02/08/2021 | Complaint |
| 2 | *Filed & Entered:* 02/09/2021 | Pittman |
| 3 | *Filed & Entered:* 02/09/2021 | Order of Dismissal or Administrative Closure |
| 4 | *Filed & Entered:* 02/09/2021 | Judgment |
| | *Filed:* 02/11/2021 *Entered:* 02/12/2021 | Cert. Of Interested Persons/Disclosure Statement |
| 5 | *Filed & Entered:* 02/11/2021 *Terminated:* 02/12/2021 | Motion for Miscellaneous Relief |
| 6 | *Filed & Entered:* 02/12/2021 | Order on Motion for Miscellaneous Relief |
| 7 | *Filed & Entered:* 02/18/2021 | Order |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/17/2022 15:49:14 | | | |
| **PACER Login:** | Davidobrien1:6992258:0 | **Client Code:** | |
| **Description:** | History/Documents | **Search Criteria:** | 4:21-cv-00135-P |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

# EXHIBIT 30

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MAX BAZERMAN, individually and on behalf of others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>AMERICAN AIRLINES, INC., a Delaware Corporation,<br><br>      Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**Breach of Contract** |

## CLASS ACTION COMPLAINT

Plaintiff Max Bazerman, on behalf of himself and all other persons similarly situated, by and through his counsel, hereby complains and alleges as follows:

## I.      INTRODUCTION

1.     This case is about American Airlines, Inc.'s ("AA") systematic failure to honor the contracts it enters into with its passengers. AA's passenger contracts include promises that specified passengers are permitted to check a first, second, and/or third bag for no additional charge. These passengers include "elite" members of certain frequent flyer programs and those who purchase certain types of tickets, such as business class or first class. AA contracts also routinely promise certain other passengers that they are permitted to check their first bag for no additional charge. Yet, AA systematically required these passengers to pay to check bags that AA had promised to transport at no additional charge, and thus breached its contract with affected passengers.

2.      AA drafted each contract that it enters into with each of its passengers.  The
contracts include AA's promises to provide air travel for a price, and to provide other benefits,
such as transporting a certain number of the passenger's checked bags for no additional charge.
However, AA failed to honor its checked bag promises in the standardized software system that
AA uses to determine whether passengers must pay for checked bags when they check in at the
airport.  Because this standardized software, AA's Passenger Service System ("PSS"), required
passengers to pay for checked bags that AA promised it would transport for no additional charge,
AA systematically breached its contracts with passengers.

3.      AA is among the largest US-based airlines in terms of passengers transported.[1]  In
2016, AA transported the second greatest number of passengers of any US-based airline, with
approximately 144 million passengers carried.[2]  AA's closest two competitors, Delta Airlines
and Southwest Airlines, transported, respectively, approximately 143 million passengers and 151
million passengers in 2016.  At the same time, AA far outpaced the competition in terms of
revenue collected from checked bag fees.[3]  In 2016, AA collected approximately $1.117 billion
in revenue from checked bag fees, which was over 28% higher than the airline with the second
highest revenue from checked bag fees.[4]  One way AA increases the revenue it receives from
checked bag fees is to systematically charge checked bag fees to certain passengers in breach of
its passenger contracts.

---

[1] "2016 Traffic Data for U.S. Airlines and Foreign Airlines U.S. Flights," Bureau of
Transportation Statistics, Department of Transportation, available at:
https://www.rita.dot.gov/bts/press_releases/bts017_17 (last visited on July 2, 2017).
[2] Id.
[3] "Baggage Fees by Airline 2016," Bureau of Transportation Statistics, Department of
Transportation,
https://www.rita.dot.gov/bts/sites/rita.dot.gov.bts/files/subject_areas/airline_information/baggage
_fees/html/2016.html (last visited on July 2, 2017).
[4] Id.

4.      On or around December 12, 2016, Plaintiff Bazerman purchased tickets online from AA for himself and a companion to travel on a domestic flight.  When Mr. Bazerman purchased these tickets, Mr. Bazerman and AA entered into a contract which included AA's promises that Mr. Bazerman and his traveling companion, ticketed in the same record, could each check their first and second bags for no additional charge.  However, when Mr. Bazerman and his companion arrived at the airport on March 4, 2017 with two bags to check, AA required Mr. Bazerman to pay to check both of the bags.  Mr. Bazerman paid the fee.

5.      Plaintiff Bazerman brings this class action complaint on behalf of himself and all others similarly situated, to enforce the terms in AA's contracts promising passengers checked bags for no additional charge.

## II.      PARTIES

6.      Plaintiff Max Bazerman is a U.S. citizen residing in Massachusetts.  When Mr. Bazerman purchased the tickets on December 12, 2016, he did so from his computer at his office in Boston, Massachusetts.

7.      Defendant American Airlines, Inc. is one of the world's largest airlines, providing air travel to passengers and their luggage both domestically and internationally.  AA is incorporated in Delaware, headquartered in Texas, and does business in all fifty states, including Massachusetts.[5]

## III.      VENUE AND JURISDICTION

8.      The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d) because the amount of controversy exceeds $5,000,000 and the class is comprised of at least some persons who are citizens of a state different from AA.

---

[5] *See* http://aa.fltmaps.com/en (AA's flight map, which shows destinations in all 50 states) (last visited on July 2, 2017).

672961.37
0989

9.      This Court has personal jurisdiction over AA because AA does continuous business in this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff is a resident of this District, Plaintiff purchased his AA ticket in this District, and AA does business in this District.

## IV.     FACTUAL ALLEGATIONS

11.     AA entered into air travel contracts with categories of passengers, whereby AA committed to transport a certain number of checked bags for those passengers at no additional charge.  But AA systematically breached those contracts by nevertheless requiring those passengers to pay AA to check such bags.

12.     AA enters into a contract with each of its passengers when a passenger purchases a ticket for travel on AA ("Contract").  In particular, when a passenger purchases a ticket for an AA flight, AA promises the passenger that AA will provide flights as well as other benefits.  AA's promises are included in the following parts of the Contract, which all become part of the Contract at the time the passenger purchases a ticket for travel on AA.  First, each Contract includes the ticket, which contains terms such as the specific flight or flights, at a specific date and time, and for a specific class of service.  Second, each Contract includes AA's standard terms and conditions, described further in the following paragraph.  Third, terms containing AA promises are also added at the time the ticket is purchased when a passenger makes a purchase on AA's website (AA.COM).  These terms are promises that AA makes to passengers at the point of purchase ("Point of Purchase Terms"), which are typically summarized and memorialized in an AA.COM screen entitled "Your Trip Summary."  Like the other terms listed above, the Point of Purchase Terms form part of the Contract when the passenger purchases a ticket online for travel on AA.

672961.37
0990

13.     AA has two standard terms and conditions, one of which is incorporated into each

Contract.  If a passenger purchases a ticket entirely for travel between points in the United States

(which includes the fifty states, the District of Columbia, the U.S. Virgin Islands, and Puerto

Rico; collectively, "Domestic Flights"), the applicable standard terms and conditions are the

Conditions of Carriage ("Domestic Terms").  If the passenger purchases a flight that is at least

partially international, the standard terms and conditions are the "International General Rules"

("International Terms" or "IGR").

14.     AA's standard terms and conditions state that the Contract includes the ticket and

AA's standard terms and conditions.  The Domestic Terms state, "Your ticket and the following

Conditions of Carriage constitute the contract between you, the passenger, and American

Airlines, Inc."  The International Terms likewise state, under the "AARULE 0005" heading, that

it applies to all international travel and that the ticket includes terms that are part of the Contract.

For example, the International Terms define "Passenger Ticket" as "those portions of the ticket

issued by the carrier that provide for the carriage of the passenger."  In addition, the International

Terms define "Baggage Check" as the "portion[] of the ticket which provide[s] for the carriage

of the passenger's checked baggage," and "Flight Coupon" is defined as the "portion of the

passenger ticket that indicates particular places between which the coupon is good for carriage."

15.     At all airports, AA uses computers, including check-in kiosks for passengers and

computer terminals for agents, to check passenger bags.  On information and belief, these

computers all run, connect to, and/or are controlled by AA's PSS.  The PSS determines whether

and what amount passengers have to pay to check bags for AA flights.  According to AA, it

operates on a "Single Passenger Service System."[6]  On information and belief, AA's PSS is a standardized system that runs consistently throughout AA's operation.

16.     AA's records memorialize AA's promises to passengers, including the number of free bags it promised to each passenger, which passengers paid checked baggage fees, and in what amounts.  For example, Mr. Bazerman received a computer-generated receipt from AA's computer system that states the amount Mr. Bazerman paid for each checked bag.  AA's electronic records show when a passenger holds a frequent flier "elite" status that qualifies the passenger for free checked bag benefits, as set forth in paragraphs 25-29 and 31-33, below.

**A.     All Contracts promise certain passengers that AA will transport a certain number of checked bags for no additional charge.**

17.     The Contract promises specified passengers that AA will transport a certain number of checked bags for no additional charge.  These promises are included in the Domestic Terms, the International Terms, the ticket, and the Point of Purchase terms.

18.     For example, Plaintiff Max Bazerman and AA entered into the Contract on December 12, 2016, when Mr. Bazerman used AA.COM to purchase one-way travel for himself and his wife to travel in coach from Phoenix to Boston.

19.     In the Contract, AA repeatedly promised Mr. Bazerman that AA would transport his first and second checked bags for no extra charge.  Specifically, the e-ticket confirmation email (memorializing the ticket purchase, as described further in paragraph 45) which AA sent to Mr. Bazerman expressly stated that Mr. Bazerman and his companion would each incur a fee of "USD0.00" for their respective first checked bags.

