IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| WILLIAM CLEARY, et al., § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 4:21-cv-00184-O |
| § | |
| AMERICAN AIRLINES, INC., § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Defendant's Motion for Partial Summary Judgment (ECF Nos. 133–35), filed January 27, 2022; Plaintiffs' Response (ECF Nos. 157–161), filed March 17; Defendant's Reply (ECF No. 163), filed March 31; and Plaintiffs' Sur-Reply (ECF No. 171), filed April 14.

On May 4, 2022, Plaintiffs filed a Motion for Spoliation Sanctions. ECF Nos. 181. American responded on May 9. ECF Nos. 182–84. And on May 11, Plaintiffs replied. ECF Nos. 185, 186. Having considered the Motion for Spoliation, briefing, and applicable law, the Court finds the Motion should be, and is, granted for the purposes of deciding the Motion for Partial Summary Judgment. And having considered the Motion for Partial Summary Judgment, briefing, and applicable law, and for the reasons that follow, the Court **GRANTS in part** the motion.

### I.     BACKGROUND

#### A.     Overview

This is a putative class action against American Airlines for allegedly charging customers excessive baggage fees in breach of the parties' contracts. The parties' contracts are governed by American's Conditions of Carriage, which incorporates by reference American's Checked Bag

1

policy, along with various other policies and documents.[1] Typically, passengers are required to pay baggage fees, but in certain circumstances, American offers customers one or more free checked bags when they travel.[2]

### B. Class Representative Filippo Ferrigni

In 2014, Class Representative Filippo Ferrigni was onboard an American international flight from Jamaica to the United States when an oral solicitation invited him to apply for an American-partner credit card, which he understood would allow him to check a bag at no additional charge on each of his future flights with American.[3] A flight attendant gave Ferrigni a partner credit card application,[4] and Ferrigni later applied online.[5]

On November 12, 2018, Ferrigni purchased roundtrip American tickets online for himself and his wife from St. Louis to St. Kitts.[6] At that time, he held a qualifying partner credit card, which he used to purchase the tickets.[7] When Ferrigni arrived at the St. Louis airport on April 2, 2019, the American check-in agent told him his credit card only provided a free checked bag for him and his travel companion on domestic flights; therefore, the flight to St. Kitts was excluded.[8] Ferrigni paid the baggage fee.[9] On April 9, 2019, Ferrigni and his wife arrived at the St. Kitts airport to begin their journey home. Again, American required Ferringi to pay to check both his and his wife's bags.[10] After an overnight connection in Miami, Ferrigni and his wife arrived at the

---

[1] *See* American's App. 10–28, ECF No. 135.
[2] *See id.* at 31–32.
[3] *See* Pls.' App. 37–38, ECF No. 37-1.
[4] *Id.* at 38.
[5] *See* Pls.' App. 3, ECF No. 37-2.
[6] Pls.' App. 2–3, ECF No. 37-4.
[7] Pls.' App. 18, ECF No. 37-2.
[8] *Id.* at 44.
[9] Pls.' App. 6, ECF No. 37-4.
[10] *Id.* at 10.

Miami airport on April 10, 2019 for the flight from Miami to St. Louis. Once again, American required Ferrigni to pay to check both his and his wife's bags.[11]

### C.    Class Representative William Cleary

On February 6, 2017, William Cleary purchased roundtrip American tickets online for travel from Los Angeles, California, to Dallas, Texas.[12] Under the Checked Bag Policy, Cleary was not entitled to a free checked bag, but the e-ticket confirmation email stated Cleary could check his first bag for no additional charge.[13] However, when Cleary arrived at the airport on March 21, 2017, with a bag to check, American required him to pay to check his bag, and likewise required payment upon his return three days later.[14] Cleary paid the fees.[15]

### D.    Procedural History

Plaintiffs originally filed this punitive class action against American on September 4, 2020, in the Central District of California.[16] American moved to transfer the case to this district, and Plaintiffs consented.[17] The transferred case was assigned to Judge Pittman, who dismissed the action without prejudice for failure to comply with the requirement to file a certificate of interested persons.[18] Plaintiffs refiled on February 24, 2021, and the case is now before this Court.

The putative class representatives, William Cleary and Filippo Ferrigni, asserted that American promised, but failed to provide, free checked bags in at least six situations: (i) Customers with specific email confirmations, (ii) American-partner credit cards, (iii) American Gold or Platinum members, (iv) Business or First-Class ticket holders, (v) Customers with premium

---

[11] *Id.* at 6.
[12] American's App. 90, ECF No. 135-2.
[13] *Id.* at 90.
[14] Pls.' Mot. to Certify Class 9, ECF No. 33.
[15] *Id.*
[16] Pls.' Summ. J. App. 132–53, ECF No. 160-2.
[17] *Id.* at 155–81.
[18] *Id.* at 183–85.

benefits, and (vi) First Class, Business Class, Executive Platinum, and oneworld Emerald Members who check "overweight" bags.[19] On September 2, 2021, the Court certified two classes of Plaintiffs.[20] They consist of: (i) qualified American partner credit card holders who were promised free checked baggage and (ii) qualified American ticket holders who received email confirmation promising them free checked baggage.[21]

American filed this Motion for Partial Summary Judgment, seeking to narrow the scope of this class action. The parties briefed the issues, and they are now ripe for consideration.

## II.　　LEGAL STANDARD

Summary judgment is appropriate only where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, 'which are designed to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* The movant must inform the court of the basis for its motion and identify the portions of the record that reveal there are no genuine disputes of material fact. *Celotex*, 477 U.S. at 323.

The court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh

---

[19] Pls.' Mot. to Certify Class 8, ECF No. 33.
[20] *See* Order, ECF No. 66.
[21] *Id.* at 5.

the evidence." *Id.* And if there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250. "[Y]et the nonmovant may not rely on mere allegations in the pleadings; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002) (cleaned up). "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Id.*

### III. ANALYSIS

American seeks summary judgment as to: (i) all Plaintiffs whose claims arose before February 24, 2017, arguing these claims are barred by the statute of limitations; (ii) Credit Card Class members who were traveling on international itineraries, arguing the contract only entitles them to free bags on domestic flights; and (iii) Email Confirmation Class members, arguing the email was sent after the contract was formed and did not modify the terms of the contract. American further requests the Court dismiss without prejudice the claims of: (i) passengers who agreed to class waivers, arguing the waivers prohibit them from being members of a class action; and (ii) non-citizen passengers, arguing foreign courts may not recognize the class action judgment of this Court as preclusive. The Court turns to each below.

#### A. Statute of Limitations

American argues many Plaintiffs' claims are barred by the statute of limitations.[22] Texas law imposes a four-year statute of limitations to breach of contract claims. *See* Tex. Bus. & Com. Code Ann. § 2.725. Because Plaintiffs filed this action with this Court on February 24, 2021,[23]

---

[22] Mot. Br. 41, ECF No. 134.
[23] *See* Compl. ECF No. 1

5

American argues "any claim that arose prior to February 24, 2017 . . . should be dismissed . . . ."[24] Plaintiffs counter that the file date should be September 4, 2020—the date they filed in California—because the transferred filing contains the same Plaintiffs, Defendant, classes, and allegations. But because the original case was dismissed, the filing date of this action, February 24, 2021, is controlling for purposes of determining statute of limitations. Therefore, any class member's claim that arose prior to February 24, 2017, is time barred unless an exception applies.

Plaintiffs argue they are entitled to *American Pipe* tolling pending resolution of *Bazerman v. American Airlines, Inc.*, No. 1:17-CV-11297-WGY (D. Mass. July 13, 2017), a prior class action against American.[25] Plaintiffs have the burden of proving they are entitled to tolling. *See Drake v. Consumers Cnty. Mut. Ins.*, No. 5:13-CV-00170, 2015 WL 2182682, at *8 (Tex. Ct. App. May 8, 2015).

Under *American Pipe & Construction Co. v. Utah,* 414 U.S. 538 (1974), generally the statute of limitations may be tolled pending class action litigation. The Supreme Court held that after a denial of class certification, class members of the failed class could pursue their now untimely claims, individually, if those claims would have been timely at the outset of the class action. *Id.* at 552–54. However, the Supreme Court's decision in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018), renders *American Pipe* tolling inapplicable to Plaintiffs claims as a matter of law. In *China Agritech*, the Supreme Court expressly limited the scope of *American Pipe* tolling to apply only to individual suits. *China Agritech*, 138 S. Ct. at 1804.

Plaintiffs argue *China Agritech* is distinguishable because Plaintiffs' claims fall outside the scope of the classes that reached a settlement in *Bazerman*, whereas in *China Agritech*, the Court

---

[24] Mot. Br. 44, ECF No. 134.
[25] On July 13, 2017, American *Bazerman* was filed. Pls.' Summ. J. App., 187, ECF No. 160-2. Both the Credit Card and Email Confirmation classes fall within the original class in *Bazerman*, but outside the scope of the settlement approved by the Court. Pls.' Summ. J. App., 26–35, ECF No. 160-3.

denied class certification.[26] They argue this factual distinction renders *China Agritech* inapplicable. But the Supreme Court does not limit *China Agritech* only to cases involving a denial of class certification. *Id.* at 1806 ("We hold that *American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action."). Rather, "*American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." *Id.* at 1804. Because Plaintiffs now seek relief in the form of a subsequent class action, rather than individually, they are not entitled to tolling. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 854 F. App'x 570, 572 (5th Cir. 2021); *see also In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 915 F.3d 1, 17 (1st Cir. 2019) (holding that the "tolling effect of a motion to certify a class applies only to individual claims, no matter how the motion is ultimately resolved," and further noting that "[t]o hold otherwise would be to allow a chain of withdrawn class-action suits to extend the limitations period forever"); *Blake v. JP Morgan Chase Bank N.A.*, 927 F.3d 701, 709 (3rd Cir. 2019) ("*China Agritech* is clear and unequivocal: courts may not toll new class actions under American Pipe, period."); *Porter v. S. Nev. Adult Mental Health Servs.*, 788 F. App'x 525, 526 (9th Cir. 2019) (*American Pipe* tolling is inapplicable to subsequent class actions).

Thus, Plaintiffs whose claims arose prior to February 24, 2017 failed to file suit within the prescribed time. Because *China Agritech* governs the issues at hand, Plaintiffs may not rely on *American Pipe* tolling. Plaintiffs identify no other avenues for tolling. Therefore, the Court **GRANTS** summary judgment on all claims that arose before February 24, 2017.

---

[26] Resp. 47, ECF No. 157.

### B. Credit Card Class Members Traveling on International Itineraries

Next, the Court turns to member of the Credit Card Class who were traveling on international itineraries. American argues it is entitled to summary judgement as to all members of the Credit Card Class traveling on international itineraries because "[t]he contract – American's Conditions of Carriage and documents incorporated therein – do not provide a free checked bag benefit for holders of partner credit cards traveling on international itineraries," thus there can be no breach.[27]

As previously stated, the parties' contracts are governed by the Conditions of Carriage and incorporated documents.[28] Prior to submitting payment information, customers are provided with a cost summary and a hyperlink to American's Bag and Options Fees, Reservation and Ticket FAQs, Price and Tax Information, and Conditions of Carriage.[29] The Conditions of Carriage state "[n]o agent, employee, or representative of American has authority to alter, modify or waive any provision of the Conditions of Carriage unless authorized in writing by a corporate officer of American."[30] The Conditions of Carriage also state that "[c]hecked baggage charges apply . . . some exceptions may apply."[31] Further, the Conditions of Carriage incorporates and provides a hyperlink to the Baggage Policy, which explains that passengers generally must pay for their bags unless a specific exception applies. Directly below this statement, the Baggage Policy lists those exceptions.[32] For example, the Policy states that customers with an eligible partner credit card are entitled to a free checked bag on domestic itineraries.[33] Notably absent from the policy is any

---

[27] Mot. Br. 18–19, ECF No. 134.
[28] American's App. 10-28, ECF No. 135.
[29] Def. App. 113, ECF No. 135-3.
[30] Def. App. 27, ECF No. 135.
[31] *Id.* at 16.
[32] *Id.* at 30–35.
[33] *Id.* at 31–32.

similar statement that passengers with an eligible partner credit card are entitled to a free checked bag on international itineraries.[34]

As an initial matter, Plaintiffs argue Ferrigni's flight from Miami to St. Louis, following an overnight layover in Miami, should be considered domestic because the flight falls outside the scope of an international itinerary.[35] American does not dispute that partner credit card holders are entitled to a free checked bag on domestic itineraries.[36] Rather American disputes Plaintiffs' assertion that Ferrigni's flight fits within the definition of a domestic itinerary.[37] In support, American states: "The AA Conditions of Carriage define 'domestic' as '[t]he 50 federated states and the District of Columbia, Puerto Rico and the U.S. Virgin Islands.'"[38] But this alone does not put a flight from Miami to St. Louis after a layover outside the scope of a domestic flight. The flight was from one federated state to another. In an attempt to bring this flight within the international itinerary definition, American states: "Under 'Baggage limits and fees,' the AA Conditions of Carriage provide that '[c]hecked bag fees apply with some exceptions,' and a passenger 'may have to pay bag fees again if: . . . [the passenger's] connection on American is more than 12 hours later.' *Id.* at Def. App. 17."[39] Page 17 of American's Appendix is a screenshot of the 2017 Conditions of Carriage. But the quoted language does not appear on page 17 of American's Appendix. Nor has the Court been able to locate this language anywhere else in the 2017 Conditions of Carriage or in any other policy in place at the relevant time. Without evidence that this flight would be considered international at the time Ferrigni purchased his flight, the Court

---

[34] *Id.*
[35] Resp. 33–34, ECF No. 157.
[36] *Id.*
[37] Mot. Br. 12, ECF No. 134.
[38] *Id.* at 12 n. 5 (quoting American's App. 7, ECF No. 135).
[39] *Id.* at 12.

finds Ferrigni's flight from Miami to St. Louis was a domestic flight for purposes of the parties' agreement, and Ferrigni was entitled to a free checked bag for this portion of the flight.

The Court now turns to Plaintiffs' arguments as to why they were entitled to a free checked bag on international flights. The arguments can be summarized as: (1) since the Baggage Policy does not explicitly exclude international flights from being included in the free checked bag policy for card holder, it must be included, and (2) the written terms were altered by advertisements and an oral "offer" made on an international flight.[40]

### 1. Failure to Explicitly Exclude Does Not Imply Inclusion

Plaintiffs argue that American's failure to explicitly exclude international flight from the card holder's free checked bag benefit placed international flights within the exception.[41] As discussed above, the policy *does* explicitly say qualifying card holders are entitled to a free checked bag on *domestic* flights but is silent regarding international flights.

The principle of *expressio unius est exclusio alterius* directs the Court that "the expression in a contract of one or more things of a class implies the exclusion of all not expressed, even though all would have been implied had none been expressed." *Oxy USA, Inc. v. Sw. Energy Prod. Co.*, 161 S.W.3d 277, 285 (Tex. App.—Corpus Christi 2005, pet. denied) (internal quotation marks omitted). Thus, because the contract expressly states partner credit card holders are entitled to a free checked bag on domestic flights, but is silent as to international flights, the contract indicates that international flights are excluded.

---

[40] Resp. 35–36, ECF No. 157.
[41] *Id.* at 39–40.

### 2. Advertisements and Oral Solicitation Did Not Alter the Written Agreement

Next, Plaintiffs allege American "promised in offers on airport premises that passengers who obtained certain credit cards could check a first bag free of charge and did not in these statements indicate any restriction to domestic flights."[42] They cite a myriad of marketing materials, arguing these advertisements imply international travel is included.[43] Plaintiffs further allege oral solicitations made during a flight became part of the passengers' contracts with American, entitling card holders to free checked bags on international flights.[44]

As an initial matter, having considered the plain language of AA Conditions of Carriage, it is clear the Checked Bag Policies is incorporated by reference.[45] The Checked Bag Policies unambiguously state credit card holders are entitled to a free checked bag "on domestic American Airlines operated itineraries."[46] And as discussed above, all passengers must pay for their bag, unless they fall within an enumerated exception, such as being a qualifying card holder on a domestic flight.

Because the Court finds the language of the written contract is unambiguous, extrinsic evidence may not be used to modify its terms. *See, e.g., Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 294 (5th Cir. 2010) ("Courts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity.") (internal quotation marks omitted) (applying Texas law). In other words, "as Texas courts have repeatedly held, a party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms. . . . This is particularly true when the party had a

---

[42] Compl. 11, ECF No. 1.
[43] Resp. 35–37, ECF No. 157 (citing Pls.' App. 85–99, ECF No. 160-2).
[44] Compl. 11, ECF No. 1.
[45] *See* Def. App. 16–17, ECF No. 135.
[46] *Id.* at 31–32.

reasonable opportunity to review the written agreement but failed to exercise ordinary care to do so." *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424–25 (Tex. 2015).

Further, Plaintiffs cite statements that are not offers capable of acceptance—they are simply marketing statements. Advertising and promotion of a product is nothing more than an invitation to apply, not an offer that becomes a contract upon acceptance. *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 660 (E.D. Tex. 2007) ("[U]nder Texas law, an offer must be definite and must be more than a mere invitation for an offer from another."). An advertisement typically constitutes a solicitation to bargain—not an offer. "And courts generally consider it *unreasonable* for a person to believe that an advertisement constitutes a binding offer." *Schultz v. Am. Airlines, Inc.*, No. 18-CV-80633, 2019 WL 3000448, at *3 (S.D. Fla. July 10, 2019) ("'The great weight of authority' suggests that order forms are 'mere notices and solicitations for offers which create no power of acceptance in the recipient.'") (quoting *Mesaros v. United States*, 845 F.2d 1576, 1581 (Fed. Cir. 1988); *Leonard v. Pepsico, Inc.*, 88 F. Supp. 2d 116, 123 (S.D.N.Y. 1999), *aff'd*, 210 F.3d 88 (2d Cir. 2000) ("An advertisement is not transformed into an enforceable offer merely by a potential offeree's expression of willingness to accept the offer through, among other means, completion of an order form."). An advertisement to apply for a credit card that may state or imply international flights are included in the free bag benefit is not an offer capable of acceptance. The advertisement invites people to apply. It does not guarantee that their application for a partner credit card will be accepted. Further, during the application process applicants are provided the terms, which have been discussed at length above.

And lastly, even *if* the Court were to consider the marketing statements, Plaintiffs do not claim the marketing statements made any affirmative statement that card holders are entitled to a free checked bag on international flights. Rather, Plaintiffs argue the marking statements failed to

12

exclude international travel explicitly while implying international flights were included. Plaintiffs argue the use of pictures of international locations and advertisements made on international flights imply inclusion.[47] Once again, this is not sufficient. As discussed above, there is no ambiguity. The only reasonable interpretation of the contract is that the credit card only applied to domestic flights.

Thus, customers traveling on international flights are excluded from this benefit. American is entitled to summary judgment as to members of the Credit Card Class traveling on international flights. The Motion is **GRANTED** with respect to these claims.

### C. Email Confirmation Class

Mirroring many arguments made regarding the Credit Card Class, American seeks summary judgment for the Email Confirmation Class. American argues there was no breach of contract in the Email Confirmation Class because the terms that were allegedly breached were not a part of the contract.

Plaintiffs in the Email Confirmation Class rely on an email sent after they purchased their ticket. The email stated they would receive a free checked bag, but when Plaintiffs arrived at the airport, they were required to pay a baggage fee. American argues the erroneous email did not alter the express terms of the contract and the "[c]onfirmation emails are intended to reflect those terms of the ticket, sent after the purchase has already been completed, and not the ticket itself."[48] But Plaintiffs do not solely argue the email altered the terms of the contract; rather, they also argue the confirmation was simply a memorialization of the information contained in the ticket, which is undisputedly a part of the contract.[49]

---

[47] Resp. 37, ECF No. 157.
[48] Reply, 18, ECF No. 163.
[49] American's App. 107, ECF No. 135-2.

There is no available record of the information contained in the ticket, which is comprised of lines of code and never directly sent to consumers. Rather, as stated above, customers are sent an email confirming their purchase, which is supposed to reflect the terms of the ticket. Plaintiffs seek spoliation sanctions for the failure to preserve these tickets, including a denial on summary judgment on the email class.[50]

"If electronically stored information ['ESI'] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the Court may impose remedial measures. Fed. R. Civ. P. 37(e). If the Court finds that another party has been prejudiced by the loss of ESI, it "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Courts have broad discretion in imposing sanctions in the event of spoliation. *Union Pump Co. v. Centrifugal Tech., Inc.*, 404 F. App'x. 899, 905 (5th Cir. 2010) ("Spoliation of evidence is among the offenses for which a court may assess sanctions using its inherent powers."); *Olivarez v. Geo Grp., Inc.*, 844 F.3d 200, 203 (5th Cir. 2016).

To apply Rule 37(e) sanctions, "a court must determine that the following four predicate elements exist: [1] there is ESI that should have been preserved; [2] that ESI has been lost; [3] the ESI was lost because of a party's failure to take reasonable steps to preserve it; and [4] the ESI cannot be restored or replaced." *Via Vadis, LLC v. Amazon.com, Inc.*, No. 1:14-CV-00813-LY, 2021 WL 3134257, at *3 (W.D. Tex. July 23, 2021); *see also Grant v. Gusman*, No. 17-2797, 2020 WL 1864857, at *8 (E.D. La. Apr. 13, 2020) ("Rule 37(e)'s plain language dictates that four predicate elements must exist before a federal district court may sanction a party for lost ESI."). "The party alleging spoliation has the burden to prove each of the . . . four predicate elements . . . ."

---

[50] *See* Mot. for Spoliation Sanctions, ECF No. 181.

*Grant*, 2020 WL 1864857, at *9. The Court finds Plaintiffs have shown they are entitled to Rule 37(e) sanctions in the form of denial of summary judgment on this class of claims. The data was undisputedly electronically stored.[51] The needed price information is unavailable because American failed to take steps to preserve it, even after the commencement of this and the *Bazerman* suit.[52] And there is no indication the data could be restored or replaced.[53] Without this information, the Court is not able to determine whether the parties' contract entitled members of the Email Confirmation Class were entitled to a free bag. Thus, the Court cannot determine whether this contract was breached when American required payment for the bags. Therefore, the Court **DENIES** summary judgment on Plaintiffs' Email Confirmation Class claims.

### D. Class Action Waivers

Next, American seeks dismissal without prejudice of any class members whose claims may not be brought as a class action because they are subject to a class action waiver. "There are two separate groups of passengers who waived their right to bring claims as part of a class action: (1) all passengers who purchased tickets after April 8, 2020, when American amended its AA Conditions of Carriage to include a class action waiver; and (2) AAdvantage members who purchased tickets on or after May 5, 2015, who agreed as part of signing up for the AAdvantage frequent flier program to waive their right to bring suit as part of a class action."[54] The waiver states that any lawsuit "will be brought only in your individual capacity, and may not be brought in or asserted as part of a class action proceeding."[55]

---

[51] *See* Resp. in Opp'n of Spoliation Sanctions, ECF No. 182.
[52] Pls.' Summ. J. App.13, ECF No. 161-1.
[53] *Id.*
[54] Mot. Br. 44, ECF No. 134.
[55] American's App. 70, ECF No. 135-3.

American argues all passengers who purchased a ticket after April 8, 2020, and all AAdvantage members who purchased tickets on or after May 5, 2015, waived their right to sue as part of a class action.[56] Plaintiffs contend that this waiver does not prevent participation in a class action; it only prevents being a named plaintiff.[57] The Court disagrees. "Terms in the contract are given their 'plain grammatical meaning' unless such meaning would plainly defeat the parties' intentions." *Bank of New York Mellon as Tr. of Registered Holders of CWABS, Inc., Asset-Backed Certificates, Series 2004-5 v. Riley*, No. 21-40383, 2022 WL 1773364, at *4 (5th Cir. June 1, 2022) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987)). The Court finds that the plain terms of the contract do not limit the waiver to named plaintiffs. Instead, it creates a blanket prohibition from bringing claims as a member of a class.

Next, Plaintiffs argue the waivers are inapplicable because they were not adequately disclosed, as required by Texas law.[58] The Court disagrees as it applies to the 2020 Conditions of Carriage waiver—while the waiver is but one part of American's lengthy terms, it was adequately disclosed. The Conditions of Carriage waiver is on the second page of the Conditions of Carriage and memorialized in bold text, stating "Class Action Waiver" and in a separate bullet.[59] With the quantity of terms, there is likely no perfect way to disclose all the information needed by consumers. But American is not required to perfectly disclose, it must simply adequately disclose.[60]

American fails to present evidence of adequate disclosure of the AAdvantage 2015 waiver. While American gives the Court a detailed description of how to reach the waiver, American fails

---

[56] Mot. Br. 45–46, ECF No. 134.
[57] Resp. 25–26, ECF No. 157.
[58] *Id.* at 26.
[59] American's App. 70, ECF No. 135-3.
[60] *See* Tex. Bus. & Com. Code § 1.201(b)(10).

to cite any actual evidence that this description is accurate.[61] The only evidence the Court was able to locate in American's appendix is a screenshot of the language used.[62] However, there is no evidence of how an AAdvantage member would find that language once on the website. Thus, the Court finds a jury could find this waiver was not adequately disclosed under Texas law.[63]

Therefore, the Court **DISSMISES** all claims arising after April 8, 2020.

### E. Non-U.S. Citizen Passengers

Finally, American requests dismissal with prejudice of foreign class members' claims, arguing Plaintiffs have failed to show any judgment from this court would have a preclusive effect.[64] "The Plaintiffs bear the burden of establishing superiority and whether foreign claimants should be included in the putative class." *Troice v. Proskauer Rose LLP*, No. 3:09-CV-1600-N-BG, 2015 WL 13729620, at *3 (N.D. Tex. Mar. 9, 2015) (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). While generally, this is handled at the class certification phase, courts have an ongoing duty to keep classes in compliance with Rule 23. *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983) ("Under Rule 23 the district court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts."). This includes satisfying the superiority requirement.

Whether a foreign court will recognize the preclusive effects of class judgment informs on superiority. *See Buettgen v. Harless,* 263 F.R.D. 378, 382 (N.D. Tex. 2009); *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 264 (2d Cir. 2016). As summarized by a Hawaii District Court,

> The trending approach of federal courts nationwide appears to be evaluating the *res judicata* effects of class judgments with respect to groups of foreign plaintiffs and

---

[61] Reply, 25–26, ECF No. 163
[62] *See* American's App. 97, ECF No. 135-3.
[63] *See* Tex. Bus. & Com. Code § 1.201(b)(10).
[64] Mot. Br. 41, ECF No. 134.

then excluding from the class those whose home countries would not honor a class judgment from the United States. *See, e.g.*, *Anwar v. Fairfield Greenwich Ltd.*, 289 F.R.D. 105, 114–21 (S.D.N.Y. 2013) (vacated on other grounds); *In re Alstom*, 253 F.R.D. at 282; *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 95 (S.D.N.Y. 2007); *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 301 (D. Del. 2003).

*Willcox v. Lloyds TSB Bank, PLC*, No. 13-cv-00508-ACK-RLP, 2016 WL 8679353, at *9 (D. Haw. Jan. 8, 2016). But the analysis does not end there. Courts also look to the practical realities and risk of relitigating. *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. at 106–07 ("[T]he Court should not ignore practical realities that reduce the risk that defendants would in fact be prejudiced by any potential nonrecognition . . . . In this sense, defendants' res judicata concerns are 'more hypothetical than real . . . .'").

Plaintiffs argue any *res judicate* concern expressed by American is merely a hypothetical rather than practical concern.[65] The Court agrees. As an initial matter, the Conditions of Carriage state Texas law apply to all the claims at issue in this case.[66] Thus, foreign courts would be required to give any decision by this court the same preclusive effect as the decision would have in Texas. Additionally, it is unlikely there will be significant relitigating in foreign courts—each class members' individual claim is likely not worth the cost of relitigating individually. And lastly, as stated by American in its motion to transfer, "a majority of the Plaintiffs agreed to" a forum selection clause, which "obligates suits arising out of [the] use of American's website to be filed in Tarrant County, Texas."[67] Thus, the Court finds dismissal of foreign individuals is not proper because a class action continues to be the superior vehicle to resolve these claims. The Court **DENIES** dismissal of foreign plaintiffs.

---

[65] Resp. 52, ECF No. 157.
[66] American's App. 3, ECF No. 135-3.
[67] Pls.' Summ. J. App. 164, ECF No. 160-2.

## IV.     CONCLUSION

For the reasons discussed above, the Court **GRANTS in part** American's Motion for Partial Summary Judgment.

**SO ORDERED** this **22nd day** of **July, 2022**.

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE