# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

### FORT WORTH DIVISION

|  |  |
|---|---|
| Katherine M. Cleary, *et al*., individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>American Airlines, Inc.,<br><br>    Defendant. | Civil Action No. 4:21-cv-00184-O<br><br>Hon. Reed O'Connor, USDJ<br>Hon. Hal R. Ray, Jr., USMJ |

**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW FOR
PRELIMINARY APPROVAL OF CLASS SETTLEMENT
<u>AND DIRECTION OF NOTICE UNDER RULE 23(E)</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... 1

TABLE OF AUTHORITIES ............................................................................................... 1

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

   I.   Procedural History ....................................................................................................... 2

   II.   Class Counsel's Investigation and Discovery ............................................................. 4

   III.   Settlement Negotiations .............................................................................................. 4

SUMMARY OF THE SETTLEMENT TERMS ................................................................ 5

   I.   The Settlement Classes ............................................................................................... 5

   II.   Refunds to Settlement Class Members ....................................................................... 6

   III.   Administrative Costs ................................................................................................... 7

   IV.   Attorneys' Fees, Expenses, and Service Awards ....................................................... 7

   V.   Notice Program ........................................................................................................... 8

      A.   Direct Notice to Settlement Class Members ............................................................ 8

      B.   Press Release ........................................................................................................... 10

      C.   Settlement Website and Toll-Free Number ............................................................ 10

      D.   CAFA Notice .......................................................................................................... 11

   VI.   Claims Process .......................................................................................................... 11

      A.   Opt-Out and Objection Procedures......................................................................... 12

   VII.   Release ....................................................................................................................... 12

ARGUMENT ..................................................................................................................... 12

   I.   Overview of the Class Settlement Approval Process ............................................... 12

   II.   The Proposed Settlement Meets the Standards for Preliminary Approval................... 13

      A.   The Settlement Represents an Excellent Result for the Settlement Classes, Particularly Considering the Risks and Delay of Trial and Appeal (Fed. R. Civ. P. 23(e)(2)(C)(i); *Reed* Factors 2, 4, 5). ...................................................................... 15

      B.   The Settlement is the Product of Good Faith, Informed, Arm's-Length Negotiations (Fed. R. Civ. P. 23(e)(2)(B); *Reed* Factor 1). ........................................................ 17

      C.   The Settlement, Reached Less than Two Weeks Before Trial, Is Informed by Significant Investigation, Discovery, Motion Practice, and Court Rulings (*Reed* Factor 3).18

      D.   Plaintiffs and Class Counsel Have and Continue to Zealously Represent the Class, and Their Experience and Views Further Support Approval (Fed. R. Civ. P. 23(e)(2)(A); *Reed* Factor 6). .................................................................................................... 19

E.      The Settlement Treats Class Members Equitably and the Proposed Method of
Distributing Relief Is Effective (Fed. R. Civ. P. 23(e)(2)(C)(ii), (D)).................................. 21

F.      Class Counsel Will Seek Reasonable Attorneys' Fees and Reimbursement of Their
Litigation Expenses (Fed. R. Civ. P. 23(e)(2)(C)(iii)).......................................................... 22

III.    The Court Already Certified the Classes, and Should Reaffirm that Certification with
Regard to the Settlement Classes................................................................................................ 22

IV.     The Proposed Notice Program Complies with Rule 23 and Due Process....................... 23

V.      The Court Should Schedule a Fairness Hearing and Related Dates. ............................ 24

Conclusion ........................................................................................................................................ 25

CERTIFICATE OF CONFERENCE........................................................................................... 1

CERTIFICATE OF SERVICE ...................................................................................................... 1

# TABLE OF AUTHORITIES

**Cases**

*Bardales v. Fontana & Fontana*, LLC,
No. 19-cv-340-WBV-DMD, 2020 WL 5819873 (E.D. La. Sept. 30, 2020) ..................... 15, 22

*Bazerman v. American Airlines, Inc.*,
Case No. 1:17-cv-11297-WGY (D. Mass. 2017) ................................................. 6

*Billitteri v. Sec. Am., Inc.*,
No. 09-cv-01568-F, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) ........................................ 18

*Carmen v. R.A. Rogers, Inc.*,
No. SA-16-ca-971-FB (HJB), 2018 U.S. Dist. LEXIS 174461 (W.D. Tex. Apr. 25, 2018) .... 13

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .................................................................................. 24

*Hays v. Eaton Grp. Att'ys, LLC*,
No. CV 17-88-JWD-RLB, 2019 WL 427331 (M.D. La. Feb. 4, 2019) .................................. 16

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) ................................................................. 14

*In re Heartland Payment Sys., Inc. Customer Data Breach Litig.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) ................................................... 17, 18

*In re OCA, Inc. Sec. & Derivative Litig.*,
No. CIV.A.05-2165, 2009 WL 512081 (E.D. La. Mar. 2, 2009) ....................... 16

*In re Pool Prods. Distrib. Market Antitrust Litig.*,
310 F.R.D. 300 (E.D. La. 2015) ........................................................... 15, 16

*Izzio v. Century Golf Partners Mgmt., L.P.*,
No. 14-cv-03194-M,  2019 WL 10589568 (N.D. Tex. Feb. 13, 2019) .................................. 14

*Klein v. O'Neal*,
705 F. Supp. 2d 632 (N.D. Tex. 2010) ................................................. 17, 18

*Marcus v. J.C. Penney Co.*,
2017 WL 6590976 (E.D. Tex. Dec. 18, 2017), *R. & R. adopted* 2018 WL 307024
(E.D. Tex. Jan. 4, 2018) ..................................................................... 20

*Newby v. Enron Corp.*,
394 F.3d 296 (5th Cir. 2004) ................................................................. 14

*ODonnell v. Harris Cnty., Texas*,
No. CV H-16-1414, 2019 WL 6219933 (S.D. Tex. Nov. 21, 2019) .................... 14

*Reed v. Gen. Motors Corp.*,
703 F.2d 170 (5th Cir. 1983) ................................................................. 14

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ................................................................. 17

*Schwartz v. TXU Corp.*,
2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ........................................... 16, 20

**Rules**

Fed. R. Civ. P. 23 ................................................................................. 2
Fed. R. Civ. P. 23(c) ....................................................................... 23, 24
Fed. R. Civ. P. 23(e)(2)(A) ............................................................... 19
Fed. R. Civ. P. 23(e)(2)(B) ............................................................... 17
Fed. R. Civ. P. 23(e)(2)(C)(i) ........................................................... 15

Fed. R. Civ. P. 23(e)(2)(C)(iv) .......................................................................................... 17
Fed. R. Civ. P. 23(h) .......................................................................................................... 22

**Other Authorities**

*Manual for Complex Litigation (Fourth)* § 21.632 (2004) ...................................................... 13, 18

**INTRODUCTION**

After more than two years of litigation, the parties have reached an agreement to settle this class on a class basis.  Pursuant to the terms of the Settlement,[1] Defendant American Airlines, Inc. ("American") will pay a minimum of $7.5 million to provide full 100% refunds to Settlement Class Members who file timely, valid claims.  There is no limit or cap on the amount of money American will pay above $7.5 million and American will pay settlement administration costs and attorneys' fee in addition (on top) of the 100% refund paid to claiming Settlement Class members.

The Settlement presented for the Court's consideration is fair, reasonable, and adequate, and warrants notice to the Settlement Classes and preliminary approval under applicable standards.  It is the product of hard-fought, arms-length negotiations between the parties including through an experienced and well-respected mediator, Clay Cogman of Phillips ADS (the dispute resolution firm of Hon. Layn R. Phillips, ret.).  It follows extensive formal discovery and years of hard-fought litigation, including two litigation classes certified by this Court, a ruling on summary judgment, fully briefed motions in *limine* and other pre-trial submissions, and a trial scheduled less than two weeks away when settlement was reached.  As the Parties were already deep into preparations for impending trial, they and their counsel were extensively informed about the issues, the strengths and weaknesses of their respective positions, and the risks faced by each side of continued litigation.

The Settlement also provides for a robust notice program that includes direct notice to all Settlement Class Members via a combination of email and mail; multiple reminder emails; a

---

[1] The Settlement Agreement and Release (the "Settlement" or "Settlement Agreement") is being filed herewith as Ex. 1 to the accompanying Giskan Decl.  Capitalized terms herein are defined in the Settlement Agreement.

reminder mail notice; publication notice in the form of a widely distributed press release and the establishment of a dedicated Settlement Website where Settlement Class Members can obtain additional information and submit claims online; and an informational Toll-Free Number.  The proposed notice program comports with Fed. R. Civ. P. 23, due process, and best practices.

Plaintiffs and their Court-approved Class Counsel and local counsel believe the Settlement to be in the best interests of the Settlement Class Members and seek to begin the Court approval process that is required for all class action settlements.  Plaintiffs therefore respectfully request that the Court preliminarily approve the Settlement, direct that notice be disseminated to the Settlement Classes pursuant to the proposed notice program, approve the Parties' choice of Settlement Administrator (A.B. Data, Ltd.), schedule a Fairness Hearing, and grant the related relief requested herein and in the accompanying proposed order.

## BACKGROUND

### I.  Procedural History

Plaintiffs filed this case on February 24, 2021.  ECF No. 1.  Plaintiffs alleged that American had incorrectly required certain customers to pay checked baggage fees between 2013 and 2021.  *Id.*  American answered the complaint on April 26, 2021.  ECF No. 25.

Plaintiffs moved for class certification on June 11, 2021.  ECF No. 33.  American opposed.  ECF No. 40.  On September 2, 2021, this Court certified two classes: an Email Confirmation Class consisting of "qualified American ticket holders who received email confirmation promising them free checked baggage," and a Credit Card Class consisting of "qualified American partner credit card holders that were promised free checked baggage."  ECF No. 66.  This Court appointed Plaintiffs as class representatives, and appointed Plaintiffs' Counsel as Class Counsel.  *See* ECF Nos. 66.  It subsequently designated two additional firms as Class Counsel to represent the Classes.  *See* ECF No. 151.

Plaintiffs sent class members notice as approved and ordered by the Court. *See* ECF No. 131. Following certification, Class Counsel retained A.B. Data to serve and administer the Court-approved notice of class certification to over 2.8 million class members.[2]

The Parties conducted extensive discovery. The Parties exchanged and reviewed more than 50,000 pages of documents and conducted ten (10) depositions. Giskan Decl., ¶¶ 6-7. Plaintiffs filed and the Parties litigated three motions to compel, of which this Court granted each in part or in full. ECF Nos. 65, 89, 106.

American moved for partial summary judgment on January 27, 2022, which Plaintiffs opposed. This Court granted summary judgment to American in part on July 22, 2022. ECF No. 190. As a result of that decision, the class periods certified by the Court were substantially curtailed and the credit card class was limited to only those international travelers on wholly-domestic flights. On July 29, 2022, American moved for reconsideration of the Court's summary judgment order, which Plaintiffs opposed. ECF Nos. 192, 198.

While American's summary judgment motion was pending, Plaintiffs moved for spoliation sanctions on May 4, 2022. ECF No. 178. In its summary judgment order, this Court granted Plaintiffs' motion for spoliation sanctions in part. ECF No. 190 at 13-15.

Following the entry of the order partially granting summary judgment, the Parties prepared for trial scheduled for August 29, including filing numerous motions *in limine*, witness and exhibit lists and other pre-trial motions and documents. *See, e.g.*, ECF Nos. 200, 206, 212.

The Parties informed the Court that they had reached a settlement in principle on August 17, 2022, only 12 days before trial, subject to further negotiations and preparation of the

---

[2] A.B. Data has been retained by the Parties as the Settlement Administrator to administer the Settlement notice, claims and refund distribution process, subject to Court approval.

settlement agreement and related documents.  ECF No. 245.

## II.     Class Counsel's Investigation and Discovery

The Settlement in this case was negotiated by counsel who were well-informed about the issues and litigation risks as a result of their substantial investigation and discovery efforts.  Prior to filing suit, and continuing through the course of the litigation, Class Counsel conducted an extensive investigation into the factual and legal issues raised in this litigation.  These investigative efforts have included, *inter alia*, thoroughly investigating and analyzing American's customer disclosures and checked baggage policies; speaking with American customers about their experiences; and investigating customer complaints and other pertinent public information.  Class Counsel also extensively researched and analyzed the legal issues regarding the claims pled and American's defenses and potential defenses.  Giskan Decl., ¶ 5.

Moreover, Class Counsel conducted extensive formal discovery in this case, including reviewing more than 50,000 pages of internal documents and data produced by American and third-party Appriss Insights, American's email vendor; deposing pertinent American employees, and more importantly multiple Rule 30(b)(6) corporate designees; defending the depositions of Plaintiffs Cleary and Ferrigni, propounding and analyzing responses to substantial written discovery; and preparing responses to written discovery served by American on Plaintiffs.  Giskan Decl., ¶¶ 6-8.

The parties were also informed by this Court's rulings on class certification and American's motion for summary judgment and Plaintiffs' motion for spoliation sanctions, and by trial preparations and each party's pending motions *in limine* and other pre-trial motions, exhibit and witness lists, and other documents.  Giskan Decl., ¶¶ 9-11.

## III.    Settlement Negotiations

The Settlement here is the product of hard-fought, arms-length negotiations.  Early in the

litigation, the Parties participated in settlement mediation with Clay Cogman of Phillips ADS. That mediation did not result in an agreement and substantial litigation followed.   The Parties and their counsel again participated in a full-day, primarily in-person mediation with Clay Cogman on August 8, 2022.  The Parties were not able to reach a settlement during that mediation but agreed to continue negotiations.  The Parties continued their settlement discussions and reached an agreement in principle on August 17, 2022.  Since reaching an agreement in principle, the Parties have worked diligently to draft the written settlement agreement, notices, and other settlement exhibits.  Giskan Decl., ¶¶ 12-15.

**SUMMARY OF THE SETTLEMENT TERMS**

**I.      The Settlement Classes**

The Settlement Classes are those classes certified by this Court's class certification order, as refined and limited by this Court's summary judgment decision.  The Settlement Classes, are defined as follows:

The "Email Confirmation Settlement Class" means and includes:  American ticket holders who both: (a) received email confirmation that in its body (and not merely in documents incorporated by reference) promised them one or more checked baggage at no charge or for "USD0.00" and were thereafter required to pay to check one or more such bags on or after February 24, 2017 for tickets purchased on or before April 8, 2020; and (b) either were sent Mail Notice or Email Notice of the Settlement or otherwise submit a Valid Claim related to At-Issue Baggage Fees covered by subpart (a) of this definition.

The "Credit Card Settlement Class" means and includes:   American-branded Citibank or Barclay's partner credit card holders entitling them to free checked baggage who were required to pay to check one or more such bags on domestic itineraries on or after February 24, 2017 for tickets purchased on or before April 8, 2020 (for the removal of doubt, this includes passengers

5

on layovers on international itineraries who were charged a second time to check bags for domestic portions of those itineraries); and (b) either were sent Mail Notice or Email Notice of the Settlement or otherwise submit a Valid Claim related to At-Issue Baggage Fees covered by subpart (a) of this definition.

Excluded from the Settlement Classes are persons whose only claims arise from baggage fees released in *Bazerman v. American Airlines, Inc.*, Case No. 1:17-cv-11297-WGY (D. Mass. 2017), along with the Parties' counsel and Court personnel.

## II.    Refunds to Settlement Class Members

Under the Settlement, American will pay no less than seven million five hundred thousand dollars ($7.5 million) into a Settlement Account, which will be used to pay all Refunds Settlement Class Members who submit claims not disputed by the parties.  Settlement Class Members who submit a Valid Claim shall be eligible to receive a <u>full refund</u> of their At-Issue Baggage Fees.  Settlement §§ IV.A-C.  The claims process is described below in Section § VIII.E.

If the total amount approved for all claims submitted (the "Total Claim Amount") exceeds $7.5 million, American will pay that higher Total Claim Amount into the Settlement Account instead, fully refunding the At-Issue Baggage Fees for all Valid Claimants.  Settlement § IV.E.  The Settlement sets no maximum on the amount that American will pay Valid Claimants.  *Id.* § IV.E.

If the Total Claim Amount is less than $7.5 million, American will pay $7.5 million into the Settlement Account.  *Id.* § IV.F.  In that case, each Valid Claimant's total Refund will equal their respective At-Issue Baggage Fees plus a *pro rata* allocation of the difference between $7.5 million and the Total Claim Amount.  *Id.*

If, six months after disbursement of all Refunds, any funds remain in the Settlement

Account—*e.g.*, if some Settlement Class Members did not deposit or cash their checks—then: if American paid more than $7.5 million into the Settlement Account, the remaining funds up to the amount American paid on top of $7.5 million will be returned to American; otherwise, the remaining funds will be distributed to Valid Claimants for whom Refund payments were effectuated if there are sufficient remaining funds to warrant such a distribution, or if not will be distributed *cy pres* to recipients agreed on by the Parties. *Id.* § V.C.

## III. Administrative Costs

All Notice and Settlement Administration Costs, including fees and costs of the Settlement Administrator implementing the notice program, administering the claims process, mailing checks, and performing the other administrative tasks described in the Settlement, will be paid by American, in addition to Refunds paid to claiming Settlement Class Members. Settlement § VII.C. American's payment of settlement administration costs will not reduce the amount of Refunds paid to Settlement Class members. *Id.* § VII.D. The Parties propose that A.B. Data Ltd., a well-known administration firm that has successfully administered numerous class settlements, including class notice in this Litigation, to serve as the Settlement Administrator. *Id.* § VII.A; Giskan Decl. ¶ 18.

## IV. Attorneys' Fees, Expenses, and Service Awards

Class Counsel will apply to the Court for an award of reasonable attorneys' fees and litigation costs and expenses in an amount not to exceed $2,850,000, to be paid by American to Class Counsel <u>separate and apart</u> from the Refunds paid to Settlement Class Members. Settlement § VI.A. Class Counsel will also apply for service awards of up to $10,000 for each Plaintiff, to compensate them for their efforts and commitment on behalf of the Settlement Classes. American's payment of Court-approved attorneys' fees and costs and Plaintiff service awards will not reduce the amount of Refunds paid to Settlement Class members. Class

Counsel's fee application will be filed no later than 25 days after the Notice Date (*i.e.*, at least 30 days before the Exclusion/Objection Deadline). *Id.* § XI.A.

## V.       Notice Program

The Parties' proposed Class Notice Program is set forth in Section VIII of the Settlement, and consists of: (A) direct notice to Settlement Class Members by email and mail, supplemented by reminder notices; (B) a Press Release; (C) a case-specific Settlement Website including the Long Form Notice, and a toll-free telephone number; and (D) notice pursuant to the Class Action Fairness Act (28 U.S.C. § 1715).

### A.       Direct Notice to Settlement Class Members

Notice will be sent directly to Settlement Class Members, through a combination of email and first-class mail.

First, within fourteen (14) days of the Preliminary Approval Date, American will provide to the Settlement Administrator a "Settlement Class Notice List" that includes:  (i) a list of all individuals who may be members of the Settlement Classes based on the Class Notice Lists previously used in this matter, as adjusted based on this Court's ruling on American's Motion for Partial Summary Judgment; (ii) the last known mailing addresses and email addresses for each such individual; and (iii) the passenger's date of birth, if present in American's business records, to facilitate a search for the passenger's contact information based on name plus date of birth. Settlement § VIII.D.  The Settlement Administrator will take commercially reasonable steps to obtain current mailing and email addresses for Settlement Class Members and may utilize the services of third-party vendors and information providers to obtain such information.  Among those steps, the Settlement Administrator will use the National Change of Address Database maintained by the United States Postal Service to update mailing addresses before Mail Notices are mailed to Settlement Class Members.  *Id.* § VIII.E.

*Email Notice:* No later than thirty-five (35) Days after the Preliminary Approval Date (the "Notice Date"), the Settlement Administrator will send the Email Notice (substantially in the form attached hereto as Exhibit B) by email to all persons on the Settlement Class Notice List for whom an email address was provided by American or located by the Settlement Administrator. *Id.* § VIII.G.  The Email Notices will contain a hyperlink to the Claim Form on the Settlement Website that can be completed to file a claim for a Refund and inform Settlement Class Members that a Spanish version is available on the Settlement Website.

*Mail Notice:* No later than the fifty (50) Days after the Preliminary Approval Date (15 days after the Notice Date), the Settlement Administrator will mail the Court-approved Mail Notice (substantially in the form attached hereto as Exhibit D), including a Claim Form with prepaid postage (substantially in the form attached hereto as Exhibit A), to all persons on the Settlement Class Notice List who have yet to submit a Claim Form and for whom an mailing address was provided by American or located by the Settlement Administrator. *Id.* § VIII.H. The Mail Notice will inform Settlement Class Members that a Spanish version is available on the Settlement Website.

For any Mail Notices returned as undeliverable, the Settlement Administrator shall update addresses based on any forwarding information received from the United States Postal Service.  The Settlement Administrator shall promptly re-mail any Mail Notices that are returned as non-deliverable with a forwarding address to such forwarding address.  For Mail Notices that are returned undeliverable without a forwarding address, the Settlement Administrator shall perform skip tracing and shall re-mail Mail Notices to any new addresses identified through such skip-tracing.  *Id.* § VIII.I.

*Reminder Email Notices:*  No later than sixty (60) Days after the Preliminary Approval

Date (25 days after the Notice Date), the Settlement Administrator will email the Reminder

Email Notice (substantially in the form attached hereto as Exhibit E) to all individuals who were

sent the Email Notice and who have yet to submit a Claim Form as of that time.  No later than

one hundred (100) Days after the Preliminary Approval Date (65 days after the Notice Date) the

Settlement Administrator will email a second Reminder Email Notice to all individuals who

were sent the Email Notice and who have yet to submit a Claim Form as of that time.  The

Parties, with input from the Settlement Administrator, will negotiate in good faith to determine

whether a third Reminder Email Notice (to individuals who were sent the Email Notice and who

have yet to submit a Claim Form as of one hundred fifteen (115) Days after the Preliminary

Approval Date) is necessary.  *Id.* § VIII.J.   The reminder Email Notices contain a hyperlink on

to the Claim Form on the Settlement Website.

*Reminder Mail Notice:*  No later than one hundred (100) Days after the Preliminary

Approval Date (65 days after the Notice Date), the Settlement Administrator will mail the

Reminder Postcard Notice (substantially in the form attached hereto as Exhibit F), to all

individuals who were sent the Mail Notice and who have yet to submit a Claim Form as of that

time.  *Id.* § VIII.K.   The reminder Mail Notices will again attach postage prepaid Claim Forms.

### B.    Press Release

Within seven (7) days after the Notice Date, the Settlement Administrator or Class

Counsel shall issue or cause to be issued a Press Release, substantially in the form attached

hereto as Exhibit G.  *Id.* § VII.M.

### C.    Settlement Website and Toll-Free Number

The Settlement Administrator shall establish the Settlement Website, at the URL

www.bagfeesettlement.com.  The Settlement Website shall provide information and relevant

documents related to this Settlement, including but not limited to, the following:  applicable

deadlines; a downloadable copy of the Settlement Agreement and the Long Form Notice (in English and Spanish); a mechanism for Settlement Class Members to submit online Claim Forms electronically via the Settlement Website; orders of the Court pertaining to the Settlement; and contact address(es) for questions. *Id.* § VIII.F.

Within ten (10) Days after entry of the Preliminary Approval Order, the Settlement Administrator shall set up a toll-free telephone number for receiving toll-free calls related to the Settlement.  Pre-recorded messages will be available in both English and Spanish languages. That telephone number shall be maintained and operational until thirty (30) Days after the last distribution of the Settlement Class Member Refunds. *Id.* § VII.D.

### D.     CAFA Notice

Within ten (10) days of the filing of this motion, American shall serve notice of the Settlement, with the assistance of the Settlement Administrator, of the proposed Settlement in accordance with 28 U.S.C. § 1715, upon the appropriate State and Federal officials. *Id.* § VIII.N.

## VI.    Claims Process

Settlement Class Members may submit claims for Refunds by submitting a Claim Form by the Claim Deadline (*i.e.*, within 125 days after the Preliminary Approval Date, or 90 days after the Notice Date).  Claims may be submitted electronically via the Settlement Website, or by mail.  The claim form is simple.  Settlement § IX; Exhibit A (Claim Form).

The Email Notices and Reminder Email Notices shall include hyperlinks to the Settlement Website, including to the page on the Settlement Website where online Claim Forms may be submitted electronically.  A Claim Form with postage prepaid will be annexed to the Mail Notices and Reminder Mail Notices and also made available for download on the Settlement Website or by request to the Settlement Administrator.  Settlement § IX.A.

Any Settlement Class Member who has submitted or submits an invalid, incomplete or

11

inaccurate Claim Form shall be informed of the deficiency by the Settlement Administrator and thereafter be permitted to re-submit a Claim Form within thirty (30) Days from receiving notice of the deficiency or prior to the Claims submission deadline, whichever date is later.  *Id.* § IX.E.

### A.    Opt-Out and Objection Procedures

Any Settlement Class Member may request to be excluded from the Settlement Class by mailing a request for exclusion that is post-marked no later than the Opt-Out and Objection Date. The request for exclusion must be personally signed by the Person requesting exclusion and must contain a statement that indicates his or her desire to be excluded from the Settlement. Settlement § X.C.

Any Settlement Class Member who does not submit a timely and valid exclusion request may object to the Settlement, Class Counsel's application for attorneys' fees and expenses, and/or the request for service awards.  To be considered, an objection must be in writing, must be filed with or mailed to the Court and sent to the Parties' counsel, must be filed/postmarked by the deadline stated in the notice, and must include the information prescribed by the Notice.  The parties propose that the deadline for exclusion requests and objections (the "Opt-Out and Objection Deadline") be set 90 days after the Preliminary Approval Date (55 days after the Notice Date).  Settlement §§ X.A; II.X.

### VII.   Release

In exchange for the consideration provided under the Settlement, Settlement Class Members who do not request exclusion will release American and its affiliates from claims eligible for Refunds as part of the Settlement, whether or not claims are submitted.  *Id.* § XII.

ARGUMENT

### I.    Overview of the Class Settlement Approval Process

Pursuant to Rule 23(e), a class action settlement must be approved by the court before it

12

can become effective.  The process for court approval is comprised of two principal steps:

> (1) Preliminary approval of the proposed settlement and direction of notice to the class; and
>
> (2) A final approval hearing, at which argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

*Carmen v. R.A. Rogers, Inc.,* No. SA-16-ca-971-FB (HJB), 2018 U.S. Dist. LEXIS 174461, at *15 (W.D. Tex. Apr. 25, 2018) ("Trial court review of a class action settlement proposal is a process: preliminary approval and a subsequent final approval after a fairness hearing."). By this motion, Plaintiffs respectfully ask the Court to take the first step and enter an order preliminarily approving the Settlement and directing class notice, pursuant to the parties' proposed notice program, under Rule 23(e)(1).  "During the preliminary approval stage, the Court must make a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing. *Manual for Complex Litigation (Fourth) §* 21.632 (2004).  At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *Id.* (citations and internal quotation marks omitted).

## II.  The Proposed Settlement Meets the Standards for Preliminary Approval.

In evaluating a motion for preliminary settlement approval, the court conducts a preliminary assessment of the factors that will be evaluated at the final approval stage.  Those factors include whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposed settlement was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate taking into account
>> (i)   the costs, risks, and delay of trial and appeal;
>>
>> (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of

13

> payment; and
>
> (iv)  any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the settlement treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  The Court should grant preliminary approval and direct notice to the class if it finds it "is likely to approve the proposal under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(1).  The ultimate touchstone for the analysis is whether the proposed settlement is "fair, reasonable, and adequate."  *Id.*

The Rule 23(e)(2) factors listed above, which were added by amendment effective December 1, 2018, are consistent with the factors the Fifth Circuit has long instructed courts to consider for approval of class action settlements, which are:

> (1) the existence of fraud or collusion behind the settlement;
>
> (2) the complexity, expense, and likely duration of the litigation;
>
> (3) the stage of the proceedings and the amount of discovery completed;
>
> (4) the probability of plaintiffs' success on the merits;
>
> (5) the range of possible recovery; and
>
> (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *accord Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (applying *Reed* factors to proposed class action settlement); *Izzio v. Century Golf Partners Mgmt., L.P.*, No. 14-cv-03194-M,  2019 WL 10589568, at *6 (N.D. Tex. Feb. 13, 2019) (same).  "Because the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements."  *ODonnell v. Harris Cnty., Texas*, No. CV H-16-1414, 2019 WL 6219933, at *9 (S.D. Tex. Nov. 21, 2019).  Both sets of factors support approval of the Settlement here, as explained below.

In evaluating settlement approval, the Court should consider the Fifth Circuit's recognition of a strong public policy in favor of pretrial settlements of class action lawsuits.  *See In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (noting a public interest favoring class action settlements).  "If the proposed settlement discloses no reason to doubt its fairness,

14

has no obvious deficiencies, does not improperly grant preferential treatment to class

representatives or segments of the class, does not grant excessive compensation to attorneys, and

appears to fall within the range of possible approval, the court should grant preliminary

approval." *Bardales v. Fontana & Fontana*, LLC, No. 19-cv-340-WBV-DMD, 2020 WL

5819873, at *9 (E.D. La. Sept. 30, 2020) (quoting *In re Pool Prods. Distrib. Market Antitrust

Litig.*, 310 F.R.D. 300, 314-15 (E.D. La. 2015)).  As explained below, all of these conditions are

true here.

The Settlement here is fair, reasonable, and adequate and warrants final approval under

the Rule 23(e)(2) factors and Fifth Circuit precedent.

> **A.      The Settlement Represents an Excellent Result for the Settlement Classes,
>           Particularly Considering the Risks and Delay of Trial and Appeal (Fed. R.
>           Civ. P. 23(e)(2)(C)(i); *Reed* Factors 2, 4, 5).**

The Settlement provides that *all* Settlement Class Members are eligible to receive a ***full

refund*** of all their At-Issue Baggage Fees, with *no cap* on the total amount American might pay.

Settlement §§ IV.A, C, E.  Therefore, the Settlement enables 100% of the proposed class to

receive 100% of their alleged overpayments.  To receive this full refund, Settlement Class

Members must simply submit a straightforward claim form by the claim deadline.  *Id.* §§ IV.C,

IX.  If the total dollar amount of valid claims submitted by the claim deadline ("Total Claim

Amount") is less than $7,500,000, then Settlement Class Members will receive their total At-

Issue Baggage Fees plus a *pro rata* allocation of the difference between $7,500,000 and the Total

Claim Amount.  *Id.* § IV.F.  In no event will Settlement Class Members who submit valid, timely

claims be eligible to receive less than 100% of their At-Issue Baggage Fees, and in no event will

American pay less than $7,500,000 to resolve this litigation.  *Id.* §§ IV.B-C.

The proposed Settlement makes 100% recovery available to the entirety of each

Settlement Class.  Courts in the Fifth Circuit regularly approve class settlements making far

lower percentages of total potential damages available to class members.  *See, e.g.*, *Hays v. Eaton Grp. Att'ys, LLC*, No. CV 17-88-JWD-RLB, 2019 WL 427331, at *11 (M.D. La. Feb. 4, 2019) ("[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery," and citing cases) (internal quotation omitted); *In re Pool Prods.*, 310 F.R.D. at 316 (approving $600,000 settlement when the potential recovery was $23,951,893); *In re OCA, Inc. Sec. & Derivative Litig.*, No. CIV.A.05-2165, 2009 WL 512081, at *4, *14 (E.D. La. Mar. 2, 2009) (approving $6.5 million settlement when potential recovery was $32 million).

The Settlement's requirement that American pay a minimum, non-reversionary sum of $7.5 million also constitutes substantial monetary relief in itself.  Settlement § IV.B.  That amount represents a strong result given the potential recovery and the risks and delay of ongoing litigation in this case.

The fairness, reasonableness, and adequacy of the proposed Settlement is even clearer in light of the risks, expense, and delay that would accompany ongoing litigation.  Multiple pending motions, if decided in American's favor, would significantly narrow—or eliminate—the damages available to the Classes.  American's pending *limine* motions and motion to reconsider the summary judgment and spoliation decision create risks with significant consequences for recovery if Plaintiffs continued litigating.  *See Schwartz v. TXU Corp.*, 2005 WL 3148350, at *18 (N.D. Tex. Nov. 8, 2005) (plaintiffs' "uncertain prospects of success through continued litigation" supported approval of settlement).

Even if Plaintiffs prevailed on those motions, to achieve full refunds like those provided by the Settlement, Plaintiffs would need to:  convince a jury of American's liability at trial; convince a jury to award damages equivalent to full refunds for each Class Member; and then

16

prevail on a certain appeal.  The expense and delay of these forthcoming litigation stages—

particularly the expense of trial and the delay of appeal—would be significant costs to the

Classes even aside from the risk that Plaintiffs might lose or receive less than the full refunds

made available by the Settlement.  "When the prospect of ongoing litigation threatens to impose

high costs of time and money on the parties, the reasonableness of approving a mutually-

agreeable settlement is strengthened."  *Klein v. O'Neal*, 705 F. Supp. 2d 632, 651 (N.D. Tex.

2010); *see also In re Heartland Payment Sys., Inc. Customer Data Breach Litig.*, 851 F. Supp. 2d

1040, 1064 (S.D. Tex. 2012) (approving settlement and noting that litigating case to trial would

be "time consuming, and '[i]nevitable appeals would likely prolong the litigation, and any

recovery by class members, for years'") (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948,

966 (9th Cir. 2009)).

Rather than risk trial and appeal, which could lead to Class members getting zero or less-

than-full compensation at an uncertain time later, the Settlement gives every Settlement Class

Member a guaranteed opportunity *now* to get *100% compensation*.  This Settlement relief is

more than fair, reasonable, and adequate.[3]

### B.    The Settlement is the Product of Good Faith, Informed, Arm's-Length Negotiations (Fed. R. Civ. P. 23(e)(2)(B); *Reed* Factor 1).

Rule 23(e)(2)(B) and the first *Reed* factor support final approval because the Settlement

was negotiated after substantial discovery and there is no evidence of fraud or collusion.  The

Settlement was reached after hard-fought, arm's-length negotiations by experienced counsel,

including a full-day mediation session on August 8, 2022, before experienced and well-respected

mediator.  Giskan Decl., ¶¶ 6-8, 12-13.  The parties did not reach agreement at the initial

---

[3] There are no agreements between the Parties besides the Settlement to be considered under Fed. R. Civ. P. 23(e)(2)(C)(iv).

mediation or at mediation following summary judgment, but agreed to continue negotiating, and ultimately reached an agreement in principle only 12 days before trial. Giskan Decl., ¶¶ 13-14. Throughout their negotiations, the Parties were represented by counsel experienced in the prosecution, defense, trial, and settlement of complex class actions. Giskan Decl., ¶¶ 14, 19.

The Parties' hard-fought, arm's-length negotiations and the involvement of an experienced mediator demonstrate that the Settlement is procedurally fair and is not the product of fraud or collusion. *See, e.g.*, *Klein*, 705 F. Supp. 2d at 651 (approving settlement after finding it was "not the product of fraud or collusion"); *Heartland*, 851 F. Supp. 2d at 1063-65 (approving settlement where parties engaged in arm's-length negotiations with the benefit of discovery to gauge the strengths and weaknesses of the case); *Billitteri v. Sec. Am., Inc.*, No. 09-cv-01568-F, 2011 WL 3586217, at *10 (N.D. Tex. Aug. 4, 2011) (finding no fraud or collusion in settlement reached through counsel's diligent arm's-length negotiations before a neutral mediator).

> **C.   The Settlement, Reached Less than Two Weeks Before Trial, Is Informed by Significant Investigation, Discovery, Motion Practice, and Court Rulings (*Reed* Factor 3).**

The third *Reed* factor—the stage of the proceedings and the amount of discovery completed—also strongly supports settlement approval. The Parties could hardly have been more well-informed about their respective strengths and risks at trial, as discovery was complete, the Court had ruled on summary judgment, and the parties had briefed their motions in *limine* and filed several other pre-trial submissions to prepare for the trial scheduled less than two weeks away when settlement was reached. *Manual for Complex Litigation (Fourth)* at § 22.921 ("If the case has been litigated extensively, the judge may have sufficient reliable information to determine whether the class should be certified and whether the settlement terms are the fair, reasonable, and adequate result of arms-length negotiations.").

18

As discussed above, the Settlement is informed by counsel's substantial investigation and discovery regarding the legal and factual issues involved.  These efforts included, *inter alia*, conducting a pre-filing factual investigation; reviewing and analyzing more than 50,000 pages of internal documents, deposing American employees, including multiple Rule 30(b)(6) corporate designees; substantial written discovery; and ongoing communications with class members.  *See supra* Background § II.  In negotiating the Settlement, the Parties here were also significantly guided by this Court's summary judgment ruling (ECF No. 190), which narrowed the remaining issues and clarified the potential damages and risks at trial.

The fact that this Court already certified litigation classes in this case further supports the approval of class-wide settlement here.  *Cf. Manual for Complex Litigation (Fourth)* ["MCL 4th"] § 21.612 (2004) ("[A]pproval of settlement class actions under Rule 23(e) requires closer judicial scrutiny than approval of settlements reached only after class certification has been litigated through the adversary process.").

### D.   Plaintiffs and Class Counsel Have and Continue to Zealously Represent the Class, and Their Experience and Views Further Support Approval (Fed. R. Civ. P. 23(e)(2)(A); *Reed* Factor 6).

Plaintiffs and Class Counsel have prosecuted this action on behalf of the Classes with vigor and dedication for almost two years (and spent substantial time prior to then investigating these claims).  As discussed above and in the attached declarations, Class Counsel have thoroughly investigated and researched the factual and legal issues involved, conducted substantial discovery, engaged in extensive motions practice, successfully certified two litigation classes, and were prepared to try Plaintiffs' and the Classes' claims less than two weeks after the Parties reached agreement to settle.  *See supra* Background § II.  Class Counsel will continue to zealously advocate for the Settlement Classes, if the Settlement receives preliminary approval, by verifying claims and advocating for Settlement Class Members if Class Counsel disagree with

the Settlement Administrator or American's decision regarding any claims' verification. Settlement §§ IX.D-Q (describing claim verification process and Class Counsel's role); Giskan Decl., ¶ 16.

Plaintiffs themselves have personally been actively engaged in this litigation. They each provided pertinent information about their experiences, searched for and provided documents and information in response to American's written discovery requests, sat for depositions, and regularly communicated with their counsel up to and including evaluating and approving the Settlement. Dr. Ferrigni also participated personally in the mediation. Giskan Decl., ¶ 8.

Plaintiffs and Class Counsel view the Settlement as fair, reasonable, and adequate. Class Counsel here have extensive experience litigating, trying, and settling consumer class actions and other complex matters. *Id.* at ¶¶ 14, 19. They have conducted an extensive investigation into, and taken considerable discovery regarding, the factual and legal issues raised. The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate weighs in favor of the Court approving the Settlement. *See Marcus v. J.C. Penney Co.*, 2017 WL 6590976, at *3 (E.D. Tex. Dec. 18, 2017) ("Significant weight is given to the opinion of class counsel concerning whether the settlement is in the best interest of the class and the court is not to substitute its own judgment for that of counsel."), *R&R adopted*, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018); *Schwartz*, 2005 WL 3148350, at *21 ("[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of [the] case.'").[4]

---

[4] In addition to considering the views of Plaintiffs and Class Counsel under *Reed* factor 6, the Court also considers the views of class members. Proposed Settlement Class Members have not yet been notified of the Settlement and thus have not yet had an opportunity to react. If the

**E.      The Settlement Treats Class Members Equitably and the Proposed Method of Distributing Relief Is Effective (Fed. R. Civ. P. 23(e)(2)(C)(ii), (D)).**

Under the Settlement, all Settlement Class Members are eligible to submit claims, and all who submit Valid Claims will be eligible to receive a full refund of their At-Issue Baggage Fees. Settlement § IV.C.  The specific amount paid for each Valid Claim will be individually calculated to match the At-Issue Baggage Fees allegedly overpaid by that specific claimant.  *Id.* This allocation is fair, reasonable, and equitable.  Indeed, this allocation avoids the rough justice often necessitated in class action settlements and instead provides a personalized, full refund to each Settlement Class Member who submits a valid claim.

Moreover, the claims process and claim form here are simple and user-friendly.  *See* Ex. A (proposed Claim Form).  Claims can be submitted by mail using a postage prepaid claim form or electronically via the Settlement Website, and the direct notices include the URL and hyperlinks to the Settlement Website where online claims can be submitted, to facilitate submitting claims.

The Settlement also provides for an effective, efficient, and equitable method of distributing relief.  The Settlement Administrator will distribute payments in the form of mailed checks or via electronic payment where feasible.  Settlement § IX.R.  If any electronic payments are returned or otherwise not effectuated, the Settlement Administrator will mail that claimant a refund check.  *Id.* § IX.S.  If any checks are returned as undeliverable, the Settlement Administrator will re-mail to a forwarding address provided or obtained via reasonable efforts. *Id.*

---

Settlement receives preliminary approval, Class Counsel will notify the Court of Settlement Class members' reaction to the Settlement, including the numbers of claims filed, opt-out requests submitted, and objections submitted, before the Fairness Hearing. Giskan Decl., ¶ 17.

**F.      Class Counsel Will Seek Reasonable Attorneys' Fees and Reimbursement of Their Litigation Expenses (Fed. R. Civ. P. 23(e)(2)(C)(iii)).**

As required by Fed. R. Civ. P. 23(h), prior the Fairness Hearing Class Counsel will move for an award of reasonable attorneys' fees and reimbursement of their litigation expenses, to be paid by American separate and apart from the Refunds paid to Settlement Class Members. Settlement § VI.A.  Any award of attorneys' fees and expenses by American to Class Counsel will not reduce the Refunds paid by American to the Settlement Classes. *Id.*

Class Counsel currently anticipate requesting that the Court award $2.85 million for attorneys' fees, plus reimbursement of litigation expenses.  Class Counsel will file their fee application, which will provide the supporting basis for their request, at least 30 days in advance of the Opt-Out and Objection Date, and it will be available on the Settlement Website after it is filed.  Settlement § XI.A.  As Class Counsel's fee application will detail, this anticipated request is reasonable under Fifth Circuit law. *See Erica P. John Fund, Inc.*, 2018 WL 1942227, at *9 ("[O]ne-third of the fund . . . is within the range of percentage fees awarded in the Fifth Circuit in other complex cases.").

\* \* \*

In sum, the proposed Settlement is amply fair, has no obvious deficiencies, does not improperly grant preferential treatment to the Plaintiffs or to segments of the Settlement Classes, and does not grant excessive compensation to attorneys.  Under these conditions, "the court should grant preliminary approval." *See Bardales*, 2020 WL 5819873, at *9.

**III.    The Court Already Certified the Classes, and Should Reaffirm that Certification with Regard to the Settlement Classes.**

On September 2, 2021, this Court certified two litigation classes: "(1) qualified American ticket holders who received email confirmation that promised them free checked baggage" (the Email Confirmation Class) and "(2) qualified American partner credit card holders that were

22

promised free checked baggage" (the Credit Card Class).  ECF No. 66 at 5.  In its summary judgment order, the Court's rulings narrowed the classes by excluding:  persons whose claims arose prior to February 24, 2017 or after April 8, 2020; and credit card holders whose claims relate to baggage fees charged for international flights.  ECF No. 190 at 7, 13, 17.

The Settlement Classes track the certified litigation Classes while accounting for the limitations applied by the Court's summary judgment order.  *See supra* Section IV (listing Settlement Class definitions).  The Settlement Classes merit certification for all the same reasons as the litigation Classes.

## IV.    The Proposed Notice Program Complies with Rule 23 and Due Process.

Before a proposed class settlement may be finally approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Where certification of a Rule 23(b)(3) settlement class is sought, the notice must also comply with Rule 23(c)(2)(B), which requires:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

The notice program proposed in Settlement § VIII meets all applicable standards.  The notice program includes direct notice to Settlement Class Members via email and first-class U.S. Mail; multiple reminder notices; a widely distributed press release; a Settlement Website where Settlement Class Members can submit claims online and view the Settlement, the Long Form

Notice, and other key case documents; and a Toll-Free Telephone Number where Settlement

Class Members can get additional information.  The proposed forms of notice (Settlement Exs.

B-G) inform Settlement Class Members, in clear and concise terms, about the nature of this case,

the Settlement, how to submit claims and the deadline to do so, and their other rights and

options, including all of the information required by Rule 23(c)(2)(B).  The Court should

approve the proposed notice program.

## V.      The Court Should Schedule a Fairness Hearing and Related Dates.

The next steps in the settlement approval process are to notify Settlement Class Members

of the proposed Settlement, allow Settlement Class Members an opportunity to exclude

themselves or file comments or objections, and hold a Fairness Hearing.  Towards those ends,

the parties propose the following schedule:

| | |
|---|---|
| Last day for the Settlement Administrator to set up the Toll-Free Telephone Number and send CAFA Notice | **10 days after entry of Preliminary Approval Order** |
| Last day for American to provide the Settlement Class Notice List and related notice information to the Settlement Administrator | **14 days after entry of Preliminary Approval Order** |
| Last day for the Settlement Administrator to set up the Settlement Website | **1 day before the Notice Date** |
| Notice Date (Last day for the Settlement Administrator to send the Email Notice) | **35 days after Preliminary Approval Date** |
| Last day for the Settlement Administrator to send the Mail Notice | **50 days after Preliminary Approval Date** |
| Last day for the Settlement Administrator to send the first Reminder Email Notice | **60 days after Preliminary Approval Date** |
| Last day for Plaintiffs and Settlement Class Counsel to file motion for final approval of the Settlement, and motion for attorneys' fees, expenses and service awards | **60 days after Preliminary Approval Date** |
| Opt-Out and Objection Deadline | **90 days after Preliminary Approval Date** |
| Last day for the Settlement Administrator to send the second Reminder Email Notice and second Reminder Mail Notice | **100 days after Preliminary Approval Date** |
| Claims Deadline | **125 days after Preliminary Approval Date** |

| Last day for the Parties to file any responses to objections, and any replies in support of motion for final settlement approval and/or Settlement Class Counsel's application for attorneys' fees, expenses and service awards | **7 days before Fairness Hearing** |
|---|---|
| Fairness Hearing | **[TBD]** |

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the accompanying proposed order, that will do the following:

(a)   Grant preliminary approval of the proposed Settlement;

(b)   Reaffirm certification of the Classes as defined in the Settlement, pursuant to Fed. R. Civ. P. 23(a) and (b)(3);

(c)   Reaffirm Appointment of Plaintiffs as Class Representatives representing the Settlement Class;

(d)   Reaffirm Appointment of Class Counsel;

(e)   Approve the proposed notice program in the Settlement, including the proposed forms of notice, and direct that notice be disseminated pursuant to such notice program and Fed. R. Civ. P. 23(e)(1);

(f)   Approve the proposed process set forth in the Settlement for Settlement Class Members to submit claims;

(g)   Appoint A.B. Data Ltd. as Settlement Administrator and direct it to carry out the duties and responsibilities of the Settlement Administrator specified in the Settlement;

(h)   Set deadlines for Settlement Class Members to request exclusion from the Settlement Class, to object to the Settlement, and to submit claims;

(i)   Stay all non-Settlement-related proceedings in this lawsuit pending final approval of the Settlement; and

(j)   Schedule a Fairness Hearing and certain other dates in connection with the final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e)(2).

Dated:  October 14, 2022                            Respectfully submitted,

                                                   **SBAITI & COMPANY PLLC**
                                                   */s/ Mazin A. Sbaiti*
                                                   Mazin A. Sbaiti
                                                   Texas Bar No. 24058096
                                                   Griffin S. Rubin
                                                   Texas Bar No. 24121809
                                                   2200 Ross Avenue, Suite 4900W

Dallas, TX  75201
Telephone: (214) 432-2899
mas@sbaitilaw.com
gsr@sbaitilaw.com

***Counsel for Plaintiffs***

**GISKAN SOLOTAROFF**
**  & ANDERSON LLP**
*/s/ Oren Giskan*
Oren Giskan (*pro hac vice*)
90 Broad Street, 2d Floor
New York, NY 10004
Telephone: (212) 847-8315
ogiskan@gslawny.com

***Counsel for Plaintiffs***
***and Lead Class Counsel***

**TUSA P.C.**
Joseph S. Tusa, Esq. (*pro hac vice*)
P.O. Box 566
55000 Main Road, 2nd Fl.
Southold, NY 11971
Telephone: (631) 407-5100
joseph.tusapc@gmail.com

**LIEFF, CABRASER, HEIMANN**
**  & BERNSTEIN, LLP**
Roger Heller (*pro hac vice*)
rheller@lchb.com
275 Battery Street, 29th Fl.
San Francisco, CA  94111-3339
Telephone: (415) 956-1000

- and -

Christopher E. Coleman (*pro hac vice*)
ccoleman@lchb.com
222 2nd Ave. South, Suite 1640
Nashville, TN  37201
Telephone: (615) 313-9000

- and -

Avery S. Halfon (*pro hac vice*)

ahalfon@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013

***Counsel for Plaintiffs***
***and Class Counsel***

**MARK A. ALEXANDER, P.C.**
Mark Alexander
State Bar No. 01007500
5080 Spectrum Drive, Suite 850E
Addison, Texas 75001
Telephone: (972) 544-6968
Facsimile: (972) 421-1500
mark@markalexanderlaw.com

**DEBLASE BROWN EYERLY LLP**
Michael C. Eyerly (*pro hac vice*)
680 South Santa Fe Avenue
Los Angeles, CA 90021
Telephone: (310) 575-9955
Facsimile: (310) 575-9919
deblase@dbelegal.com
eyerly@dbelegal.com

***Counsel for Plaintiffs***

## CERTIFICATE OF CONFERENCE

In accordance with Local Rule 7.1(b), counsel for Plaintiffs, Oren Giskan, conferred with counsel for Defendants on October 13, 2022, regarding the relief requested in this motion, and Defendants' counsel stated that Defendants do not oppose this motion.

*/s/ Oren Giskan*
Oren Giskan

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served upon all counsel of record via the Court's CM/ECF system on October 14, 2022.

*/s/ Oren Giskan*
Oren Giskan