---

[6] *See* History of American Airlines, available at: https://www.aa.com/i18n/customer-service/about-us/history-of-american-airlines.jsp (last visited on July 2, 2017).

20.     Additionally, both at the time of booking and at the time of travel, Mr. Bazerman had "Platinum" frequent flyer status with AA.  The Domestic Terms promise Platinum members that AA will transport their first and second checked bags for no additional charge.  The Domestic Terms also promise Platinum members that these checked benefits extend to companion passengers travelling on the same reservation.  On information and belief, AA.COM presented substantially the same information to Mr. Bazerman before he purchased the ticket.

21.     Mr. Bazerman also had oneworld Sapphire status because, both at the time of booking and at the time of travel, Mr. Bazerman held British Airways "Silver" status, which qualifies him for oneworld Sapphire status.  Matching the promises AA makes as to members with Platinum status, the Domestic Terms promise oneworld Sapphire members that AA will transport their first and second checked bags for no additional charge.  On information and belief, AA.COM also presented substantially the same information to Mr. Bazerman before he purchased the ticket.  As with Mr. Bazerman's Platinum status, AA knew that Mr. Bazerman had oneworld Sapphire status.  Mr. Bazerman specifically demonstrated his qualification for oneworld Sapphire status to AA both by telephone and again in person when he checked in at the airport in Phoenix.

22.     These marketing labels, Platinum and oneworld Sapphire, and others listed herein, refer to passengers who have achieved, and who are listed in AA's records as having achieved, the corresponding "elite" levels in the frequent flyer programs that AA and its partners operate.

      **1.**     **<u>All AA Contracts for domestic travel include terms promising certain passengers that AA will transport a certain number of checked bags for no additional charge.</u>**

23.     The current version of AA's Domestic Terms is available online at https://www.aa.com/i18n/customer-service/support/conditions-of-carriage.jsp.  On information

672961.37
0993

and belief, the current version of the Domestic Terms has been in effect since March 29, 2016.

24.     The Domestic Terms has a section titled, "Checked baggage," where AA provides a link to, and thereby incorporates, the Checked Bag Policy into the Domestic Terms.  The current Checked Baggage Policy is available online at https://www.aa.com/i18n/travel-info/baggage/checked-baggage-policy.jsp.  On information and belief, the current version of the Checked Baggage Policy has been in effect since March 29, 2016.

25.     In the Checked Bag Policy's section titled, "What will it cost?," AA lists promises to transport a certain number of checked bags for certain passengers for no additional charge.

26.     This list includes AA's promise that a first checked bag will be transported for no additional charge for AAdvantage Gold members, oneworld Ruby members, and Alaska Airlines MVP members.

27.     The same list includes AA's promise that a first and second checked bag will be transported for no additional charge for AAdvantage Platinum and Platinum Pro members, oneworld Sapphire members, Alaska Airlines MVP Gold members, and passengers confirmed in business class.

28.     Also included in the Checked Bag Policy's list is AA's promise that a first, second, and third checked bag will be transported for no additional charge for AAdvantage Executive Platinum members, oneworld Emerald members, and Alaska Airlines MVP Gold 75K members.

29.     In the Domestic Terms, AA also promises that when an AAdvantage Gold, Platinum, Platinum Pro, or Executive Platinum member travels, the checked bag benefits extend to other passengers traveling on the same reservation.

**2.      All AA Contracts for international travel include terms promising certain
passengers that AA will transport a certain number of checked bags for no
additional charge.**

30.     The current version of AA's International Terms is available online at

https://www.aa.com/i18n/Tariffs/AA1.html.  On information and belief, this version of the

International Terms has been in effect since approximately September 6, 2016, and the previous

version of the International Terms was in effect from approximately March 29, 2016 through

approximately September 5, 2016.

31.     Like the Domestic Terms, the current International Terms include a list of AA

promises to specified passengers regarding checked bag fees (subsection AA Rule 0116(E),

entitled "Checked Baggage").

32.     This list includes AA's promise that a first and second checked bag may be

transported for no additional charge for AAdvantage Platinum Pro and Platinum members,

oneworld Sapphire members, Alaska Airlines MVP Gold members, passengers in the same

reservation as AAdvantage Platinum and oneworld Sapphire members, and passengers traveling

on first and business class award tickets (including upgrades confirmed prior to check-in).

33.     This list also includes AA's promises that a first, second, and third checked bag

may be transported for no additional charge for AAdvantage Executive Platinum members,

oneworld Emerald members, Alaska Airlines MVP Gold 75K members, and passengers in the

same reservation as an AAdvantage Executive Platinum member or oneworld Emerald members.

34.     For those passengers flying during the time period when AA's previous IGR was

in effect, AA promised additional baggage benefits in certain circumstances.  This version of the

IGR, which was in effect from on or before March 29, 2016 through at least September 5, 2016,

promised that passengers travelling on transatlantic and transpacific flights in business class

could check three bags for no additional charge, not just the two bags specified in the current
IGR.

### 3. AA's promises in the Point of Purchase Terms are part of the Contract between AA and those passengers who purchase tickets from AA.COM.

35.     AA makes additional bag check promises at the Point of Purchase to passengers
buying tickets on AA.COM.  When a passenger purchases a ticket on AA.COM, the passenger
first chooses destination, dates, and class of service.  After the passenger makes these choices
and before the passenger pays, AA displays a "Your Trip Summary" screen where it promises
the passenger that it will provide the specific flights as well as certain benefits, including the
number of bags the passenger can check without additional charge, if the passenger pays AA the
listed fare.

36.     During the periods listed in subsequent paragraphs, the AA Your Trip Summary
screen promised passengers who purchased domestic first class tickets, domestic business class
tickets, and international business class tickets that AA would transport their first, second, and
third checked bag for no additional charge.  These promises at the Point of Purchase became part
of the Contract when the passenger performed by paying the listed fare.

37.     For example, below is a screenshot from the class period showing promises that
AA made at the Point of Purchase to passengers purchasing domestic first class tickets.

672961.37
0996



38.     For tickets purchased from AA.COM from March 29, 2016 through at least December 1, 2016, the AA.COM Your Trip Summary screen promised that all domestic first class tickets included "Up to 3 checked bags" at no additional charge.  The screenshot above (captured on October 16, 2016) demonstrates that promise.

39.     For tickets purchased from AA.COM from March 29, 2016 through at least May 23, 2016, the AA.COM Your Trip Summary screen promised that all domestic business class tickets included "Up to 3 checked bags" at no additional charge.  For example, below is a screenshot from May 2016 showing promises that AA made at the point of purchase to passengers purchasing domestic business class tickets.

11



40.     On information and belief, during a portion of 2016, the AA.COM Your Trip Summary screen promised that all international business class tickets included "Up to 3 checked bags" at no additional charge.

41.     AA repeated its promise of three checked bags at no additional charge when encouraging passengers to purchase a higher class of service, such as business class or first class rather than coach.  It systematically made this promise when using a device known as an "upsell screen," in which a passenger must accept or decline an offer to upgrade service before completing the transaction.  In particular, AA displayed an upsell screen on AA.COM from March 29, 2016 through at least December 1, 2016, stating that it would accept "Up to 3 checked bags" from the passenger at no additional charge if the passenger paid extra to upgrade to the higher class of service.  For example, below is a screenshot from November 2016 showing promises that AA made at the Point of Purchase to induce passengers to purchase domestic first class tickets.

12



42.     If the passenger clicked on AA's upsell display, AA then repeated this same

promise on its Your Trip Summary screen displayed at the Point of Purchase.

43.     Likewise, AA systematically repeated baggage promises in an upsell screen when

passengers checked in on AA.COM ("Check-in Upsell Page").  In the check-in upsell, AA

offered passengers a higher class of service, such as first class or business class, if they paid an

additional fee.  For check-ins occurring on AA.COM from March 29, 2016 through at least

December 21, 2016, the AA.COM Check-in Upsell Page indicated that if the passenger paid an

additional fee for a first class ticket, the passenger would receive specific benefits including "Up

to 3 checked bags" at no additional charge.  On information and belief, a similar Check-in Upsell

Page made similar "upsell" promises to domestic business class and international business class

passengers.

**4.      All AA tickets include terms promising how many checked bags AA will
transport for no additional charge.**

44.     As set forth in paragraphs 12 to 14 above, the terms in a passenger's ticket are

part of the passenger's Contract with AA.

13

45.     When a passenger buys an electronic ticket ("e-ticket") from AA, AA does not provide the passenger with a paper ticket.  Nor does AA provide the passenger with the actual e-ticket, which is a record in an AA computer server.  Instead, AA sends the passenger an e-ticket confirmation email, which reports key terms of the e-ticket.  AA's e-ticket confirmation emails specify the checked bag charges associated with the passenger's itinerary and ticket.  On information and belief, the e-ticket confirmation email's promises regarding checked bag charges match the terms of the actual e-ticket.

46.     AA sends e-ticket confirmation emails that systematically promise certain passengers that they may check their first bag for no additional charge.  For example, Mr. Bazerman's e-ticket confirmation email, which has the same format and types of information as the other e-ticket confirmation emails AA sends to passengers, stated:

> Baggage charges for your itinerary will be governed by American Airlines BAG ALLOWANCE - PHXBOS-No free checked bags/ American Airlines 1STCHECKED BAG FEE-PHXBOS-USD0.00/ American Airlines /UP TO 50 LB/23 KG AND UP TO 62 LINEAR IN/158 LINEAR CM 2NDCHECKED BAG FEE-PHXBOS-USD35.00/ American Airlines /UP TO 50 LB/23 KG AND UP TO 62 LINEAR IN/158 LINEAR CM ADDITIONAL ALLOWANCES AND/OR DISCOUNTS MAY APPLY

47.     The e-ticket confirmation email's checked bag terms specify which airline's bag allowance rules apply.  Since Mr. Bazerman was travelling solely on AA-operated flights, his e-ticket confirmation email stated that his flight is "governed by American Airlines BAG ALLOWANCE."  In contrast, a passenger who purchases a ticket from AA for flights all operated and marketed by one of AA's partner airlines, for example Japan Airlines, will receive an e-ticket confirmation email stating "Baggage charges for your itinerary will be governed by Japan Airlines BAG ALLOWANCE."

14

48.     When AA's Bag Allowance rules apply, these terms reflect AA's promises to the passenger regarding checked bag fees.  For example, Mr. Bazerman's e-ticket confirmation email states, "American Airlines 1STCHECKED BAG FEE-PHXBOS-USD0.00/."  This means that Mr. Bazerman, like all other passengers who received this promise from AA, was entitled to check his first bag for no additional charge.

49.     This promise and the statement preceding it, "PHXBOS-No free checked bags/," do not contradict each other because the plain language of the Contract demonstrates that the Contract intends to promise the passenger a first checked bag for no additional charge.  The promise that the "1ST CHECKED BAG FEE" is "USD0.00" is more specific than "No free checked bags."  In addition, if the statement "No free checked bags," means that a passenger cannot check any bags for no additional charge regardless of other statements in the Contract, then the promise that the first checked bag fee is "USD0.00" has no meaning.  Rather, the statement "No free checked bags" merely refers to AA's general policy that a passenger does not get to check bags for no additional charge unless there is a promise of checked bags for no additional fee elsewhere in the Contract.  The Contract confirms this reading because the e-ticket confirmation email also states, "ADDITIONAL ALLOWANCES AND/OR DISCOUNTS MAY APPLY."  ("Additional Allowances Sentence").  The Additional Allowances Sentence applies both to the e-ticket confirmation email as well as the remainder of the Contract because the ticket is part of the whole contract, which includes the ticket as well as the standard terms and any point of purchase promises.

50.     Alternatively, to the extent that the "No free checked bags" clause might be taken to conflict with the promised price of "USD0.00" for the first checked bag, passengers are still promised a first checked bag for no additional charge because AA drafted all Contracts and all

15

terms in the Contracts regarding checked bag fees.  Any ambiguity in, or contradiction within, the Contract must therefore be construed in favor of the passenger.

51.      AA systematically promises certain passengers that they may check a first bag for "USD0.00."  AA makes that promise to passengers to whom AA does not elsewhere promise to transport a first checked bag for no additional charge under the Domestic Terms, International Terms, or any applicable Point of Purchase promise.  Indeed, AA made this promise to numerous other AA passengers, who reported publicly, such as on Twitter and online discussion forums including flyertalk.com, that they received e-ticket confirmation emails that promised a first checked bag without charge.  In each case, these passengers reported an e-ticket confirmation email that specified that a first bag could be checked at a fee of "USD0.00"—although these passengers booked coach tickets, did not have elite status, and were not otherwise entitled to check bags without charge under other parts of the Contract, such as AA's Checked Baggage Policy.

**B.      AA systematically breached the Contract because it required certain passengers to pay to check certain bags.**

52.      AA breached its baggage fee obligations in the contract in the same way for all affected passengers.  At the time when specified passengers purchased a ticket, AA formed a Contract with each such passenger that included a promise that AA would check the passenger's first, second, and/or third bag at no additional charge.  But when these passengers attempted to check their first, second, and/or third bag, AA systematically required such passengers to pay to check such bags.

1.      **AA breached the Contract terms contained in the ticket promising**
**passengers that they could check certain bags for no additional fee.**

53.     Even when tickets specifically provide that a first bag may be checked at no additional charge, AA systematically required passengers to pay to check their first bag.

54.     For example, Mr. Bazerman received an e-ticket confirmation e-mail from AA that stated "1STCHECKED BAG FEE-PHXBOS-USD0.00." Yet, when Mr. Bazerman and his wife sought to check their bags after arriving at the airport, AA required Mr. Bazerman to pay $25 to check his first bag and $25 to check his wife's first bag.

55.     AA systematically included its promise to check a first bag for no additional charge in the e-ticket confirmation emails of passengers flying in coach who were not otherwise entitled to check a bag, at no additional charge, under other provisions of the Contract. At the same time, AA systematically required passengers, such as Mr. Bazerman, to pay to check their first bag.

56.     Like Mr. Bazerman, an AA passenger reported, on Twitter, having received an AA e-ticket confirmation email for her travel on an AA domestic flight in or around March 2017 that promised that she could check her first bag for no additional charge. Nonetheless, the passenger reported that AA required her to pay $25 when she checked the bag.

57.     In other examples, the following AA passengers on domestic flights reported, on Twitter, being charged to check their first bag despite receiving an e-ticket confirmation email from AA promising each of them that AA would transport their first checked bag for no additional charge on their domestic flight: an AA passenger flying on or around May 3, 2017; an AA passenger flying on or around April 28, 2017; and an AA passenger flying on or around December 2016.

17

**2.      AA breached the Contract's terms promising passengers who are elite frequent flyer members that they could check certain bags for no additional fee.**

58.      As described above, AA promised Executive Platinum members, Platinum members, and partner elite members that they could check their first, second, and/or third bag for no additional charge.

59.      Contrary to its uniform promise to all members of such elite frequent flyer programs, AA required Executive Platinum, Platinum, and members of partner elite frequent flyer programs to pay AA for their first, second, and/or third checked bag.

60.      For example, in the Domestic Terms, AA promised Mr. Bazerman that he could check his first and second bags for no additional charge because Mr. Bazerman had, both at the time of booking and at the time of travel, "Platinum" frequent flyer status and oneworld Sapphire frequent flyer status.  Yet, at the airport, AA required Mr. Bazerman to pay to check his first bag and to pay to check a first bag for his wife, whose travel was booked on Mr. Bazerman's reservation.

61.      Many other passengers reported, on Twitter and other public discussion forums such as flyertalk.com, that AA required them to pay for checked bags that AA promised to transport for no additional charge because they qualified for a particular frequent flyer status. For example, a passenger and oneworld Emerald member reported, on Twitter, as having flown on an AA domestic flight in or around January 2017.  Although AA's Domestic Terms promised oneworld Emerald passengers that they could check their first, second, and third bags for no additional charge, AA required this passenger to pay AA to check his first and second checked bags.

62.    A passenger and Executive Platinum member stated, on flyertalk.com, that he was required to pay to check his third bag on at least four occasions in or around September and October 2016 despite AA's promise in the Domestic Terms that Executive Platinum members could check their first, second, and third bags for no additional charge.

63.    Beginning on March 29, 2016, numerous other Executive Platinum members reported, on Twitter and flyertalk.com, that when they sought to check their bags, AA required them to pay to check their third bag.

**3.    AA breached the Contract's terms promising passengers who travelled on business and first class tickets that they could check certain bags for no additional fee.**

64.    As described above, AA's Contracts with business and first class passengers promised that they could transport up to three bags at no additional charge.  Yet AA systematically breached its promises to these passengers.  AA passengers have reported, on Twitter and flyertalk.com, that AA required them to pay for checked bags that AA promised in the Contract to transport for no fee.

65.    For example, a passenger purchased a first class ticket on AA's website for travel in January 2017.  AA's Your Trip Summary screen promised her that she could check her first, second, and third bags for no additional charge if she paid AA the stated fare.  Nonetheless, AA required her to pay to check her third bag.

66.    Similarly, another passenger stated that he purchased a ticket on AA's website for a first-class seat on a domestic flight in or around November 2016.  AA's Your Trip Summary screen promised him that he could check his first, second, and third bags for no additional charge.  Nonetheless, AA required him to pay to check his third bag.

67.     Another passenger reported having purchased a ticket on AA's website for travel in July 2016 and choosing a first class ticket based on AA's Point of Purchase promise that she could receive "Up to 3 checked bags" if she bought that ticket.  Upon checking in, she was not able to check a third bag for no additional charge because AA refused to accept her third checked bag unless she paid an additional $200.

68.     Another passenger stated that although he upgraded to first class for a portion of his journey on AA, in or around May 2016, he was required to pay to check his second bag despite AA's promises that first class passengers receive their first and second bag for no additional charge.

69.     Many passengers complained directly to AA, including publicly via Twitter. Affected passengers widely reported surprise at being charged for their third checked bag, particularly when they were told prominently at the Point of Purchase that three bags could be checked for no additional charge.  For example, one passenger complained on Twitter: AA "says I get three bags with 1st class upgrade … But I was charged $150. Shame on you!"  Another passenger explained on Twitter: "When I purchased my ticket, the box I clicked stated I was allowed 3 free bags."  Multiple passengers posted screenshots or photographs showing the promises that AA made in the Point of Purchase Terms that AA offered on AA.COM to allow business and first class passengers to check up to three bags for no additional charge.

70.     In addition to the Point of Purchase Terms, other terms in the Contract made promises to passengers who purchased transatlantic and transpacific business class tickets from any source.  From March 29, 2016 through at least September 5, 2016, the International Terms promised that all transatlantic and transpacific business class passengers could check up to three

bags at no additional charge (see paragraph 34, above).  Despite these promises, AA allowed

only two free checked bags and charged these passengers $200 to check a third.

## V.      CLASS ACTION ALLEGATIONS

71.     Plaintiff realleges the foregoing paragraphs of this Complaint as though fully set

forth herein.

72.     Plaintiff brings this action as a class action for monetary relief pursuant to Rule

23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons in the United States (including the fifty states, the District of
> Columbia, the U.S. Virgin Islands, and Puerto Rico) who purchased a
> ticket for air travel on American Airlines ("AA") subject to AA promises
> that their ticket would allow the passenger to check a specified number of
> bags at no additional charge, when in fact AA required the passengers to
> pay to check one or more such bags, during the period since four years
> prior to the filing of the complaint.  ("Class Definition" or "Class")

73.     Excluded from the Class are defendants herein, and any person, firm, trust,

corporation, or other entity related to or affiliated with defendants, including without limitation

persons who are officers, directors, employees, agents, associates or partners of defendants, and

Plaintiff's Counsel and employees of their firms.

74.     This action is properly maintained as a class action.  The Class satisfies all of the

requirements of Rule 23 for maintaining a class action.

75.     **Ascertainability.**  The members of the Class (collectively "class members") are

known to AA.  Their identities are recorded in AA's business records.  AA's business records

also memorialize the statements AA made to class members, including statements in the e-ticket

confirmation emails, Domestic Terms, International Terms, Checked Baggage Policy, and Point

of Purchase terms.  AA's records also track the membership benefits of frequent flyer status of

passengers, and AA's computers receive information about passengers' status from AA's partner

airlines.  For example, Mr. Bazerman's "elite" frequent flyer status with AA partner British

Airways was known to AA.  AA's business records also report the fees that class members paid

for checked baggage throughout the class period.  Moreover, the Class Definition enables every

putative class member to identify himself or herself as a member of the Class.

76.     **Numerosity.**  The Class is so numerous that joinder of all members is

impracticable and the disposition of their claims in a class action will provide substantial benefits

to the parties and the Court.  Plaintiff believes there are thousands of members of the Class, who

are geographically dispersed throughout the United States.

77.     **Existence and predominance of common questions of law or fact.**  There are

questions of law or fact that are common to the Class, which predominate over questions

affecting any individual class member.  AA's PSS is centralized software that AA uses to

manage different parts of its business.  The PSS includes databases containing all of AA's

domestic and international passenger reservations and ticketing information as well as the

baggage fees each passenger paid.  AA's PSS determines whether domestic and international

passengers pay for checked bags when they check in for their flights.  The PSS did not

incorporate AA's contractual promises regarding checked bag fees to international and domestic

passengers.  As a result, AA systematically charged passengers for checked bags in breach of the

Contract promising passengers that AA would transport such checked bags for no additional

charge.  The common nucleus of operative facts also includes AA's standardized terms and

conditions for customer air travel described above, as well as the presentation of the same

promises to passengers through e-ticket confirmation emails and computerized displays on

AA.COM.  Questions of law are similarly common.  The elements of a breach of contract claim

are the same, or materially the same, under the laws of each state in which AA operates and in

which each AA customer in the United States entered into the Contract.  To the extent that a

breach of contract claim varies among states, those variances do not apply because the Airline

Deregulation Act of 1978 preempts any additional state rules or policies that create greater

passenger protections beyond those self-imposed obligations written into the Contract.  Contract

law is therefore uniformly applied to all class members because there are no material differences

between the various states' contract laws.  Accordingly, the Court can apply Massachusetts law,

Texas law, or the contract laws of any of the jurisdictions within the United States with respect to

the claims of all members of the Class.  Common questions of law or fact include without

limitation:

a.   Whether class members performed pursuant to AA's offer when they purchased a

ticket for travel on AA;

b.   Whether the Contract was formed at the time when a class member purchased a

ticket for travel on AA;

c.   Whether the Contract promised that class members could check a specified

quantity of bags at no additional charge;

d.   Whether AA's standardized software system, AA's Passenger Service System,

failed to honor the promises AA made in its Contract with its passengers;

e.   Whether AA breached the Contract when it required class members to pay

checked bag fees beyond those promised in the Contract;

f.   Whether the e-ticket confirmation emails reflect the terms of the corresponding

tickets.

78.   **Typicality.**  The claims of Plaintiff are typical of those of the class members, and

Defendant has no defenses that are unique to Plaintiff.

79.    **Adequacy of representation.**  Plaintiff will fairly and adequately protect the interests of the class and has no interests adverse or antagonistic to the interests of the other members of the class.  Plaintiff has retained competent counsel who are experienced in the prosecution of consumer class action litigation.

80.    **Superiority.**   A class action is superior to other methods for the fair and efficient adjudication of the claims asserted herein.  A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of time and expense that the prosecution of numerous individual actions would entail.  Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of in this action.  Plaintiff does not anticipate any unusual difficulties in the management of this class action.

## CAUSE OF ACTION: BREACH OF CONTRACT (all Class Members)

81.    Plaintiff realleges the foregoing paragraphs of this Complaint as though fully set forth herein.

82.    Plaintiff and all other class members entered into a valid and enforceable written Contract with AA for air transportation.  Each such Contract included a promise by AA that the passenger could check a specified quantity of baggage at no additional charge.  Plaintiff and all members of the Class accepted AA's offer and fully performed their obligations under the Contract.

83.    AA nonetheless refused and failed to provide the free baggage transportation services specified by the Contract.  AA's centralized software system, the PSS, required all members of the Class to pay these baggage fees despite AA's promise to transport their baggage

for no additional charge.  As a result, AA materially breached the Contract with Plaintiff and all other members of the Class.

84.     As a direct result of AA's breach of the Contract, Plaintiff and all other members of the Class suffered actual damages in the form of bag check expenses and incurred reasonable and foreseeable economic harm.

WHEREFORE, Plaintiff requests relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment against Defendant as follows:

A.     Certification of Plaintiff's claim as a class action, pursuant to Fed. R. Civ. P. 23(b)(2) & (3), on behalf of the proposed Class;

B.     Actual damages in an amount not less than the amount AA obtained from Plaintiff and the Class to transport checked bags in breach of the Contract;

C.     An order enjoining Defendant from charging fees beyond those promised in applicable contracts, or from denying benefits provided in applicable contracts;

D.     An award of reasonable attorneys' fees on behalf of Plaintiff and the Class, pursuant to Texas Civil Practices and Remedies Code § 38.001 and other applicable contract law;

E.     An award of costs of suit on behalf of Plaintiff and the Class, pursuant to Texas Civil Practices and Remedies Code § 38.001 and other applicable contract law;

F.     Pre-judgment at the maximum rate of interest permitted by law;

G.     Post-judgment interest at the maximum rate of interest permitted by law; and

H.     Such other and further relief that the court may deem just and proper.

///

672961.37
1011

///

///

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated:  July 13, 2017                    Respectfully submitted,


                                s/ Benjamin Edelman
                                Benjamin Edelman

                                Benjamin Edelman (BBO #663528)
                                LAW OFFICES OF BENJAMIN EDELMAN
                                169 Walnut Street
                                Brookline, MA 02445
                                Tel:     (617) 297-7360


                                Linda M. Dardarian
                                (*pro hac vice* application forthcoming)
                                ldardarian@gbdhlegal.com
                                Byron Goldstein
                                (*pro hac vice* application forthcoming)
                                brgoldstein@gbdhlegal.com
                                Raymond Wendell
                                (*pro hac vice* application forthcoming)
                                rwendell@gbdhlegal.com
                                GOLDSTEIN, BORGEN, DARDARIAN & HO
                                300 Lakeside Drive, Suite 1000
                                Oakland, CA  94612
                                Tel:     (510) 763-9800
                                Fax:     (510) 835-1417

                                Attorneys for Plaintiff and the Proposed Class

# EXHIBIT 31

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MAX BAZERMAN, individually and on behalf of others similarly situated, | Case No.: 1:17-CV-11297-WGY |
| Plaintiff, | |
| vs. | |
| AMERICAN AIRLINES, INC., a Delaware Corporation, | |
| Defendant. | |

## ~~[PROPOSED]~~ ORDER (1) GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (2) GRANTING CERTIFICATION OF A SETTLEMENT CLASS; (3) DIRECTING NOTICE TO THE SETTLEMENT CLASS; AND (4) SETTING DATE FOR FAIRNESS HEARING

WHEREAS, this Order addresses the settlement reached in this action is pending before this Court, *Bazerman, et al. v. American Airlines, Inc.,* No. 1:17-cv-11297-WGY (the "Litigation");

WHEREAS, the Parties having made application, pursuant to Federal Rule of Civil Procedure 23(e), for an order preliminarily approving the settlement of this Litigation, in accordance with a Settlement Agreement and Release dated June 7, 2018 (the "Settlement"), which, together with the Exhibits annexed thereto, sets forth the terms and conditions for a proposed Settlement of the Litigation between the Parties and for dismissal of the Litigation against the Defendant and the Released Parties with prejudice upon the terms and conditions set forth therein; and the Court having read and considered the Settlement and the Exhibits annexed thereto;

WHEREAS, Class Counsel have conducted an extensive investigation into the facts and law relating to the matters alleged in Plaintiff's Complaint, both through pre-suit investigation

1

and discovery in this action, as described in the Declarations of Linda M. Dardarian and Benjamin Edelman filed with Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement;

WHEREAS, the Parties reached the Settlement as a result of extensive arms' length negotiations between the Parties and their counsel, occurring over the course of a number of months. Both before and during these settlement discussions, Defendant provided voluminous documents and other information to Plaintiff. This arms' length exchange provided Plaintiff and his counsel with sufficient information to evaluate the claims and potential defenses, and to meaningfully conduct informed settlement discussions;

WHEREAS, the Settlement confers substantial benefits upon the Settlement Class, particularly in light of the relief that is potentially recoverable or provable at trial, without the costs, uncertainties, delays, and other risks associated with continued litigation, trial, and/or appeal;

WHEREAS, Defendant has vigorously denied and continues to dispute all of the claims and contentions alleged in the Litigation, and denies any and all allegations of wrongdoing, fault, liability or damage of any kind to Plaintiff and the Settlement Class; and

WHEREAS, the Court has carefully reviewed the Settlement, including the exhibits annexed thereto and all related documents filed therewith, as well as the files, records and prior proceedings to date in this matter.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.      Unless otherwise defined, all terms used herein shall have the same meanings as set forth in the Settlement.

2

1015

2.      The Court has subject-matter jurisdiction of the Action pursuant to 28 U.S.C. section 1332, and personal jurisdiction over the Parties before it.  Additionally, venue is proper in this District pursuant to 28 U.S.C. section 1391.

3.      Pending the Fairness Hearing, all proceedings in the Litigation, other than proceedings necessary to carry out or enforce the terms and conditions of the Settlement, are hereby stayed.

### Provisional Class Certification for Settlement Purposes Only

4.      For purposes of settlement only, the Court finds that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the members of the Settlement Class are so numerous that joinder of all Settlement Class Members in the class action is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Class Representative are typical of the claims of the Settlement Class; (d) the Class Representative and his counsel have fairly and adequately represented and protected the interests of Settlement Class Members; (e) the questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual members; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

5.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court preliminarily certifies, for purposes of settlement only, a Settlement Class defined as: All residents of the United States (including the fifty states, the District of Columbia, the U.S. Virgin Islands, and Puerto Rico) who: (a) traveled on American Airlines ("American"); (b) at any time between July 13, 2013 and the Settlement Date (the "Class Period"), and (d) meet one or more of the below criteria, listed in (a)(i), (a)(ii), (a)(iii), (a)(iv), or (b):

3

     a.     Were charged a checked bag fee inconsistently with statements in American's Baggage Policy that passengers may check one or more bags for no additional charge, excluding oversized and overweight checked bags, specialty items, and sports equipment, for any of the following reasons:

          i.     at the time of check-in, the passenger held a First or Business Class ticket for a domestic flight;

          ii.     at the time of check-in, the passenger held a Business Class ticket for an international flight;

          iii.     at the time of check-in, the passenger held AAdvantage elite status with American or an equivalent frequent flyer elite status with a partner airline, or traveled on the same itinerary as a passenger who held such status;

          iv.     at the time of check-in, the passenger was an active U.S. Military member or the dependent of a U.S. Military member travelling on orders;

          v.     at the time of check-in, the passenger was an active U.S. Military member on personal travel.

     b.     Were charged a checked bag fee inconsistently with a Confirmation Email received by the passenger stating eligibility to check a first bag for that ticketed trip at no additional charge.

     c.     Specifically excluded from the Settlement Class are the following Persons: American and its respective parents, subsidiaries, divisions, affiliates, associated entities, business units, predecessors in interest, successors, successors in interest and representatives and

each of their respective immediate family members; Class Counsel; and the judges who have presided over the Litigation and any related cases.

6.      Plaintiff Max Bazerman is appointed as Class Representative of the Settlement Class. The Court preliminarily finds that he is similarly situated to Settlement Class Members and is therefore typical of the Settlement Class, and that he will be an adequate class representative. Linda M. Dardarian, Byron R. Goldstein, Raymond Wendell of Goldstein, Borgen, Dardarian & Ho, and Benjamin Edelman of the Law Offices of Benjamin Edelman, whom the Court finds are experienced and adequate counsel for purposes of these settlement approval proceedings, are appointed as Class Counsel.

<u>Preliminary Settlement Approval</u>

7.      The Court preliminarily approves the Settlement, attached hereto as Exhibit 1, as fair, reasonable and adequate, subject to further consideration by the Court at the Fairness Hearing. The Settlement is sufficiently fair, reasonable and adequate to warrant providing notice to the Settlement Class.

8.      A Fairness Hearing shall be held before this Court on December 17, 2018, at 2 p.m., at the United States District Court for the District of Massachusetts, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Boston, Massachusetts 02210, to determine whether the proposed Settlement of the Litigation on the terms and conditions provided for in the Settlement is fair, reasonable, and adequate to the Settlement Class and should be approved by the Court; to determine whether an Order and Final Judgment as provided in Section XII of the Settlement should be entered; to determine whether the plan for distribution of Refunds should be approved; to determine any amount of attorneys' fees, costs and expenses that should be awarded to Class Counsel and Plaintiff for his service as the Class Representative for the Settlement Class; to hear

any objections by Settlement Class Members to the Settlement or Claims Process, or any award

of attorneys' fees, costs and expenses to Class Counsel, or any service award to the Class

Representative ("Plaintiff's Incentive Award"); and to consider such other matters as the Court

may deem appropriate.  The Fairness Hearing may be postponed, adjourned, or continued by

order of the Court without further notice to the Settlement Class.  After the Fairness Hearing, the

Court may enter a Final Order and Final Judgment in accordance with the Settlement that will

adjudicate the rights of the Settlement Class Members (as defined in the Settlement) with respect

to the claims being settled.

9.      Pursuant to Rule 23(c) of the Federal Rules of Civil Procedure, the Court appoints

for settlement purposes only the Angeion Group ("Settlement Administrator") to supervise and

administer the notice procedure as well as the processing of claims as more fully set forth in the

Settlement.

Class Notice

10.     The Settlement Class Notice Program set forth in the Settlement complies with

Rule 23(c)(2) of the Federal Rules of Civil Procedure as it: (i) is the best practicable notice under

the circumstances; and (ii) is reasonably calculated, under the circumstances, to apprise the

Settlement Class of the pendency of the Litigation, the terms of the Settlement, and of their right

to object to or to exclude themselves from the proposed Settlement.  The Settlement Class Notice

Program set forth in the Settlement also complies with Rule 23(e) as it; (i) is reasonably

calculated, under the circumstances, to apprise the Settlement Class of the pendency of the

Litigation, the terms of the Settlement, and their rights under the Settlement, including but not

limited to, their right to object to or exclude themselves from the Settlement and other rights

under the Settlement; (ii) is reasonable and constitutes due, adequate and sufficient notice to all

members of the Settlement Class entitled to receive notice; and (iii) meets all requirements of applicable law, including but not limited to, Fed. R. Civ. P. 23(c) and (e) and the Due Process Clause(s) of the United States Constitution.

11.     The proposed Class Notice (Exhibit B to the Settlement) and proposed Summary of Class Notice (Exhibit C to the Settlement) are approved.  The proposed Class Notice: (i) describes the essential terms of the Settlement; (ii) discloses any special benefits or incentives to the class representative; (iii) provides sufficient information regarding Class Counsel's request for an Attorneys' Fees, Expenses and Costs Award; (iv) indicates the time and place of the hearing to consider final approval of the Settlement, and the method for objection to and/or opting out of the Settlement; (v) explains the procedures for claiming, allocating and distributing the Refund Total; and (vi) prominently displays the contact information of Class Counsel and the procedure for making inquiries.

12.     The Claim Form (Exhibit A to the Settlement) is approved.  Settlement Class Members must either: (a) submit a Claim Form via the Settlement Website no later than ninety (90) Days from the date that Notice is initially issued to the Settlement Class; or (b) mail a Claim Form to the Settlement Administrator that is postmarked no later than no later than ninety (90) Days from the date that Notice is initially issued to the Settlement Class.  The Court finds that this is due, adequate, and sufficient time for Settlement Class Members to file Claim Forms.

13.     No later than thirty (30) calendar days after the date of this Order, the Settlement Administrator will commence providing notice to the Settlement Class ("Class Notice") pursuant to Section VIII. Paragraph G of the Settlement ("Initial Mailing").  The Settlement Administrator shall provide reminder notices to the Settlement Class as set forth in the Settlement, to be completed no later than seventy (70) calendar days after commencing the Initial Mailing.

1020

14.     Members of the Settlement Class will have until ninety (90) days from the Initial Mailing date to submit their Claim Forms ("Claims Deadline"), which is due, adequate and sufficient time.

15.     The Settlement Administrator is to establish a post office box and email address in the name of the Settlement Administrator to be used for receiving requests for exclusion and any other communications from members of the Settlement Class.  Only the Settlement Administrator, Class Counsel, American's Counsel, the Court, the Clerk of the Court and their designated agents shall have access to this post office box.

16.     No less than seven (7) days prior to the Fairness Hearing, the Settlement Administrator shall file with this Court proof of compliance with the Settlement Class Notice Program.

<u>Objections and Appearances</u>

17.     Any Settlement Class Member who wishes to object to the fairness, reasonableness or adequacy of the Settlement must file with the Court and serve on Class Counsel and American's Counsel a written statement of objection by no later than December 3, 2018 ("Objection Date").  Any written objection must contain all of the following information:

a.      The name, address, telephone number, and email address (if any) of the Person objecting and, if represented by counsel, of his/her counsel;

b.      A sworn statement that he or she is a member of the Settlement Class and during the Class Period purchased a ticket for air travel on American and was charged At-Issue Baggage Fees;

c.      A statement of all objections to the Settlement; and

8

d.      A statement of whether he or she intends to appear at the Fairness

Hearing, either with or without counsel, and if with counsel, the name of his or her counsel who

will attend.

18.      Any response to an objection shall be filed with the Court no later than seven (7)

calendar days prior to the Fairness Hearing.

19.      Any Settlement Class Member who fails to file and serve a timely written

objection and notice of his or her intent to appear at the Fairness Hearing pursuant to this

Paragraph and as detailed in the Class Notice shall not be permitted to object to the approval of

the Settlement at the Fairness Hearing and shall be foreclosed from seeking any review of the

Settlement or the terms of the Settlement Agreement by appeal or other means.

20.      Any attorney hired by a Settlement Class Member for the purpose of objecting to

the proposed Settlement, the Attorneys' Fees and Costs Award or the Incentive Award and who

intends to make an appearance at the Fairness Hearing, shall provide to the Settlement

Administrator (who shall forward it to Class Counsel and American's Counsel) and file with the

Clerk of the Court a notice of intention to appear no later than the Objection Date.

Exclusion from Class

21.      Any member of the Settlement Class who wishes to exclude himself or herself

from the Settlement Class must complete and send to the Settlement Administrator a request for

exclusion that is post-marked no later than December 3, 2018.  The request for exclusion must be

personally signed by the member of the Settlement Class requesting exclusion, contain a

statement that indicates his or her desire to be excluded from the Settlement Class and contain a

statement that he or she is otherwise a member of the Settlement Class.  A member of the

Settlement Class may opt-out on an individual basis only.  So-called "mass" or "class" opt-outs,

9

whether filed by third parties on behalf of a "mass" or "class" of class members or multiple class members where no personal statement has been signed by each and every individual class members, shall not be allowed.  Any member of the Settlement Class who opts out but also files a Claim Form before the Claim Deadline rescinds his or her opt out.

22.     The Settlement Administrator shall provide the final Opt-Out List to Class Counsel and American's Counsel no later than seven (7) Days after the Opt-Out Date and then file with the Court the Opt-Out List with an affidavit attesting to the completeness and accuracy thereof no later than five (5) Days thereafter or on such other date as the Parties may direct.

23.     Any member of the Settlement Class who does not submit a timely, written request for exclusion from the Settlement Class (i.e., becomes an Opt-Out) will be bound by all proceedings, orders and judgments in the Litigation, even if such Settlement Class Member has previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Release.

24.     Any member of the Settlement Class who properly opts out of the Settlement Class shall not: (i) be bound by any orders or judgments entered in the Litigation or relating to the Settlement; (ii) be entitled to relief under, or be affected by, the Settlement; (iii) gain any rights by virtue of the Settlement; or (iv) be entitled to object to any aspect of the Settlement.

25.     Class Counsel shall file their applications for the Attorneys' Fees, Expenses and Costs Award and Plaintiff's Incentive Award at least fourteen (14) calendar days prior to the Objection Deadline.

26.     All Settlement Class Members are preliminarily enjoined from (i) filing, commencing, prosecuting, intervening in or participating as plaintiff, claimant or class member in any other lawsuit or administrative, regulatory, arbitration or other proceeding in any

jurisdiction based on the Released Claims; (ii) filing, commencing, participating in or

prosecuting a lawsuit or administrative, regulatory, arbitration or other proceeding as a class

action on behalf of any member of the Settlement Class who has not timely excluded himself or

herself (including by seeking to amend a pending complaint to include class allegations or

seeking class certification in a pending action), based on the Released Claims; and (iii)

attempting to effect Opt-Outs of a class of individuals in any lawsuit or administrative,

regulatory, arbitration or other proceeding based on, relating to or arising out of the claims and

causes of action or the facts and circumstances giving rise to the Litigation and/or the Released

Claims.  Notwithstanding the foregoing, this provision, and any other provision of the Settlement

Agreement, does not prevent members of the Settlement Class from participating in any action or

investigation initiated by a state or federal agency.


**IT IS SO ORDERED.**

Dated this _22_ day of _June_____, 2018

_William G. Young_

UNITED STATES ~~DISTRICT~~ JUDGE
DISTRICT OF MASSACHUSETTS

11

# EXHIBIT 32

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MAX BAZERMAN, individually and on
behalf of others similarly situated,

      Plaintiff,

vs.

AMERICAN AIRLINES, INC., a
Delaware Corporation,

      Defendant.

Case No.: 1:17-CV-11297-WGY

## ~~[PROPOSED]~~ FINAL ORDER APPROVING CLASS ACTION SETTLEMENT AND ENTERING FINAL JUDGMENT

      This motion for final approval, having been brought before the Court jointly by the

Parties, the Parties having entered into a settlement agreement with attached exhibits

(collectively, the "Settlement"), signed and filed with this Court on June 7, 2018, to settle

*Bazerman v. American Airlines, Inc.*, Case No. 1:17-cv-11297-WGY (the "Action"); and

      The Court, having entered an Order dated June 22, 2018 (ECF No. 65, the "Preliminary

Approval Order") preliminarily certifying the putative class in this action for settlement purposes

only under Fed. R. Civ. P. 23(a) and (b)(3), ordering individual notice to members of the

Settlement Class, scheduling a Fairness Hearing for December 17, 2018 (later rescheduled to

April 4, 2019) that provides potential members of the Settlement Class with an opportunity either

to exclude themselves from the Settlement Class or to object to the proposed settlement, and

issuing related Orders; and the Court, having held a Fairness Hearing on April 4, 2019 to

determine whether to grant final approval of the proposed settlement and issue related relief; and

      The Court, having considered the papers submitted by the Parties and by all other persons

who timely submitted papers in accordance with the Preliminary Approval Order, and having

1

heard oral presentations by the Parties and all persons who complied with the Preliminary

Approval Order, and based on all of the foregoing, together with this Court's familiarity with the

Action, it is hereby **ORDERED, ADJUDGED, AND DECREED** as follows:

1.      This Final Order Approving Class Action Settlement incorporates and makes a

part hereof: (a) the Settlement, including all exhibits thereto, and definitions included therein,

which was signed and filed with this Court on June 7, 2018; (b) the briefs, affidavits, and other

materials filed in support of the settlement, Service Awards, and Class Counsel's request for an

award of attorneys' fees and reimbursement of expenses and costs; (c) the record at the Fairness

Hearing; (d) the documents listed on the docket sheet or otherwise submitted to the Court; and

(e) all prior proceedings in the Action.  All terms used herein, unless otherwise defined, shall

have the same meanings as set forth in the Settlement.

2.      Because due, adequate, and the best practicable notice has been disseminated and

all Settlement Class Members have been given the opportunity to exclude themselves from or

object to this class action settlement, the Court has personal jurisdiction over all Settlement

Class Members.  The Court has subject-matter jurisdiction over the claims asserted in the

complaint and/or the Action pursuant to 28 U.S.C. §§ 1332 and 1367, including, without

limitation, jurisdiction to approve the proposed settlement and the Settlement, grant final

certification to the Settlement Class, dismiss the Action on the merits and with prejudice, and

issue related orders.  The Court finds that venue is proper in this district pursuant to 28 U.S.C.

§ 1391.

3.      The Class preliminarily certified by this Court is hereby finally certified for

settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3), the Court finding that the

Settlement Class fully satisfies all the applicable requirements for Fed. R. Civ. P. 23 and due

process.  The Settlement Class shall consist of, collectively:

All residents of the United States (including the fifty states, the District of Columbia, the

U.S. Virgin Islands, and Puerto Rico) who:

    a.       traveled on American Airlines ("American"),

    b.       at any time between July 13, 2013 and the Settlement Date (the "Class Period"), and

    c.       meets the criteria of either or both subsections (1) and (2) below:

         (1)    were charged a checked bag fee inconsistently with statements in American's Baggage Policy that passengers may check one or more bags for no additional charge, excluding oversized and overweight checked bags, specialty items, and sports equipment, for any of the following reasons:

             i.    At the time of check-in, the passenger held a First or Business Class ticket for a domestic flight;

             ii.    At the time of check-in, the passenger held a Business Class ticket for an international flight;

             iii.    At the time of check-in, the passenger held AAdvantage elite status with American or an equivalent frequent flyer elite status with a partner airline, or traveled on the same itinerary as a passenger who held such status;

             iv.    At the time of check-in, the passenger was an active U.S. Military member or the dependent of a U.S. Military member travelling on orders;

             v.    At the time of check-in, the passenger was an active U.S. Military member on personal travel.

         (2)    were charged a checked bag fee inconsistently with a Confirmation Email received by the passenger stating eligibility to check a first bag for that ticketed trip at no additional charge.

Specifically excluded from the Settlement Class are the following Persons: (1) American and its

respective parents, subsidiaries, divisions, affiliates, associated entities, business units,

predecessors in interest, successors, successors in interest and representatives and each of their

respective immediate family members; (2) Class Counsel; and (3) the judges who have presided

over the Litigation and any related cases.

4.    The Court finds that only those individuals specifically listed in Exhibit D to the

Declaration of Steven J. Giannotti and filed with the Court, and no other member of the

Settlement Class, have submitted timely and valid Opt-Out requests and are therefore not bound

by this Final Order and Judgment.  Attached hereto as Exhibit A is the list of individuals who

submitted timely and valid Opt-Out requests are therefore neither permitted to share in the

benefits nor bound by this Final Order and Judgment, except for Opt-Outs who subsequently

elected to submit Claim Forms before the Claim Deadline.  All other Settlement Class Members

are bound by the terms and conditions of the Settlement and this Final Order and Judgment.

5.    Plaintiff Max Bazerman has adequately represented the Settlement Class for

purposes of entering into and implementing the Settlement.  Linda M. Dardarian, Byron

Goldstein, and Raymond Wendell of Goldstein, Borgen, Dardarian & Ho; and Benjamin

Edelman of Law Offices of Benjamin Edelman, are experienced and adequate Class Counsel.

Plaintiff and Class Counsel have satisfied the requirements of Fed. R. Civ. P. 23(a)(4) and 23(g)

and are hereby appointed as Class Representatives.

6.    The Court finds that the dissemination of the Class Notice, the establishment of a

website containing settlement-related materials, the establishment of a toll-free telephone

number, and all other notice methods set forth in the Settlement and the Declaration of the

Settlement Administrator, and the notice dissemination methodology implemented pursuant to

the Settlement and this Court's Preliminary Approval Order, as described in the Declaration of

Steven J. Giannotti, which is hereby incorporated herein and made a part hereof:

        a.      constituted the best practicable notice to members of the Settlement Class

under the circumstances of the Action;

        b.      constituted notice that was reasonably calculated, under the

circumstances, to apprise the Settlement Class of the pendency of the Action, of their right to

object to or exclude themselves from the proposed Settlement, of their right to appear at the

Fairness Hearing, and of their right to obtain monetary relief from this Settlement;

        c.      constituted reasonable, due, adequate and sufficient notice to all Persons

entitled to receive notice; and

        d.      constituted notice that met all applicable requirements of the Federal

Rules of Civil Procedure, 28 U.S.C. § 1715, the Due Process Clause of the United States

Constitution, and any other applicable law, as well as complied with the Federal Judicial

Center's illustrative class action notices.

       7.      The Court finds that the Claim Form that was distributed to the Settlement Class

met all applicable requirements of the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, the

Due Process Clause of the United States Constitution, and any other applicable law.

       8.      The terms and provisions of the Settlement have been entered into in good faith

and are hereby fully and finally approved as fair, reasonable, and adequate as to, and in the best

interests of, each of the Parties and the Settlement Class Members, and in full compliance with

all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness

Act of 2005, Pub. L. 109-2, Stat. 4, the United States Constitution (including the Due Process

Clause), and any other applicable law.  The Settlement is approved.  No objections to the

Settlement have been made.  The Parties are hereby directed to implement and consummate the Settlement according to its terms and provisions.  Class Counsel and Defendant shall take all steps necessary and appropriate to provide Settlement Class Members with the benefits to which they are entitled under the terms of the Settlement.

9.      The terms of the Settlement and of this Final Order and Judgment shall be forever binding on Plaintiffs, Defendant, and all Settlement Class Members, as well as their respective present, former, and future administrators, agents, assigns, attorneys, executors, heirs, partners, predecessors-in-interest and successors, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits, or other proceedings maintained by or on behalf of any such persons, to the extent those claims, lawsuits, or other proceedings involve matters that are encompassed by the Release.

10.      The Release, which is set forth in Section XII of the Settlement, is expressly incorporated herein in all respects, including all defined terms used therein, is effective as of the date of this Final Order and Judgment, and forever discharges the Released Parties from any claims or liabilities based on the Released Claims.  Plaintiff and all Settlement Class Members have conclusively compromised, settled, dismissed, and released any and all Released Claims against Defendant and the Released Persons.  Plaintiff and all Settlement Class Members, whether or not they have returned a Claim Form within the time and in the manner provided for, are barred from asserting any Released Claims against Defendant and/or any Released Persons.

11.      All Settlement Class Members and/or their representatives, and all persons acting on their behalf (including but not limited to the Releasing Parties), who have not been timely excluded from the Settlement Class are hereby permanently barred and enjoined from (1) filing, commencing, prosecuting, intervening in or participating (as class members or otherwise) in any

other lawsuit or administrative, regulatory, arbitration or other proceeding in any jurisdiction based on the Released Claims; and (2) organizing Settlement Class Members into a separate class for purposes of pursuing as a purported class action any lawsuit or arbitration or other proceeding (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action) based on the Released Claims, except that Settlement Class Members are not precluded from participating in any investigation or suit initiated by a state or federal agency.  All Settlement Class Members and all persons in active concert or participation with Settlement Class Members, including all persons acting on their behalf (including but not limited to the Releasing Parties), are permanently barred and enjoined from organizing or soliciting the participation of any members of the Settlement Class who did not timely exclude themselves from the Settlement Class into a separate class or group for purposes of pursuing a putative class action, any claim, or lawsuit in any jurisdiction that is covered by the Release.  Pursuant to 28 U.S.C. §§ 1651(a) and 2283, the Court finds that issuance of this permanent injunction is necessary and appropriate in aid of the Court's continuing jurisdiction and authority over the Action.

12.     Nothing in this Final Order and Judgment shall preclude any action to enforce the terms of the Settlement, including those relating to participation in any of the processes detailed in the Settlement.

13.     Nothing in this Final Order and Judgment shall preclude the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of the Settlement and all exhibits thereto as (1) shall be consistent in all material respects with this Final Order and Judgment; and (2) do not limit the rights of the Parties or Settlement Class Members.

14.     Class Counsel are hereby awarded attorneys' fees and reimbursement of their costs and expenses in the amount of at least $2,250,000, which amount is approved as fair and reasonable, pursuant to Fed. R. Civ. P. 23(h) and is in accordance with the terms of the Settlement. The Court finds that the above stated award of attorneys' fees is fair and reasonable in consideration of, among other things, the efforts of Class Counsel and the settlement they achieved for the Settlement Class, and that the amount of costs and expenses is reasonable and was reasonably incurred in the course of the litigation. Class Counsel, in their discretion, shall allocate and distribute this award of attorneys' fees and expenses among Plaintiff's Counsel. Defendant's objections to Class Counsel's request for an award of attorneys' fees and reimbursement of costs and expenses are hereby overruled.

15.     The Court will consider whether to award Class Counsel up to an additional $500,000 in attorneys' fees, costs, and expenses. The Parties have thirty days from the issuance of this Order to submit optional further briefing in support of or opposition to such additional sum.

16.     The Court hereby awards $2,500 to Plaintiff Max Bazerman as a service award in his capacity as a Plaintiff and Class Representative in this Action. The Plaintiff's individual Release, as described in Section XII of the Settlement, is deemed effective and binding on Plaintiff as of the Effective Date.

17.     The preceding three paragraphs of this Final Order cover, without limitation, any and all claims against the Released Parties for attorneys' fees, expenses and costs incurred by Plaintiff and Class Counsel in connection with the Action, the settlement of the Action, the administration of such settlement, and/or the Release, except to the extent otherwise specified in this Final Order and Judgment and the Settlement.

18.     The Court has jurisdiction to enter this Final Order and Judgment.  Without in
any way affecting the finality of this Final Order and Final Judgment, this Court expressly
retains jurisdiction as to all matters relating to the administration, consummation, enforcement,
and interpretation of the Settlement and of this Final Order and Judgment, and for any other
necessary purpose, including, without limitation:

a.     enforcing the terms and conditions of the Settlement and resolving any
disputes, claims, or causes of action that, in whole or in part, are related to or arise out of the
Settlement or this Final Order and Judgment (including, without limitation, whether a person or
entity is or is not a Settlement Class Member and whether claims or causes of action allegedly
related to this case are or are not barred by this Final Order and Judgment; and whether persons
or entities are enjoined from pursuing any Released Claims against Defendant);

b.     entering such additional Orders as may be necessary or appropriate to
protect or effectuate this Final Order and Judgment and the Settlement (including, without
limitation, Orders enjoining persons or entities from pursuing any Released Claims against
Defendant), dismissing all Released Claims on the merits and with prejudice, and permanently
enjoining Settlement Class Members from initiating or pursuing proceedings on the Released
Claims (except as set forth herein), or to ensure the fair and orderly administration of this
settlement; and

c.     entering any other necessary or appropriate Orders to protect and
effectuate this Court's retention of continuing jurisdiction; provided, however, that nothing in
this paragraph is intended to restrict the ability of the Parties to exercise their rights as otherwise
provided in the Settlement.

19.     Neither this Final Order and Judgment nor the Settlement (nor any other

9

document referred to herein, nor any action taken to carry out this Final Order and Judgment) is, may be construed as, or may be used as evidence of, a presumption, concession or an admission of liability or of any misrepresentation or omission in any statement or written document approved or made by American or any Released Persons or of the suitability of these or similar claims to class treatment in active litigation and trial; provided, however, that reference may be made to the Settlement in such proceedings solely as may be necessary to effectuate the Settlement.

20.     The Action is hereby dismissed on the merits and with prejudice as to the Released Claims, without fees or costs to any Party except as otherwise provided in this Order and the Settlement.

**IT IS SO ORDERED.**

Dated this _8TH_ day of _April_ , 2019

_William A. Young_
UNITED STATES DISTRICT JUDGE
DISTRICT OF MASSACHUSETTS

10

# EXHIBIT 33

**1:17-cv-11297-WGY** Bazerman v. American Airlines, Inc
William G. Young, presiding
**Date filed:** 07/13/2017
**Date terminated:** 08/31/2021
**Date of last filing:** 07/01/2020

# History

| Doc. No. | Dates | Description |
|---|---|---|
| 1 | *Filed & Entered:* 07/13/2017 | Complaint |
| 2 | *Filed & Entered:* 07/13/2017 <br> *Terminated:* 07/17/2017 | Motion for Leave to Appear Pro Hac Vice |
| 3 | *Filed & Entered:* 07/13/2017 <br> *Terminated:* 07/17/2017 | Motion for Leave to Appear Pro Hac Vice |
| 4 | *Filed & Entered:* 07/13/2017 <br> *Terminated:* 07/17/2017 | Motion for Leave to Appear Pro Hac Vice |
|  | *Filed & Entered:* 07/14/2017 | Notice of Duplicate Filing Fee and Credit for Refund |
| 5 | *Filed & Entered:* 07/14/2017 | Civil Cover Sheet & Category Sheet |
| 6 | *Filed & Entered:* 07/14/2017 | Notice of Case Assignment to a Magistrate Judge |
| 7 | *Filed & Entered:* 07/14/2017 | Summons Issued |
| 8 | *Filed & Entered:* 07/17/2017 | Notice of Hearing |
| 9 | *Filed & Entered:* 07/17/2017 | Order on Motion for Leave to Appear |
| 10 | *Filed & Entered:* 07/17/2017 | Order on Motion for Leave to Appear |
| 11 | *Filed & Entered:* 07/17/2017 | Order on Motion for Leave to Appear |
| 12 | *Filed & Entered:* 07/18/2017 | Notice of Appearance |
| 13 | *Filed & Entered:* 07/19/2017 <br> *Terminated:* 07/21/2017 | Motion to Continue |
| 14 | *Filed & Entered:* 07/21/2017 | Order on Motion to Continue |
| 15 | *Filed & Entered:* 07/25/2017 | Notice of Appearance |
| 16 | *Filed & Entered:* 07/25/2017 | Notice of Appearance |
| 17 | *Filed & Entered:* 07/25/2017 | Notice of Appearance |
| 18 | *Filed & Entered:* 08/07/2017 | Summons Returned Executed |
| 19 | *Filed & Entered:* 08/17/2017 | Notice of Appearance |
| 20 | *Filed & Entered:* 08/17/2017 <br> *Terminated:* 08/18/2017 | Motion for Extension of Time to File Answer |
|  | *Filed & Entered:* 08/18/2017 | Order on Motion for Extension of Time to Answer |
| 21 | *Filed & Entered:* 08/18/2017 | Notice of Appearance |
| 22 | *Filed & Entered:* 08/18/2017 | Corporate Disclosure Statement |
| 23 | *Filed & Entered:* 08/18/2017 | Certificate of Service pursuant to LR 5.2 |
| 24 | *Filed & Entered:* 09/01/2017 | Refusal to Consent to Proceed Before a US Magistrate Judge |

| 25 | *Filed & Entered:* 09/08/2017 | Notice of Case Assignment |
|----|-------------------------------|---------------------------|
| 26 | *Filed & Entered:* 09/25/2017 | Answer to Complaint |
| 27 | *Filed & Entered:* 09/26/2017 | Notice Cancelling Hearing |
| 28 | *Filed & Entered:* 09/26/2017 | Notice of Scheduling Conference |
| 29 | *Filed & Entered:* 10/06/2017 | Joint submission |
| 30 | *Filed & Entered:* 10/10/2017 | Order |
| 31 | *Filed & Entered:* 10/10/2017 | Joint statement of counsel |
| 32 | *Filed & Entered:* 10/11/2017 | Order |
| 33 | *Filed:* 10/16/2017 *Entered:* 10/24/2017 | Scheduling Conference |
| 34 | *Filed & Entered:* 10/24/2017 | Order Referring Case to ADR |
| 35 | *Filed & Entered:* 10/27/2017 | Notice of assignment to ADR Provider |
| 36 | *Filed & Entered:* 10/27/2017 | Notice of Hearing |
| 37 | *Filed & Entered:* 12/29/2017 *Terminated:* 01/02/2018 | Motion to Modify |
| 38 | *Filed & Entered:* 12/29/2017 | Affidavit in Support of Motion |
| 39 | *Filed & Entered:* 12/29/2017 | Affidavit in Support of Motion |
| 40 | *Filed:* 01/02/2018 *Entered:* 01/05/2018 | Order on Motion for Modification |
| 41 | *Filed:* 01/02/2018 *Entered:* 01/05/2018 | Scheduling Order |
| 42 | *Filed & Entered:* 01/09/2018 | Notice Cancelling Hearing |
| 43 | *Filed & Entered:* 01/10/2018 | Notice of Hearing |
| 44 | *Filed & Entered:* 01/10/2018 *Terminated:* 01/11/2018 | Motion for Leave to Appear Pro Hac Vice |
| 45 | *Filed & Entered:* 01/11/2018 | Order on Motion for Leave to Appear |
| 46 | *Filed & Entered:* 01/17/2018 | Notice of Appearance |
| 47 | *Filed & Entered:* 02/12/2018 | Telephone Conference |
| 49 | *Filed & Entered:* 02/20/2018 | Report of Alternative Dispute Resolution Provider |
| 50 | *Filed & Entered:* 05/07/2018 *Terminated:* 05/08/2018 | Motion to Stay |
| 51 | *Filed & Entered:* 05/08/2018 | Order on Motion to Stay |
| 52 | *Filed:* 05/15/2018 *Entered:* 05/16/2018 | Letter/request (non-motion) |
| 53 | *Filed & Entered:* 05/16/2018 | Order |
| 54 | *Filed & Entered:* 05/29/2018 *Terminated:* 05/30/2018 | Motion to Continue |
| 55 | *Filed & Entered:* 05/30/2018 | Order on Motion to Continue |
| 56 | *Filed & Entered:* 06/07/2018 *Terminated:* 06/21/2018 | Motion for Miscellaneous Relief |
| 57 | *Filed & Entered:* 06/07/2018 | Affidavit in Support of Motion |
| 58 | *Filed & Entered:* 06/07/2018 | Affidavit in Support of Motion |
| 59 | *Filed & Entered:* 06/07/2018 | Affidavit in Support of Motion |

| | | | |
|---|---|---|---|
| 60 | *Filed & Entered:* | 06/07/2018 | Affidavit in Support of Motion |
| 61 | *Filed & Entered:* | 06/07/2018 | Proposed Document(s) submitted |
| 62 | *Filed & Entered:* | 06/15/2018 | Notice of Hearing |
| 63 | *Filed & Entered:* | 06/19/2018 | Joint statement of counsel |
| 64 | *Filed:*<br>*Entered:* | 06/21/2018<br>06/25/2018 | Order on Motion for Miscellaneous Relief |
| 65 | *Filed:*<br>*Entered:* | 06/22/2018<br>06/25/2018 | Order |
| 66 | *Filed & Entered:*<br>*Terminated:* | 10/12/2018<br>10/16/2018 | Motion to Expedite |
| 67 | *Filed & Entered:*<br>*Terminated:* | 10/12/2018<br>10/23/2018 | Motion to Continue |
| 68 | *Filed & Entered:* | 10/16/2018 | Order on Motion to Expedite |
| 69 | *Filed & Entered:* | 10/16/2018 | Memorandum in Opposition to Motion |
| 70 | *Filed & Entered:* | 10/16/2018 | Affidavit in Opposition to Motion |
| 71 | *Filed & Entered:*<br>*Terminated:* | 10/17/2018<br>10/17/2018 | Motion for Leave to File |
| 72 | *Filed & Entered:* | 10/17/2018 | Order on Motion for Leave to File |
| 73 | *Filed & Entered:* | 10/17/2018 | Reply to Response to Motion |
| 74 | *Filed & Entered:* | 10/23/2018 | Order on Motion to Continue |
| 75 | *Filed & Entered:*<br>*Terminated:* | 01/09/2019<br>01/11/2019 | Motion for Extension of Time |
| 76 | *Filed & Entered:* | 01/11/2019 | Order on Motion for Extension of Time |
| 77 | *Filed & Entered:*<br>*Terminated:* | 01/18/2019<br>08/31/2021 | Motion for Attorney Fees |
| 78 | *Filed & Entered:* | 01/18/2019 | Declaration |
| 79 | *Filed & Entered:* | 01/18/2019 | Declaration |
| 80 | *Filed & Entered:*<br>*Terminated:* | 01/18/2019<br>07/01/2020 | Motion for Attorney Fees |
| 81 | *Filed & Entered:* | 01/18/2019 | Errata |
| 82 | *Filed & Entered:* | 01/22/2019 | Affidavit in Support of Motion |
| 83 | *Filed & Entered:* | 02/01/2019 | Opposition to Motion |
| 84 | *Filed & Entered:*<br>*Terminated:* | 02/11/2019<br>02/12/2019 | Motion for Leave to File |
| 85 | *Filed & Entered:* | 02/11/2019 | Affidavit in Support |
| 86 | *Filed & Entered:* | 02/11/2019 | Appendix/Exhibit |
| 87 | *Filed & Entered:* | 02/12/2019 | Order on Motion for Leave to File |
| 88 | *Filed & Entered:*<br>*Terminated:* | 02/12/2019<br>02/12/2019 | Motion for Attorney Fees |
| 89 | *Filed & Entered:* | 02/12/2019 | Affidavit in Support |
| 90 | *Filed & Entered:* | 02/12/2019 | Appendix/Exhibit |
| 91 | *Filed & Entered:* | 02/12/2019 | Errata |
| 92 | *Filed & Entered:* | 02/26/2019 | Motion for Extension of Time |

| 93 | *Filed & Entered:* 02/27/2019 | Order on Motion for Extension of Time |
|---|---|---|
| 94 | *Filed & Entered:* 03/28/2019<br>*Terminated:* 04/04/2019 | Motion for Settlement |
| 95 | *Filed & Entered:* 03/28/2019 | Affidavit in Support |
| 96 | *Filed & Entered:* 03/28/2019 | Affidavit |
| 97 | *Filed & Entered:* 03/28/2019 | Affidavit in Support |
| 98 | *Filed & Entered:* 04/03/2019 | Notice of Appearance |
| 103 | *Filed:* 04/04/2019<br>*Entered:* 04/17/2019 | Order on Motion for Settlement |
| 104 | *Filed:* 04/08/2019<br>*Entered:* 04/17/2019 | Order |
| 99 | *Filed & Entered:* 04/09/2019 | Transcript |
| 100 | *Filed & Entered:* 04/09/2019 | Notice of Filing of Official Transcript |
| 101 | *Filed & Entered:* 04/17/2019 | Transcript |
| 102 | *Filed & Entered:* 04/17/2019 | Notice of Filing of Official Transcript |
| 105 | *Filed & Entered:* 05/08/2019 | Brief |
| 106 | *Filed & Entered:* 05/17/2019 | Memorandum in Opposition to Motion |
| 107 | *Filed & Entered:* 07/01/2020 | Order on Motion for Attorney Fees |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/16/2022 12:07:09 | | |
| **PACER Login:** | Davidobrien1 | **Client Code:** | |
| **Description:** | History/Documents | **Search Criteria:** | 1:17-cv-11297-WGY |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |